IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:17-cv-01037-UA-LPA

| | | |
|---|---|---|
| FARM LABOR ORGANIZING | ) | |
| COMMITTEE, et al. | ) | |
| Plaintiffs, | ) | |
| | ) | MEMORANDUM OF LAW |
| v. | ) | IN SUPPORT OF DEFENDANT |
| | ) | WARREN'S MOTION TO DISMISS |
| GOVERNOR ROY COOPER, et al. | ) | (Fed. R. Civ. P. 12(b)(1), (2) and (6)) |
| Defendants. | ) | |

NOW COMES Defendant Marion R. Warren, in his official capacity as Director of the North Carolina Administrative Office of the Courts, by and through his undersigned counsel and respectfully submits this memorandum of law in support of his Motion to Dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure.

## NATURE OF THE CASE

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 against all defendants in their official capacities only for declaratory and injunctive relief. They claim that Section 20.5 of North Carolina Session Law 2017-108 (the "Farm Act") violates their rights of free expression and free association under the First and Fourteenth Amendments to the United States Constitution; their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; their rights to contract, to be parties, and to legal proceedings under 42 U.S.C. § 1981; and the prohibition on bills of attainder in Article 1, § 10 of the United States Constitution. They seek a declaration

that the Farm Act violates their foregoing rights, along with a preliminary and permanent injunction enjoining enforcement of the Farm Act.   Plaintiffs filed their Complaint on November 15, 2017, and their Motion for Preliminary Injunction on November 20, 2017.

## STATEMENT OF FACTS

Plaintiff Farm Labor Organizing Committee ("FLOC") is a farmworker labor union with offices in Ohio, North Carolina and Mexico.   (Compl. ¶ 9)   FLOC's members and all other farmworkers are exempted from the National Labor Relations Act and there are no laws requiring recognition of farmworker unions.   (Compl. ¶ 34)

FLOC works towards its goals by organizing workers to achieve collective bargaining agreements (CBAs) with agricultural producers in North Carolina, under which their members are guaranteed certain wages, working conditions, and alternative dispute mechanisms for resolving grievances.   (Compl. ¶ 29)   FLOC currently administers two CBAs in North Carolina.   (Compl. ¶¶ 9, 33)   Because farmworkers are exempt from federal labor laws, the CBAs are entered into voluntarily.   (Compl. ¶ 34) The CBAs are currently in effect and not due to expire until November 2019 and December 2020.   (Compl. ¶ 40)

Plaintiffs Victor Vences and Valentin Hernandez (the "Individual Plaintiffs") are Mexican nationals who worked on farms in North Carolina last year as agricultural guestworkers.   Both men are members of FLOC and have authorized their North Carolina employers to deduct weekly dues from their earnings and transfer the dues

2

directly to FLOC.   The Individual Plaintiffs assert that they want to maintain their FLOC membership by authorizing their employers to deduct union dues from their wages in the future.   They both allege that they plan to return to North Carolina to work in the future, but have not yet done so.   (Compl. ¶¶ 10-11)

Plaintiffs are suing Defendant Warren in his official capacity as Director of the North Carolina Administrative Office of the Courts (AOC).   They allege that as AOC Director, Defendant Warren is responsible for "ensuring overall compliance with federal and State laws in the court system."   (Compl. ¶ 13)   Plaintiffs are also suing Defendant Cooper in his official capacity as Governor of the State.

The Farm Act amended N.C. Gen. Stat. § 95-79(b) by adding the text underlined below:

> (b) any provision that directly or indirectly conditions the purchase of agricultural products, products or the terms of an agreement for the purchase of agricultural products, or the terms of an agreement not to sue or settle litigation upon an agricultural producer's status as a union or nonunion employer or entry into or refusal to enter into an agreement with a labor union or labor organization is invalid and unenforceable as against public policy in restraint of trade or commerce in the State of North Carolina.   Further, notwithstanding G.S. 95-25.8, an agreement requiring an agricultural producer to transfer funds to a labor union or labor organization for the purpose of paying an employee's membership fee or dues is invalid and unenforceable against public policy in restraint of trade or commerce in the State of North Carolina.

N.C. Sess. Law 2017-108, s. 20.5.

FLOC asserts that due to the size and geographic dispersion of its North Carolina membership, it is unable to collect weekly dues from its members directly and that union

3

dues make up 50-60% of its annual budget.   (Compl. ¶¶ 51, 82-83)   When existing dues

agreements expire in 2019 and 2020, FLOC claims it will have to divert staff resources to

dues collection and fundraising, "gutting" its ability to administer CBAs, to assist with

members' grievances, and to organize new workers into the union.   (Compl. ¶¶ 55, 87)

Moreover, FLOC claims that it will be unable to enter into any new agreements with

agricultural producers in the State that provide for dues checkoffs, which will harm its

efforts to join new members.   (Compl. ¶ 55)

FLOC also asserts that by rendering unenforceable all settlement agreements that

recognize FLOC or settlement agreements between FLOC and agricultural producers, the

amendments to N.C. Gen. Stat. § 95-79(b) deprive FLOC and its members from entering

into new settlement agreements.   (Compl. ¶¶ 55, 88-89)   Finally, FLOC claims that the

amendment "significantly hinders FLOC's ability to advance and publicize its members'

interests through litigation."   (Compl. ¶ 56)

## LEGAL STANDARDS

### A.     42 U.S.C. § 1983

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983.   Although not a source

of substantive rights itself, Section 1983 creates a species of tort liability and provides "a

method for vindicating federal rights elsewhere conferred."   *Baker v. McCollan*, 443

U.S. 137, 144 n.3 (1979).   To state a claim under Section 1983, a plaintiff must allege

sufficient facts indicating that he was deprived of rights guaranteed by the Constitution or

laws of the United States, and that this deprivation resulted from conduct committed by a person who "acted under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). To constitute state action, the party charged with the deprivation must be a state actor. *Id.*

## B.   Rules 12(b)(1) and (2)

When a defendant challenges a federal court's subject matter jurisdiction, the plaintiff bears the burden of proof to show that federal jurisdiction exists.   *See Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Bennett v. Office of Personnel Mgmt.,* 1:14CV137 2014 U.S. Dist. LEXIS 150060, *5 (M.D.N.C. Oct. 22, 2014).   "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."   *Evans*, 166 F.3d at 647 (citations omitted).

Similarly, a motion filed under Rule 12(b)(2) tests a court's jurisdiction over an individual.   In response to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper.   *Mylan Labs, Inc. v. Akzo, N.V.,* 2 F.3d 56, 59-60 (4th Cir. 1993); *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 269 (M.D.N.C. 2015).   Although a plaintiff who opposes a motion to dismiss for lack of personal jurisdiction is entitled to have all reasonable inferences drawn

5

in his favor, the court is not required to look solely to plaintiff's proof in drawing those inferences. *Mylan Labs*, 2 F.3d at 60.

### C. <u>Rule 12(b)(6)</u>

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . .." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must "' give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The facts alleged must "raise a right to relief above the speculative level," *id.* at 555, and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 679. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with" a defendant's liability,

6

*Twombly*, 550 U.S. at 557, fail to nudge claims "across the line from conceivable to plausible.  *Id.* at 570.

## ARGUMENT

### I.     THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS AGAINST DEFENDANT WARREN.

Plaintiffs Complaint should be dismissed because the Eleventh Amendment bars all of the federal claims brought against Director Warren, and as a result, this court lacks jurisdiction over him in this case.   Although Plaintiffs invoke 28 U.S.C. § 2201 and 42 U.S.C. § 1983 to establish jurisdiction over their claims against Director Warren, they have failed to allege facts necessary to show a connection between the Director and the enforcement of the challenged provision of the Farm Act.   Absent allegations that Director Warren enforced the challenged statute, or even has authority to do so, Plaintiffs' claims brought under Section 1983 should be dismissed pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

Generally, the Eleventh Amendment of the Constitution bars suits by private individuals against States brought in federal court.   *Bd. Of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Alden v. Maine*, 527 U.S. 706, 727-28 (1999); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Edelman v. Jordan*, 415 U.S. 651 662-63 (1974); *Waste Mgmt. Holdings, Inc v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001).   "Eleventh Amendment immunity also extends to state officials when they are merely the nominal defendants and the state is the real, substantial party in interest."

7

*Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997) (internal quotation marks and citations omitted), *cert. denied*, 524 U.S. 905 (1998). However, the doctrine of *Ex parte Young* provides an exception for lawsuits seeking prospective equitable relief from state officials acting in violation of federal law. 209 U.S. 123, 159-60 (1908); *see also Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (recognizing an exception to Eleventh Amendment immunity in "suits for prospective injunctive relief against state officials acting in violation of federal law"); *Waste Mgmt.*, 252 F.3d at 329-30 (noting that "a suit in federal court to enjoin a state officer from enforcing an unconstitutional statute is not a suit against the state for purposes of the Eleventh Amendment").

*Ex parte Young* provides a mechanism by which federal courts have allowed suits against state actors or officials so as to enjoin unconstitutional state action without violating the Eleventh Amendment. 209 U.S. at 159-60; *Waste Mgmt.*, 252 F.3d at 329-30 ("The theory of *Ex parte Young* is that because an unconstitutional statute is void, it cannot cloak an official in the state's sovereign immunity.") (quoting *CSX Transp. Inc. v. Board of Public Works*, 138 F.3d 537, 540 (4th Cir. 1998). It is clear, however, that any such state official must have some connection to the enforcement of the act to be enjoined. Indeed, as the Supreme Court explained:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.
>
> It has not, however, been held that it was necessary that such duty

8

should be declared in the same act which is to be enforced. In some cases, it is true, the duty of enforcement has been so imposed (154 U.S. 362, 366, § 19 of the act), but that may possibly make the duty more clear; if it otherwise exist it is equally efficacious. *The fact that the state officer by virtue of his office has some connection with the enforcement of the act is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.*

*Ex parte Young*, 209 U.S. at 157 (emphasis added).   In other words, it does not matter whether the statute at issue specifically imposes a duty of enforcement on the state official or whether some duty of enforcement arises from general law.

However, "*Ex parte Young* requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar.   *Waste Mgmt.*, 252 F.3d at 331.   The special relationship requirement serves to ensure that the proper party is before the court, without interference with "the lawful discretion of state officials."   *Ex parte Young*, 209 U.S. at 158-59.   Thus, plaintiffs must show that the lawsuit is directed at "officers of the State [who] are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act."   *Id.* at 155-56.   In other words, Plaintiffs must show that Director Warren has "*proximity to* and *responsibility for* the challenged state action."   *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008).   Without the requisite connection between a state official and the statute's enforcement, a plaintiff is merely suing the state officer "as representative of the State" in an impermissible attempt to make the State a party.   *Ex*

9

*parte Young*, 209 U.S. at 157.

In this case, Plaintiffs have failed to allege any facts demonstrating a "special relation" between Director Warren and N.C. Gen. Stat. § 95-79(b).   In fact, Plaintiffs have not established (nor can they) *any* relationship between Director Warren and Section 95-79(b).   Indeed, there is nothing in the statute that provides the Director with the authority or the means to enforce its provisions.   To the contrary, the statute explicitly states that any provisions that violate the statute are themselves "invalid and unenforceable as against public policy."   N.C. Gen. Stat. § 95-79(b).

Instead, Plaintiffs merely allege that Director Warren's duties include "ensur[ing] overall compliance with federal and State laws."   (Compl. ¶ 13)   However, as the Fourth Circuit has clearly stated, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law."   *Waste Mgmt.*, 252 F.3d at 331 (quotation omitted); *see also Hutto v. S.C. Ret. Sys.*, 773 F.3d 536 (4th Cir. 2014) (State treasury official possessed only "general administration and responsibility for the proper operation" of the Retirement System, and therefore did not possess enforcement authority over the challenged state law); *McBurney v. Cuccinelli*, 616 F.3d 393, 400-01 (4th Cir. 2010) (Eleventh Amendment barred suit against Attorney General under state's FOIA because he had no more than general authority to enforce the law).

10

*Waste Management* is directly on point.   In that case, Virginia's General

Assembly enacted five statutory provisions that capped the amount of solid waste

landfills in Virginia could accept and restricted the transportation of solid waste within

Virginia.   *Id.* at 323.   The Governor of Virginia signed the provisions into law.   *Id.*

Several landfill operators and transporters of solid waste brought suit under 42 U.S.C. §

1983 against the Governor of Virginia and other state officials in their official capacities

seeking declaratory and injunctive relief.   *Id.* at 324.   The Governor moved to dismiss

the claims against him on Eleventh Amendment grounds because he did not have "direct

enforcement responsibility with respect to the statutory provisions at issue."   *Id.* at 330.

The district court ruled that the Governor "was a proper defendant because he actively

and publicly defended the statutory provisions at issue."   *Id.*

The Fourth Circuit disagreed with the district court, vacated the judgment against

the Governor and remanded with instructions that the district court dismiss the Governor

from the case.   *Id.* at 331.   The Court held that "although Governor Gilmore is under a

general duty to enforce the laws of Virginia by virtue of his position as the top official of

the state's executive branch, he lacks a specific duty to enforce the challenged statutes."

*Id.*   The Court explained that "[t]he purpose of allowing suit against state officials to

enjoin their enforcement of an unconstitutional statute is not aided by enjoining the

actions of a state official not directly involved in enforcing the subject statute."   *Id.*

11

Similarly in this case, Plaintiffs have utterly failed to demonstrate that Director

Warren is responsible for enforcing the challenged provisions of the statute.[1]

Accordingly, the *Ex parte Young* exception to the Eleventh Amendment does not apply,

and Director Warren must be dismissed as a defendant.

## II. DEFENDANT WARREN IS NOT A PROPER PARTY UNDER 42 U.S.C. § 1983.

Plaintiffs assert four claims against Director Warren pursuant to 42 U.S.C. § 1983

for alleged violations of the United States Constitution and federal law.   (Compl. ¶¶

90-124) (DE 1))   Congress has expressly limited liability under 42 U.S.C. § 1983 to

persons acting under color of State law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983.[2]   Thus, to establish a claim under Section 1983, plaintiffs must

establish that a person acted under color of State law to deprive them of a right secured by

the Constitution and laws of the United States.   *Mentavlos v. Anderson*, 249 F.3d 301,

310 (4th Cir. 2001) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 26 L. Ed. 2d

---

[1] Plaintiffs have also not shown that there is "no state forum available to vindicate federal interests" with regard to their claims or that this case "calls for the interpretation of federal law." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270, 274 (1997).

[2] The Eleventh Amendment shields States from such lawsuits because the States are not "a person" within the meaning of Section 1983.   *See Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (Eleventh Amendment bars suits brought against state officials if the "state is the real, substantial party in interest"); *Will v. Michigan Dep't of State Police*, 491 U.S.

142 (1970)).

While state officials are generally immune from suits brought under Section 1983, the doctrine of *Ex parte Young* permits a court to issue prospective and injunctive relief against a state officer to prevent ongoing violations of federal law, even when the Court would not otherwise have jurisdiction over the state officer or the Section 1983 claims because of the Eleventh Amendment. *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)); *accord Will*, 491 U.S. at 71, n.10; *see also Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (*Ex parte Young* provides an exception to Eleventh Amendment immunity where suit is brought against state officials and "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective"). However, in order to bring such a claim against a state official, a plaintiff must show that the official has engaged in an ongoing violation of the Constitution or federal law. *Allen*, 134 F.3d at 627.

"The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Waste Mgmt.*, 252 F.3d at 330; *see also McBurney*, 616 F.3d at 401 (dismissing claim against Attorney General on sovereign immunity grounds because he had not acted or threatened to act). "A litigant must show more than the fact that state officials stand ready to perform their general duty to enforce laws." *Doe v.*

---

58, 64 (1989) (State is not a person within the meaning of Section 1983 and therefore is not a proper party under Section 1983).

*Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986).   Rather, the threat of enforcement or prosecution must be real before a federal court may examine the validity of a statute.   *Id.* Thus, in order to be a proper party for a Section 1983 claim, plaintiffs must show that the state official either acted or threatened to act.

For example, in *McBurney*, the Fourth Circuit determined that the Virginia Attorney General was not a proper party under *Ex parte Young* in a suit challenging a provision in Virginia's Freedom of Information Act (VFOIA).   616 F.3d at 401-02.   The Court first noted that the Attorney General did not have a special relation with the challenged law because he did not have any specific statutory duty to enforce the act and had "not issued any advisory opinions specifically directing state agencies to deny VFOIA requests by non-citizens, nor ha[d] he participated in the decisionmaking process of those agencies."   *Id.* at 401.   However, the Court explained, the outcome would be no different even if it were to find a special relation because "the Attorney General has not acted or threatened to act."   *Id.*   The Court pointed out that the Attorney General had "neither personally denied any of the Appellant's VFOIA requests nor advised any other agencies to do so."   *Id.*   The Court concluded that "[b]ecause the Attorney General has not enforced, threatened to enforce, or advised other agencies to enforce the VFOIA against the Appellants, the *Ex parte Young* fiction cannot apply."   *Id.* (citing *Ex parte Young,* 209 U.S. at 155–56).

14

In this case, Plaintiffs' claims must be dismissed because they failed to allege that Director Warren took any action under color of state law that deprived Plaintiffs of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Moreover, Plaintiffs failed to demonstrate that Director Warren has engaged in an ongoing violation of the Constitution. Indeed, Plaintiffs have utterly failed to allege facts demonstrating that Director Warren has taken *any* action against them that deprive them of a right secured by the Constitution and laws of the United States. Moreover, other than conclusory allegations about the Director's general duties, Plaintiffs have not shown that the Director has engaged in any ongoing violation of those laws. Simply alleging that the Director has a general duty to ensure overall compliance with federal and State laws is not the same as alleging facts connecting him to the alleged constitutional violations.

Indeed, Plaintiffs have made no factual allegations that the Director has taken, or threatened to take, any action to enforce the challenged provisions in N.C. Gen. Stat. § 95-79. The Complaint is further devoid of any allegations connecting the Director to any of FLOC's alleged activities concerning the organization and representation of farmworkers in North Carolina or to the work of farmworkers in general. In fact, Plaintiffs mention Director Warren only once in the Complaint when listing the parties to the lawsuit (Compl. ¶ 13), and never refer to him again.

Because Plaintiffs fail to allege any ongoing conduct by Director Warren in violation of federal law, he is not a proper party to this lawsuit. As a result, Defendant Warren does not qualify as "a person" for the purposes of a Section 1983 claim and is subject to Eleventh Amendment immunity. Therefore, Plaintiffs' claims should be dismissed pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure.

## III. PLAINTIFFS LACK STANDING TO PURSUE THEIR 42 U.S.C. § 1983 CLAIMS AGAINST DEFENDANT WARREN.

Even if Plaintiffs could somehow avoid dismissal pursuant to Eleventh Amendment immunity, this action nevertheless should be dismissed pursuant to Rule 12(b)(1) because Plaintiffs lack standing to sue. Under Article III, section 2 of the U.S. Constitution, this court's subject matter jurisdiction is limited to deciding "cases" and "controversies." *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). The existence of a plaintiff's standing to commence a federal lawsuit is an essential facet of the case or controversy requirement. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) *cert. denied sub nom. Beck v. Shulkin*, 137 S. Ct. 2307, 198 L. Ed. 2d 728 (2017); *Miller*, 462 F.3d at 316 ("Article III gives federal courts jurisdiction only over cases and controversies" and standing is "an integral component of the case or controversy requirement."). To satisfy Article III's case-or-controversy requirement, a plaintiff must establish the following:

(1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's

16

injury will be remedied by the relief plaintiff seeks in bringing suit).

*Beck*, 848 F.3d at 269 (internal citations and quotations omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiffs bear the burden of establishing the requisite elements of standing and must support each element with sufficient factual allegations. *Lujan*, 504 U.S. at 561; *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). Moreover, "[t]he standing requirement must be satisfied by individual and organizational plaintiffs alike." *White Tail*, 413 F.3d at 458 (*citing Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982)). Failure to establish the requisite standing requires dismissal of the lawsuit. *Lujan*, 504 U.S. at 560; *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 475-76 (1982); *see also Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 231 (4th Cir. 2008); *People for the Ethical Treatment of Animals v. Stein*, 259 F. Supp. 3d 369, 384 (M.D.N.C. 2017).

A.     **Plaintiffs Have Not Shown They Have Suffered Any Injury-in-Fact and Any Fear of Injury is Too Attenuated to Support Standing.**

As a threshold matter, Article III standing exists only when a plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent,

17

not conjectural or hypothetical.'" *Beck*, 848 F.3d at 270-71 (quoting *Spokeo, Inc. v. Robins*, ─── U.S. ───, 136 S.Ct. 1540, 1548 (2016)). "And while it is true 'that threatened rather than actual injury can satisfy Article III standing requirements,' not all threatened injuries constitute an injury-in-fact." *Id.* at 271 (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc)).

Rather, an injury-in-fact "must be concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Moreover, a plaintiff must allege an injury that is, in terms of probability, "certainly impending." *Whitmore*, 495 U.S. at 158. The injury must also be imminent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Although imminence is "concededly an elastic concept, it cannot be stretched beyond its purpose." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Allegations of a merely possible future injury do not create standing. *Whitmore*, 495 U.S. at 158. In sum, "[t]he complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Beck*, 848 F.3d at 271.

Even in the First Amendment context, plaintiffs must show that their risk of future injury is certain, or at least substantial. *Susan B. Anthony List v. Dreihaus*, 134 S. Ct. 2334, 2341 (2014). When a plaintiff relies on an "attenuated chain of inferences necessary to find harm," the plaintiff fails even the "substantial risk" standard. *Clapper*, 568 U.S. at 414 n.5. If a plaintiff has not suffered an injury, there is no standing and the court is without jurisdiction to consider the action. *Lujan*, 504 U.S. at 560; *Long Term*

*Care*, 516 F.3d at 231; *PETA*, 259 F. Supp. 3d at 384.

The Supreme Court's decision in *Clapper*—a First Amendment case—illustrates these principles. *Clapper* was a pre-enforcement First Amendment challenge to the Foreign Intelligence Surveillance Act. *Clapper*, 568 U.S. at 405. That statute authorizes the federal government to seek a special court's permission to electronically capture communications of non-U.S. persons who are located abroad. *Id.* at 404-05.

The plaintiffs alleged that their communications might be subject to government surveillance because their work required them to engage in sensitive and privileged communications with foreign clients and colleagues. *Id.* at 406. The possibility of government surveillance, they claimed, compromised their ability to locate witnesses and to communicate confidentially with their clients and colleagues. *Id.* Indeed, the plaintiffs alleged that because they wanted to maintain confidentiality, they had completely stopped communicating with at least some of these people. *Id.* at 406-07.

These allegations fell short of an injury in fact, the Court decided, because the plaintiffs' fear that their communications would be monitored was not imminent enough. *Id.* at 422. The Court held that plaintiffs lack standing when their claimed injury is "premised on a speculative chain of possibilities." *Id.* at 410 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). The *Clapper* Court also stressed that the likelihood of satisfying the above conditions did not depend on the plaintiffs

alone; it depended on the conduct of independent actors. *Id.* at 413-14. This fact, the Court held, makes it more difficult for a plaintiff to show in advance that she will incur an injury. *Id.* A plaintiff cannot show that she faces a substantial risk of harm when she cannot control or predict the actions of independent actors in the injurious chain of events. *Id.*; *accord Lujan*, 504 U.S. at 562.

In this case, Plaintiffs have not (and cannot) allege they have suffered an actual injury.   Rather, Plaintiffs complain that they will suffer harm in the future. Specifically, Plaintiffs allege they will be harmed by the amendments to Section 95-79(b) because (1) it will be harder for FLOC to collect dues from its members, which would adversely impact its ability to operate (Compl. ¶¶ 51, 55, 82-83, 87); and (2) it will deprive Plaintiffs from entering into new settlement agreements with agricultural producers, which would hinder "FLOC's ability to advance and publicize its members' interests through litigation."   (Compl. ¶¶ 55-56, 88-89)

Plaintiffs fears are purely hypothetical, speculative, and conjectural and do not rise to an injury-in-fact.   Indeed, Plaintiffs have not alleged that the amendments to Section 95-79(b) adversely impact the two CBAs FLOC currently administers in the State. Those CBAs remain in effect and are not due to expire until November 2019 and December 2020.   (Compl. ¶ 40)   Accordingly, any alleged harm suffered by FLOC after the expiration of the CBAs is certainly not "imminent" or "impending," but rather is merely speculative and conjectural.

Moreover, FLOC has not alleged that the Farm Act prevented it from collecting dues from its members or that it has been unable to collect dues as a result of the Act. Rather, FLOC only claims that in the future it will be unable to enter into any new agreements with agricultural producers that provide for the payment of its members' dues via payroll deductions. Such a claim is purely speculative and conjectural and does not demonstrate actual or imminent harm.

Furthermore, as detailed in the Complaint, FLOC's collection of dues from its members is entirely dependent on the conduct of independent actors, i.e. FLOC's members and the employers. (Compl. ¶¶ 47-50) The collection of dues is also dependent on the occurrence of a chain of events. First, the farmworker must first decide to become a member of FLOC and agree to pay membership dues. The decision to join FLOC and pay membership dues is entirely voluntary and up to the farmworker. Second, a member must decide whether to pay union dues via direct payroll deduction. However, before FLOC can receive a member's dues via payroll deduction, the member must voluntarily agree to the deductions and authorize the employer to deduct his wages and divert the funds to FLOC for payment of union dues. (Compl. ¶¶ 47-50) Finally, in order for FLOC to receive the payment, the employer must deduct the dues from the employee's wages and divert the funds to FLOC. Because the payment of dues is dependent on so many conditions, and because those conditions turn on the decisions of independent actors, FLOC's fear of injury is too attenuated to support standing. *See,*

21

*e.g.*, *PETA*, 259 F. Supp. 3d at 382 (finding no injury because the allegations only "reveal[ed] a string of events that are speculative, attenuated, and dependent in part upon the decisions of independent persons")

Similarly, the Individual Plaintiffs have not alleged that the Farm Act prevented them from paying their membership dues to FLOC or that they were somehow unable to maintain their membership in FLOC because of the Act. In fact, the Individual Plaintiffs have not alleged that they are even currently working in the State. (*See* Compl. ¶¶ 10-11) Rather, the Individual Plaintiffs merely assert that they "plan" on returning to North Carolina to work, and that they want their future employers to deduct union dues from their wages. (Compl. ¶¶ 10-11) However, those allegations do not constitute an injury or harm that is "concrete in both a qualitative or temporal sense." *Whitmore*, 495 U.S. at 155.

Finally, FLOC alleges that the Farm Act prevents it "from settling litigation . . ., from securing recognition as a bargaining representative in settlements by FLOC members, or from obtaining CBAs in settlements entered into by FLOC members." (Compl. ¶ 56) However, similar to its claims regarding the collection of dues, these alleged harms are purely hypothetical and speculative and entirely dependent on the conduct of independent actors and the possible occurrence of a series of future events. As such, FLOC's fear of injury is far too attenuated to support standing.

22

**B.     Plaintiffs' Alleged Risk of Injury is Not Traceable to Defendant Warren.**

Regardless, even if Plaintiffs could demonstrate that they have suffered some injury as a result of the changes made to N.C. Gen. Stat. § 95-79, they would still lack standing for an independent reason: any injury alleged is not traceable to Director Warren.     To have standing, a plaintiff must show that the injury it complains of is traceable to an action by the defendant, not traceable to independent actions by a third party.   *Friends of the Earth*, 528 U.S. at 180-81; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).   Moreover, in a pre-enforcement challenge to the constitutionality of a statute, when a plaintiff has not yet experienced an injury, she must show that the defendant is the government official charged with enforcing the challenged statute. *Bronson v. Swensen*, 500 F.3d 1099, 1109-10 (10th Cir. 2007); *New Hampshire Right to Life*, 99 F.3d at 13.

In this case, Plaintiffs have failed to show that Director Warren has any connection to the harms or injuries they allegedly suffered.   As previously discussed, the Director does not have any enforcement authority under the statute.   The statute does not mention the Director and does not create a right of action that directly applies to the Director. Furthermore, even if the Director had the authority to enforce the Farm Act, Plaintiffs have not alleged that the Director has taken, or threatened to take, any action to enforce it. Nor does the Director have any connection to FLOC's activities, the negotiation and administration of CBAs with agricultural producers, the payment of dues by FLOC's

23

members, or negotiating settlement agreements in private litigation or in the anticipation of litigation between private parties.   In sum, none of Plaintiffs' claimed injuries are traceable to any acts of Director Warren.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendant MARION R. WARREN respectfully requests this Court grant his Motion to Dismiss, with prejudice, dismissing all of the plaintiffs' claims against him and deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted this the 25th day of January, 2018.

JOSHUA H. STEIN
Attorney General

/s/ Grady L. Balentine, Jr.
Special Deputy Attorney General
N.C. State Bar No. 19541
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Fax: (919) 716-6755
Email: gbalentine@ncdoj.gov
*Counsel for Defendant Warren*

## <u>CERTIFICATE OF COMPLIANCE WITH LR7.3(d)</u>

Undersigned counsel certifies that the present filing is in compliance with Local Rule 7.3(d)(1) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina in that the body of the brief, headings and footnotes contains 6,269 words as indicated by Word, the program used to prepare the brief.

Electronically submitted this the 25th day of January, 2018.

/s/ Grady L. Balentine, Jr.
Special Deputy Attorney General

25

## <u>CERTIFICATE OF FILING AND SERVICE</u>

      This is to certify that the undersigned has this day electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WARREN'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will serve counsel for all parties.

      This the 25th day of January, 2018.

                               /s/ Grady L. Balentine, Jr.
                               Special Deputy Attorney General