IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-CV-01037

| | |
|---|---|
| FARM LABOR ORGANIZING COMMITTEE, VICTOR TOLEDO VENCES, and VALENTIN ALVARADO HERNANDEZ, <br><br> Plaintiffs <br><br> v. <br><br><br> ROY COOPER, in his official capacity as Governor of the State of North Carolina, and MARION R. WARREN, in his official capacity as Director of the North Carolina Administrative Office of the Courts <br><br> Defendants | RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

NOW COMES Defendant, ROY COOPER, in his official capacity as Governor of the State of North Carolina, by and through his undersigned counsel, and respectfully submits this response in opposition to Plaintiffs' Motion for Preliminary Injunction:

## **NATURE OF THE CASE**

Plaintiffs bring this action pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment that Section 20.5 of North Carolina Session Law 2017-108 (the "Farm Act") violates Plaintiffs' free speech and association rights protected by the First and Fourteenth Amendments to the United States Constitution. Pursuant to 42 U.S.C. § 1983, Plaintiffs also contend that the Farm Act violates the Bill of Attainder Clause in Article I, Section 10 of the Constitution, the Equal Protection Clause of the Fourteenth Amendment, and their rights to contract under 42 U.S.C. § 1981. Plaintiffs are seeking a preliminary and

permanent injunction of the Farm Act and a declaratory judgment providing that the Farm Act violates Plaintiffs' free speech and free association rights.

## RELEVANT FACTS

Plaintiff Farm Labor Organizing Committee ("FLOC") is a farmworker labor union with offices in Ohio, North Carolina, and Mexico. (Compl. ¶ 9 (DE 1)) According to Plaintiffs' Complaint, FLOC has approximately 6,000 dues-paying members nationwide. (Compl. ¶ 27 (DE 1)) FLOC's members and all other farmworkers are exempted from the National Labor Relations Act and there are no laws requiring recognition of farmworker unions. (Compl. ¶ 34 (DE 1))

FLOC alleges that it advocates for the rights and well-being of farmworkers. (Compl ¶ 28 (DE 1)) The organization does so by negotiating collective bargaining agreements ("CBAs") with agricultural producers, under the terms of which their members are guaranteed certain wages and working conditions. (Compl. ¶ 29 (DE 1)) FLOC also has engaged in litigation as a party to pursue legal issues it believes are important to its members.

FLOC currently administers two CBAs in North Carolina. (Compl. ¶¶ 9, 27, 33 (DE 1)) Because farmworkers are exempt from federal labor laws, the CBAs are entered into on a voluntary basis. (Compl. ¶ 34 (DE 1)) One of the CBAs administered by FLOC is with the North Carolina Growers' Association. (Compl. ¶ 33 (DE 1)) The CBAs are currently in effect and are not due to expire until November 2019 and December 2020. (Compl. ¶ 40)

Plaintiffs Victor Vences and Valentin Hernandez (the "Individual Plaintiffs") are Mexican nationals who worked on farms in North Carolina last year as agricultural "guestworkers". (*Id.* ¶¶ 10-11) Both men are FLOC members and have authorized their North Carolina employers to deduct weekly dues from their earnings and transfer the dues directly to FLOC. (*Id.*) The Individual Plaintiffs assert that they want to maintain their FLOC membership by authorizing their employers to deduct union dues from their wages in the future. (*Id.*) The Individual Plaintiffs allege that they plan to return to North Carolina to work in the future, but have not yet done so. (*Id.*)

Plaintiffs are suing Governor Cooper in his official capacity as Governor of the State. Pursuant to Article III, Section 1 of the North Carolina Constitution, the Governor is vested with "the executive power of the State." (Compl. ¶ 12 (DE 1)) As Governor, Plaintiffs allege that Governor Cooper has the duty to "take care that the laws be faithfully executed." (*Id.*) Plaintiffs are also suing Defendant Marion Warren in his official capacity as Director of the North Carolina Administrative Office of the Courts (AOC). Plaintiffs allege that as Director of AOC, Defendant Warren is responsible for "ensuring overall compliance with federal and State laws in the court system." (Compl. ¶ 13 (DE 1))

Plaintiffs, through this action, challenge the constitutionality of Section 20.5 of the Farm Act, which amended N.C. Gen. Stat. § 95-79(b) to add the text underlined below:

> (b) any provision that directly or indirectly conditions the purchase of agricultural products, ~~products or~~ the terms of an agreement for the purchase of agricultural products<u>, or the terms of an agreement not to sue or settle litigation</u> upon an agricultural producer's status as a union or nonunion employer or entry into or refusal to enter into an agreement with a labor union or labor organization is invalid and unenforceable as against public policy in restraint of trade or commerce in the State of North Carolina. <u>Further,</u>

3

> notwithstanding G.S. 95-25.8, an agreement requiring an agricultural producer to transfer funds to a labor union or labor organization for the purpose of paying an employee's membership fee or dues is invalid and unenforceable against public policy in restraint of trade or commerce in the State of North Carolina.

N.C. Sess. Law 2017-108, s. 20.5(a). (Compl. ¶ 1 n.1 (DE 1))

FLOC asserts that due to the size and geographic dispersion of FLOC's North Carolina membership, FLOC is unable to collect weekly dues from its members directly and that union dues makes up 50-60% of FLOC's annual budget. (Compl. ¶¶ 51, 82-83 (DE 1)) When existing dues agreements expire in 2019 and 2020, FLOC claims it will have to divert staff resources to dues collection and fundraising, "gutting" its ability to administer CBAs, attend to members' grievances, and recruit new workers into the union. (Compl. ¶¶ 55, 87 (DE 1)) Moreover, FLOC claims that it will be unable to enter into any new agreements with agricultural producers in the State that provide for dues checkoffs, which will harm its efforts to enroll new members. (Compl. ¶ 55 (DE 1))

FLOC also asserts that by invalidating all settlement agreements that recognize FLOC or settlement agreements between FLOC and agricultural producers, the N.C. Gen. Stat. § 95-79(b) amendments deprive FLOC and its members of the ability to enter into new settlement agreements. (Compl. ¶¶ 55, 88-89 (DE 1)) FLOC claims that the amendment "significantly hinders FLOC's ability to advance and publicize its members' interests through litigation." (Compl. ¶ 56 (DE 1))

## STANDARD OF REVIEW

In deciding a motion for preliminary injunction, the court must evaluate "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2)

the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

## ARGUMENT

**PLAINTIFFS CANNOT DEMONSTRATE THE LIKELIHOOD OF IRREPARABLE HARM OR THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS AGAINST GOVERNOR COOPER.**

    **A.    The Eleventh Amendment Bars Plaintiffs' 42 U.S.C. § 1983 Claims Against Governor Cooper.**

The Eleventh Amendment bars all of the claims brought against Governor Cooper, and as a result, this court lacks jurisdiction over him in this case. Here, although Plaintiffs invoke 28 U.S.C. § 2201 and 42 U.S.C. § 1983 to establish jurisdiction over their claims against Governor Cooper, they have failed to allege facts necessary to show a connection between the Governor and the enforcement of the challenged Farm Act provision. Absent allegations that Governor Cooper enforced the challenged statute, or even has authority to do so, Plaintiffs' Section 1983 claims fail.

Generally, the Eleventh Amendment bars suits by private individuals against States brought in federal court. *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Alden v. Maine*, 527 U.S. 706, 727-28 (1999); *Waste Mgmt. Holdings, Inc v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). Additionally, "Eleventh Amendment immunity also extends to state officials when they are merely the nominal defendants and the state is the real, substantial party in interest." *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997) (internal quotation marks and citations omitted). However, *Ex parte Young*

5

provides an exception for lawsuits seeking prospective equitable relief from state officials acting in violation of federal law. 209 U.S. 123, 159-60 (1908); *see also Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (recognizing an exception to Eleventh Amendment immunity in "suits for prospective injunctive relief against state officials acting in violation of federal law"); *Waste Mgmt.*, 252 F.3d at 329-30 (noting that "a suit in federal court to enjoin a state officer from enforcing an unconstitutional statute is not a suit against the state for purposes of the Eleventh Amendment").

*Ex parte Young* provides a mechanism by which federal courts have allowed suits against state actors or officials so as to enjoin unconstitutional state action without violating the Eleventh Amendment. 209 U.S. at 159-60; *Waste Mgmt.*, 252 F.3d at 329-30 ("The theory of *Ex parte Young* is that because an unconstitutional statute is void, it cannot cloak an official in the state's sovereign immunity."). It is clear, however, that any such state official must have some connection to the enforcement of the act to be enjoined:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex parte Young*, 209 U.S. at 157. Ultimately, the state official must have the duty to enforce the statute; whether the statute at issue specifically imposes a duty of enforcement on the state official or the duty of enforcement rises from general law is unimportant. *Id.*

Indeed, "*Ex parte Young* requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." *Waste Mgmt.*, 252 F.3d at 331. The special relationship requirement serves to ensure that the proper party is

6

before the court. *Ex parte Young*, 209 U.S. at 158-59. Thus, Plaintiffs must show that the lawsuit is directed at "officers of the State [who] are clothed with some duty in regard to the enforcement of the laws of the State." *Id.* at 155-56. In other words, Plaintiffs must show that Governor Cooper has "*proximity to* and *responsibility for* the challenged state action." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008). Without the requisite connection between a state official and the statute's enforcement, a plaintiff is merely suing the state officer "as a representative of the State" in an impermissible attempt to make the State a party. *Ex parte Young*, 209 U.S. at 157.

In this case, Plaintiffs have failed to allege facts demonstrating a "special relation" between Governor Cooper and the challenged statute. In fact, Plaintiffs have not established (nor can they) a relationship between Governor Cooper and Section 95-79(b). There is nothing in the statute that provides the Governor with the authority or the means to enforce its provisions. To the contrary, the statute explicitly states that any provisions that violate the statute are themselves "invalid and unenforceable as against public policy." N.C. Sess. Law 2017-108, s. 20.5(a).

Moreover, Section 95-79(b) is part of Chapter 95 of the North Carolina General Statutes, "the Department of Labor and Labor Regulations." *See* N.C. Gen. Stat. Ch. 95. Pursuant to N.C. Gen. Stat. § 95-4, the Commissioner of Labor is the executive and administrative head of the Department of Labor and is generally responsible for enforcing the provisions within Chapter 95. The statute also provides that it is "the duty of the district attorney of the proper district" to prosecute violation of the labor laws. N.C. Gen. Stat. § 95-4(6). Without considering whether these provisions confer on the Commissioner of

7

Labor or on a district attorney the "special relationship" required by *Ex parte Young*, it is clear that the Governor does not have a specific duty to enforce the Farm Act.

Recognizing this, Plaintiffs instead claim that as Governor, Mr. Cooper is vested with "the executive power of the State," and has the duty "to take care that the laws be faithfully executed." (Compl. ¶ 12 (D.E. 1)) However, as the Fourth Circuit and other federal courts have clearly stated, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Waste Mgmt.*, 252 F.3d at 331 (quotation omitted); *see also Hutto v. S.C. Ret. Sys.*, 773 F.3d 536 (4th Cir. 2014) (concluding that a state treasury official possessed only "general administration and responsibility for the proper operation" of the Retirement System, and therefore did not possess enforcement authority over the challenged state law); *McBurney v. Cuccinelli*, 616 F.3d 393, 400-01 (4th Cir. 2010) (holding that the Eleventh Amendment barred suit against the Attorney General under the state's FOIA because he had no more than general authority to enforce the law); *1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108, 115 (3d Cir. 1993) (concluding that certain state officials "general duty to uphold the laws of Pennsylvania, standing alone, will not suffice to render them proper defendants in this lawsuit"). Indeed, "the mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Waste Mgmt.*, 252 F.3d at 331 (citation and quotation omitted).

In this case, Plaintiffs cannot demonstrate that the Governor is responsible for enforcing the challenged provisions of the statute. Accordingly, the *Ex parte Young*

8

exception to the Eleventh Amendment does not apply and Plaintiffs cannot prevail on their claims against the Governor.

## B. The Governor is not a proper party in this lawsuit.

Plaintiffs assert four claims against Governor Cooper pursuant to 42 U.S.C. § 1983 for alleged violations of the United States Constitution and federal law. Congress has expressly limited liability under 42 U.S.C. § 1983 to persons acting under color of State law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983.[1]

While state officials are generally immune from suits brought under Section 1983, the doctrine of *Ex parte Young* permits a court to issue prospective and injunctive relief against a state official to prevent ongoing violations of federal law, even when the Court would not otherwise have jurisdiction over the official or the Section 1983 claims because of the Eleventh Amendment. *Frew*, 540 U.S. at 437 (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)); *see also Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). However, in order to bring such a claim against a state official, a plaintiff must show that

---

[1] The Eleventh Amendment shields States from such lawsuits because the States are not "a person" within the meaning of Section 1983. *See Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (stating that the Eleventh Amendment bars suits brought against state officials if the "state is the real, substantial party in interest"); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that the State is not a person within the meaning of Section 1983 and therefore is not a proper party under Section 1983).

9

the official has engaged in an ongoing violation of the Constitution or federal law. *Allen*, 134 F.3d at 627 (stating that plaintiff must show "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective").

"The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Waste Mgmt.*, 252 F.3d at 330; *see also McBurney*, 616 F.3d at 401 (dismissing claim against Attorney General on sovereign immunity grounds because he had not acted or threatened to act). However, the threat of enforcement or prosecution must be real before a federal court may examine the validity of a statute. *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986); *see also Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (holding that the Attorney General was not a proper defendant in part because he "did not threaten to commence and was not about to commence proceedings against the plaintiffs, much less proceedings to enforce an allegedly unconstitutional act"). Thus, in order for Plaintiffs to prevail on their Section 1983 claim, they must first show that the Governor acted or threatened to act.

Plaintiffs cannot succeed in this case because they failed to allege that Governor Cooper has taken action under color of state law that deprived Plaintiffs of any rights secured by the Constitution or federal law. Moreover, Plaintiffs cannot demonstrate that the Governor has engaged in an ongoing violation of the Constitution. Indeed, Plaintiffs have not alleged facts demonstrating that Governor Cooper has taken action against them. Simply alleging that the Governor has a general duty to execute and enforce the laws of

10

the State is not the same as alleging facts connecting him to ongoing or imminent constitutional violations.

Furthermore, Plaintiffs cannot show that the Governor has taken, or has threatened to take, action to enforce the Farm Act. Because Plaintiffs cannot demonstrate ongoing conduct by the Governor in violation of federal law, he is not a proper party to this lawsuit. As a result, the Governor does not qualify as "a person" for the purposes of a Section 1983 claim and is therefore entitled to Eleventh Amendment immunity.

**C. Plaintiffs Lack Standing to Pursue Their Claims Against Governor Cooper.**

Even if Governor Cooper were not entitled to Eleventh Amendment immunity, Plaintiffs still could not succeed on their claims because Plaintiffs lack standing to sue. Under Article III of the United States Constitution, this court's subject matter jurisdiction is limited to deciding "cases" and "controversies." *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing to initiate a federal lawsuit is an essential facet of the case or controversy requirement. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir.), *cert. denied sub nom.*, *Beck v. Shulkin*, 137 S. Ct. 2307, 198 L. Ed. 2d 728 (2017); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) ("Article III gives federal courts jurisdiction only over cases and controversies" and standing is "an integral component of the case or controversy requirement."). To satisfy Article III's case-or-controversy requirement, a plaintiff must establish the following:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3)

redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Beck*, 848 F.3d at 269; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180-81 (2000).

Plaintiffs bear the burden of establishing the requisite elements of standing and must support each element with sufficient factual allegations. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). Failure to establish standing requires dismissal of the lawsuit. *Lujan*, 504 U.S. at 560; *see also Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 231 (4th Cir. 2008); *People for the Ethical Treatment of Animals v. Stein*, 259 F. Supp. 3d 369, 384 (M.D.N.C.), *appeal filed*, No. 17-1669 (4th Cir. May 26, 2017).

### 1. Plaintiffs have not shown that they suffered any injury-in-fact and any fear of injury is too attenuated to support standing.

Article III standing exists only when a plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Beck*, 848 F.3d at 270-71 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). "And while it is true 'that threatened rather than actual injury can satisfy Article III standing requirements,' not all threatened injuries constitute an injury-in-fact." *Id.* at 271 (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc)).

12

Rather, an injury-in-fact "must be concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Moreover, a plaintiff must allege an injury that is, in terms of probability, "certainly impending." *Whitmore*, 495 U.S. at 158. The injury must also be imminent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Although imminence is "concededly an elastic concept, it cannot be stretched beyond its purpose." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Allegations of a merely possible future injury do not create standing. *Whitmore*, 495 U.S. at 158. In sum, "[t]he complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Beck*, 848 F.3d at 271. If a plaintiff has not suffered an injury, there is no standing and the court is without jurisdiction to consider the action. *Lujan*, 504 U.S. at 560; *Long Term Care*, 516 F.3d at 231; *PETA*, 259 F. Supp. 3d at 384.

In this case, Plaintiffs have not (and cannot) allege they have suffered an actual injury. Nor have they demonstrated they would suffer irreparable harm should the court deny their request for injunctive relief. Indeed, Plaintiffs have not demonstrated that enacting the Farm Act changed the current status quo.

Rather, Plaintiffs complain that they will suffer harm in the future. Specifically, Plaintiffs allege they will be harmed by the amendments to Section 95-79(b) because (1) it will be harder for FLOC to collect dues from its members, which would adversely impact its ability to operate (Compl. ¶¶ 51, 55, 82-83, 87); and (2) it will deprive Plaintiffs of the ability to enter into new settlement agreements with agricultural producers, which would hinder "FLOC's ability to advance and publicize its members' interests through litigation." (Compl. ¶¶ 55-56, 88-89) Plaintiffs' fears are purely hypothetical, speculative, and

13

conjectural, and do not rise to an injury-in-fact. Similarly, the fears of potential future harm do not constitute irreparable harm.

Indeed, Plaintiffs have not alleged that the amendments to Section 95-79(b) adversely impact the two CBAs FLOC currently administers in the State. Those CBAs remain in effect and are not due to expire until November 2019 and December 2020. (Compl. ¶ 40) There is nothing in the statute that suggests it will be applied *ex post facto*. To the contrary, N.C. Gen. Stat. § 95-84 explicitly provides that "[t]he provisions of [Article 10] shall not apply to any lawful contract in force on the effective date." *Id.* Accordingly, any alleged harm suffered by FLOC after the expiration of the CBAs is certainly not "imminent" or "impending."

Moreover, FLOC has not alleged that the Farm Act prevented it from collecting dues from its members or that it has been unable to collect dues as a result of the Act. Rather, FLOC only claims that in the future it will be unable to enter into any new agreements with agricultural producers that provide for the payment of its members' dues via payroll deductions. Such a claim is purely speculative and conjectural and does not demonstrate actual or imminent harm.

Furthermore, as detailed in the Complaint, FLOC's collection of dues from its members is entirely dependent on the conduct of independent actors, i.e. FLOC's members and the employers. (Compl. ¶¶ 47-50) The collection of dues is also dependent on the occurrence of a chain of events. First, the farmworker must first decide to become a member of FLOC and agree to pay membership dues. The decision to join FLOC and pay membership dues is entirely voluntary and up to the farmworker. Second, a member must

14

decide whether to pay union dues via direct payroll deduction. Third, before FLOC can receive a member's dues via payroll deduction, the member must voluntarily agree to the deductions and authorize the employer to deduct his wages and divert the funds to FLOC for payment of union dues. (Compl. ¶¶ 47-50) Finally, in order for FLOC to receive the payment, the employer must deduct the dues from the employee's wages and divert the funds to FLOC. All of these steps are dependent upon the decisions and actions of independent persons. Because the payment of dues is dependent on so many conditions, and because those conditions turn on the decisions of independent actors, FLOC's fear of injury is too attenuated to support standing. *See, e.g.*, *Clapper*, 568 U.S. at 414 (determining no standing because plaintiffs' theory of standing depended on the actions of independent actors not before the court); *PETA*, 259 F. Supp. 3d at 382 (finding no injury because the allegations only "reveal[ed] a string of events that are speculative, attenuated, and dependent in part upon the decisions of independent persons")

Similarly, the Individual Plaintiffs have not alleged that the Farm Act prevented them from paying their membership dues to FLOC or that they were somehow unable to maintain their membership in FLOC because of the Act. In fact, the Individual Plaintiffs have not alleged that they are even currently working in the State. (*See* Compl. ¶¶ 10-11) Rather, the Individual Plaintiffs merely assert that they "plan" on returning to North Carolina to work, and that they want their future employers to deduct union dues from their wages. (Compl. ¶¶ 10-11) However, those allegations do not constitute an injury or harm that is "concrete in both a qualitative or temporal sense." *Whitmore*, 495 U.S. at 155. Moreover, the allegations do not demonstrate the possibility of irreparable harm.

15

Finally, FLOC alleges that the Farm Act prevents it "from settling litigation . . ., from securing recognition as a bargaining representative in settlements by FLOC members, or from obtaining CBAs in settlements entered into by FLOC members." (Compl. ¶ 56) However, similar to its claims regarding the collection of dues, these alleged harms are purely hypothetical and speculative, are entirely dependent on the conduct of independent actors, and are entirely dependent on the possible occurrence of a series of future events. As such, FLOC's fear of injury is far too attenuated to support standing.

In sum, the Plaintiffs cannot show that they have suffered any injury and they cannot show they will suffer irreparable harm if the preliminary injunction is denied.

### 2. Plaintiffs' alleged risk of injury is not traceable to Governor Cooper.

Regardless, even if Plaintiffs could demonstrate that they have suffered some injury as a result of the changes made to N.C. Gen. Stat. § 95-79, they would still lack standing for another reason: any injury alleged is not traceable to the Governor. To have standing, a plaintiff must show that the injury it complains of is traceable to an action by the defendant. *Friends of the Earth*, 528 U.S. at 180-81; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Moreover, in a pre-enforcement challenge to the constitutionality of a statute, when a plaintiff has not yet experienced an injury, she must show that the defendant is the government official charged with enforcing the challenged statute. *Bronson v. Swensen*, 500 F.3d 1099, 1109-10 (10th Cir. 2007); *New Hampshire Right to Life v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).

In this case, Plaintiffs have failed to show that the Governor has any connection to the harms or injuries they allegedly suffered. As previously discussed, the Governor does not have enforcement authority under the statute. The statute does not mention the Governor and does not create a right of action that directly applies to the Governor. Furthermore, even if the Governor had the authority to enforce the Farm Act, Plaintiffs have not alleged that the Governor has taken, or threatened to take, action to enforce it. In sum, even if Plaintiffs could demonstrate an injury-in-fact, none of Plaintiffs' claimed injuries are traceable to the Governor.

## **CONCLUSION**

For the foregoing reasons, Governor Cooper respectfully requests that this Court deny Plaintiffs' Motion for Preliminary Injunction.

This the 25th day of January 2018.

        JOSHUA H. STEIN
        Attorney General

        /s/ Matthew Tulchin
        Matthew Tulchin
        Special Deputy Attorney General
        State Bar Number 43921
        mtulchin@ncdoj.gov
        Special Litigation Section
        Telephone: (919) 716-6900
        FAX: (919) 716-6763
        *Counsel for Roy Cooper*

**CERTIFICATE OF COMPLIANCE WITH RULE 7.3(d)**

Undersigned counsel certifies that the present filing is in compliance with Local Rule 7.3(d) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina including the body of the brief, heading and footnotes, and contains no more than 6,250 words as indicated by Word, the program used to prepare the brief.

Electronically submitted this the 25th day of January 2018.

Electronically Submitted
Matthew Tulchin
Special Deputy Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION with the clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Kristi L. Graunke
Kristi.graunke@splcenter.org

Meredith B. Stweart
Meredith.stewart@splcenter.org

Carol Brooke
carol@ncjustice.org

Clermont Ripley
clermont@ncjustice.org

Brian Hauss
bhauss@aclu.org

Christopher Brook
cbrook@acluofnc.org

Robert J. Willis
rwillis@rj-willislaw.com

Grady Balentine
gbalentine@ncdoj.gov

This the 25th day of January 2018.

/s/ Matthew Tulchin
Matthew Tulchin
Special Deputy Attorney General