IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-cv-01037-UA-LPA

| | | |
|---|---|---|
| FARM LABOR ORGANIZING COMMITTEE, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | **ORAL ARGUMENT** |
| v. | ) | **REQUESTED** |
| | ) | |
| JOSHUA STEIN, et. al. | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Defendant Marion Warren opposes Plaintiffs' Amended Motion for Preliminary Injunction (DE 34), arguing that Plaintiffs cannot prevail on the merits of their claims because the Court lacks personal jurisdiction over him and Plaintiffs lack standing to assert their claims. The Court should issue the preliminary injunction sought by Plaintiffs. Warren is a proper defendant because he has a special relation to Section 20.5 of the Farm Act; specifically, he directs an agency that is highly involved in the statute's enforcement. Plaintiffs satisfy their burden to establish actual or imminent injury because their injuries are now occurring. Plaintiffs' injuries are traceable to Warren because of his statutory duty to ensure compliance with the Farm Act in North Carolina courts.

**ARGUMENT**

**I.    Warren is a proper defendant.**

Warren argues that Plaintiffs are unlikely to succeed on the merits because Eleventh Amendment sovereign immunity bars the claims brought against him. However, because Warren heads an administrative agency involved in enforcing the challenged statute through the state court system, he falls within an exception to sovereign immunity and is therefore a proper defendant.

**A. Eleventh Amendment immunity and the *Ex parte Young* doctrine**

Under the Eleventh Amendment doctrine of sovereign immunity, a state generally may not be sued by one of its citizens without its consent. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). An exception exists where a plaintiff sues in federal court to enjoin a state officer from enforcing an unconstitutional statute. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Waste Mgmt. Holdings*, 252 F.3d at 329-30. In order for this exception to apply, there must be a "special relation" between the state officer defendant and the challenged statute; that is, "a defendant must have some connection with the enforcement of the act in order to properly be a party to the suit." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) (internal quotations omitted).

### B. Warren is a proper defendant because he heads an agency that enforces the challenged statute.

Where a state agency has a statutory role in implementing the challenged law, courts in the Fourth Circuit have repeatedly held that the agency head is a proper defendant under *Ex parte Young*. *See, e.g.*, *Limehouse*, 549 F.3d at 333; *Action NC v. Strach*, 216 F. Supp. 3d 597, 624-26 (M.D.N.C. 2016); *Red Wolf Coal. v. N.C. Wildlife Res. Comm'n*, No. 2:13-CV-60-BO, 2014 WL 1922234, at *4 (E.D.N.C. May 13, 2014); *Harris v. McDonnell*, 988 F. Supp. 2d 603, 609-11(W.D. Va. 2013); *Summers v. Adams*, 669 F. Supp. 2d 637, 653-55 (D.S.C. 2009). The statute challenged in this action functions primarily through the court system. The Farm Act declares that agreements for dues checkoffs and certain settlement agreements are "invalid and unenforceable as against public policy in restraint of trade or commerce." N.C. Gen. Stat. § 95-79(b). Because such agreements are in "in restraint of trade," those who conspire to enter or enter into such agreements are subject to criminal prosecution and civil enforcement in North Carolina courts. N.C. Gen. Stat. §§ 75-1 & 75-9–75-16. The Farm Act also requires that North Carolina courts refuse to enforce or otherwise recognize the legal validity of these agreements. *See* N.C. Gen. Stat. § 95-79(b). Warren heads an agency directly connected to the statute's enforcement. Warren is charged by law with various administrative duties regarding North Carolina courts, including "[e]nsur[ing] overall compliance with federal and State laws." *See* N.C. Gen. Stat. § 7A-343(3a)(c); *Ansley v. Warren*, No. 1:16-cv-00054-MOC-DLH, 2016 WL 5213937, at *5 (W.D.N.C. Sept. 20,

3

2016), *aff'd*, 861 F.3d 512 (4th Cir. 2017). Under Warren's direction, the AOC Office of the General Counsel is specifically tasked with "research[ing], formulat[ing] legal opinions, giv[ing] advice, and mak[ing] recommendations on the wide variety of civil, criminal, and constitutional legal concerns faced by and impacting the Judicial Branch and its officials and employees," as well as reporting legislative developments that impact how the courts conduct their duties. *See* Administrative Office of the Courts, *Office of General Counsel* (October 2017), http://www.nccourts.org/Citizens/JData/Documents/General_Counsel_Facts.pdf, printout filed as DE 47-1.

Warren's agency must ensure that state courts are informed of and complying with the new law when cases involving agreements proscribed by the Farm Act come before them. An injunction preventing Warren from enforcing the Act and directing that Warren notify state judicial officers of the injunction would provide the relief that Plaintiffs seek because Warren has the duty to provide legal counsel to the courts and otherwise ensure that the state courts comply with the law. *See Ansley*, 2016 WL 5213937, at *5-7 (AOC Director was the proper defendant where the challenged statute was enforced through the court system); *see also* DE 47 (Pls. Opp. to Warren Mot. to Dismiss) at 9-10 (discussing Warren's propriety as a defendant).

4

Case 1:17-cv-01037-LCB-LPA   Document 48   Filed 03/06/18   Page 4 of 16

### C. There is no requirement that Warren acted or threatened to act to enforce the statute.

Warren argues that he is an improper defendant because Plaintiffs have failed to demonstrate that he is engaged in an ongoing violation of the Constitution. *See* DE 41 at 10-13. The case that Warren cites, however, simply stands for the proposition that courts may not enjoin conduct that is concluded. *See Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (*Ex parte Young* "does not permit federal courts to entertain claims seeking retrospective relief…for completed, not presently ongoing violations of federally-protected rights"). Here, by contrast, the unconstitutional conduct is clearly ongoing. The Farm Act is still in effect, Plaintiffs are currently being harmed and will be harmed by the Act in the future unless it is enjoined, and Plaintiffs seek prospective, rather than retrospective, relief. *CSX Transp., Inc. v. Bd. of Public Works of State of W. Va.*, 138 F.3d 537, 541-43 (4th Cir. 1998) (*Ex parte Young* exception applied where plaintiffs sought an injunction against future collection of illegal taxes).

Warren further argues that he has not engaged in an ongoing constitutional violation because he has not acted or threatened to act to enforce the Farm Act.[1] Courts in

---

[1] Warren relies on dicta in *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010), in which the court held that the Virginia Attorney General was not a proper defendant to a claim challenging citizenship requirements of the Virginia Freedom of Information Act's (VFOIA). In *McBurney*, the Attorney General was not a proper defendant because he had no specific statutory duty related to, nor any involvement in, VFOIA's enforcement. 616 F.3d at 400-02. In contrast, Warren is statutorily charged with ensuring the court system's compliance with the law, and the General Counsel's office which he directs is responsible for providing legal advice to court officials.

5

the Fourth Circuit, however, have repeatedly recognized that state officials are proper defendants based on their statutorily-established official duties, rather than any allegation that the official acted or threatened to act with regard to the challenged statute. *See, e.g.*, *Limehouse*, 549 F.3d at 333; *Action NC*, 216 F. Supp. 3d at 624-26; *Red Wolf Coal.*, 2014 WL 1922234, at *4.

## II.  Plaintiffs have standing to challenge the Farm Act.

Warren next argues that Plaintiffs are unlikely to succeed on the merits because they lack standing. This argument fails because Plaintiffs' injuries are now occurring and result directly from the Farm Act. Furthermore, Plaintiffs' injuries are traceable to Warren because of his statutory duty to ensure compliance with the Act in North Carolina courts.

### A. Plaintiffs have established injury in fact.

Plaintiffs present evidence that, as a result of the Farm Act, they are suffering and will suffer injuries that are both concrete and particularized and actual or imminent. First, the Farm Act currently prevents FLOC from engaging in previous expressive and associative activities to advocate for its members. The Act's limitations on settlement agreements hinder FLOC and its members' abilities to advance or publicize their interests through litigation. DE 34-5 ¶¶ 14-18, 31-32, 38-39, 49-63; DE 34-7 ¶¶ 9, 20. FLOC has had at least one opportunity since the passage of the Act to assist members who had potential employment claims to negotiate for settlement; the Act limits the relief those

6

members can seek in a settlement agreement. DE 34-5 ¶¶ 52-53. FLOC is now unable to grow its membership by entering into new dues checkoff agreements, which was FLOC's standard practice prior to the Act. *Id*. ¶¶ 49, 63; *see also* DE 34-24 ¶¶ 16-28. Since the Act went into effect, FLOC has had to forgo at least one new opportunity to negotiate a dues checkoff agreement. DE 34-5 ¶ 49.

These changes to FLOC's normal manner of operating, including loss of opportunities to enter into contracts, constitute injury in fact. *See, e.g.*, *Babbitt v. United Farmworkers Nat'l Union*, 442 U.S. 289, 299-303 & n.11 (1979) (standing and a justiciable controversy existed where a union challenged Arizona law that created procedures for union elections, arguably proscribed regular union publicity efforts directed at consumers, and created criminal penalties for violations of the law); *Am. Fed'n of Gov't Emps. Local 1 v. Stone*, 502 F.3d 1027, 1032-34 (9th Cir. 2007) (union had standing to challenge firing of employee who was attempting to recruit new members where the firing interfered with the union's ability to solicit membership and communicate its message); *Waste Mgmt. Holdings*, 252 F.3d at 332 (state law interfering with plaintiffs' ability to bid on contracts caused harm sufficient to confer standing); *Int'l Union, United Auto. Aerospace, & Agric. Implement Workers of Am. v. Brock*, 783 F.2d 237, 246-47 (D.C. Cir. 1986) (union had standing to challenge a change in reporting requirements for employers because the change deprived it of information about employer activities and thereby interfered with the union's ability to organize); *Centro de*

7

Case 1:17-cv-01037-LCB-LPA   Document 48   Filed 03/06/18   Page 7 of 16

*la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 135-36 (E.D.N.Y. 2013) (organization had standing because the challenged ordinance prevented the organization's standard practice of meeting with day laborers at street corners). This is particularly true where, as here, the challenged statute forces plaintiffs to "take significant…compliance measures or risk criminal prosecution," chilling their First Amendment rights. *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999) (internal quotations omitted).

Second, given the extent to which FLOC is funded by member dues, and extreme logistical barriers to dues collection, the Act's prohibition on dues checkoffs will dramatically reduce FLOC's funding. *See* DE 34-4 ¶¶ 23-33; DE 34-5 ¶¶ 39-48, 55-60; DE 34-6 ¶¶ 20-23; DE 34-7 ¶¶ 14-17. FLOC will need to divert increased resources to dues collection and other fundraising, reducing its capacity to provide personal assistance to its members. DE 34-5 ¶¶ 56, 59, 61; DE 34-6 ¶ 23; DE 34-7 ¶¶ 17-18; DE 34-24 ¶¶ 16-18. Courts have long recognized such diversion of resources as a basis for standing. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-79 (1982); *N.C. State Conference of NAACP v. N.C. State Bd. of Elections*, 1:16cv1274, ---F. Supp. 3d ---, 2017 WL 4286275, at *6 (M.D.N.C. Sept. 26, 2017); *Action NC*, 216 F. Supp. 3d at 616-18.

Plaintiffs have also established injury in fact with regard to the Plaintiffs Victor Toledo Vences and Valentin Alvarado Hernandez (hereinafter Individual Plaintiffs).

8

Individual Plaintiffs have previously worked in North Carolina in multiple agricultural seasons, they plan to return to North Carolina to work in the upcoming season, and they have rights to rehire under their current CBAs. DE 34-5 ¶ 12; DE 34-6 ¶¶ 6, 17; DE 34-7 ¶¶ 5, 11-12. They rely on dues checkoff to pay their FLOC dues, and they wish to continue using dues checkoff in the future. DE 34-6 ¶¶ 20-23; DE 34-7 ¶¶ 13-17. Because of the Farm Act, Individual Plaintiffs will be unable to do so; they risk criminal and civil sanction for even raising the possibility of dues checkoff. *See* N.C. Gen. Stat. § 75-1. Moreover, the Individual Plaintiffs will be harmed by FLOC's diminished capacity to provide personal assistance to its members. *See supra* at 8.

Relying primarily on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), Warren argues that Plaintiffs have failed to establish injury in fact because the alleged injuries are hypothetical, speculative, and dependent on the conduct of independent actors. This case differs from *Clapper* in several key respects. First, Plaintiffs here, unlike the *Clapper* plaintiffs, have provided evidence of actual injuries which have already occurred. *See supra* at 6-7. *Clapper*'s analysis does not apply to injuries which have already occurred. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 210 (4th Cir. 2017) (distinguishing *Clapper* because the defendant National Security Agency had already intercepted plaintiff's communications).

To the extent that Plaintiffs allege future harm, that harm is sufficiently imminent to establish standing. *Clapper* did not preclude standing based on future harm, even

9

future harm that depends on the occurrence of a chain of events. Rather, *Clapper* bars standing based only on a long, attenuated, and overly conjectural chain of events. *See* 568 U.S. at 409 (future injury may establish standing if the injury is "certainly impending" rather than merely "possible") (internal citations omitted); *McCardell v. U.S. Dep't of Hous. and Urban Dev.*, 794 F.3d 510, 520 (5th Cir. 2015) (plaintiff's "injury is inescapably 'speculative' in the sense that it is not yet felt. But unlike in *Clapper*…, the chain-of-events framework in this case involves fewer steps and no 'unfounded assumptions.'"); *Doe 1 v. Trump*, 275 F. Supp. 3d 167, 202 (D.D.C. 2017) ("Plaintiffs have demonstrated a chain of causation leading to concrete and particularized injuries in which there are few links and each link is substantially likely to occur").

Here, the chain of causation between the Farm Act and Plaintiffs' injuries has few links, and each link is likely to occur. The causal connection between the Act and the Plaintiffs' injury is clearer than the causal connection asserted in *Clapper*, where the challenged statute applied to third parties (not directly to the plaintiffs), and where the exercise of statutory authority was a matter of discretion. *See* 568 U.S. at 411-12. It is clear that the Farm Act will apply to Plaintiffs, and its harmful effect on Plaintiffs' activities is certain. Plaintiff FLOC is the only union regulated by the Act. DE 34-5 ¶ 54. The statute prevents all dues checkoff agreements benefiting FLOC and similarly prevents FLOC from entering into or benefiting from any settlement agreements with agricultural producers. N.C. Gen. Stat. § 95-79(b). The application of the Farm Act to

10

Plaintiffs is therefore not a question left to the discretion of government officials but is explicitly commanded by statute. *See Lujan*, 504 U.S. at 561-62 (if "the plaintiff is himself an object of the action (or forgone action) at issue….there is ordinarily little question that the action or inaction has caused him injury"); *Constitution Party of Penn. v. Aichele*, 757 F.3d 347, 362 (3d Cir. 2014) (the fact that the challenged portion of the Pennsylvania election code directly regulated the category of organizations to which plaintiffs belonged supported plaintiffs' argument for standing). Indeed, Plaintiffs marshal evidence that the legislature deliberately targeted FLOC and its members, with the intent to punish FLOC and its members and suppress their speech. *See* DE 34-18 at 3-4. That intentional targeting further supports standing.

Plaintiffs have also provided evidence, including Plaintiff declarations and expert reports, showing that the Farm Act will harm them in concrete and particularized ways. The Act will result in a dramatic reduction in dues collection for FLOC, forcing FLOC to divert its staff to fundraising and impeding FLOC's ability to provide personal assistance to its members. DE 34-4 ¶¶ 23-33; DE 34-5 ¶¶ 41-48, 56-61; DE 34-6 ¶¶ 20-24; DE 34-7 ¶¶ 13-18; DE 34-24 ¶¶ 16-18. The Act also prohibits FLOC and its members from growing FLOC's membership through dues checkoff agreements or negotiating for union recognition as part of agreements to settle litigation, activities regularly conducted before the Act. DE 34-5 ¶¶ 14-18, 31-32, 49, 63; DE 34-7 ¶¶ 9, 20; *see also* DE 34-24 ¶¶ 16-28. The Individual Plaintiffs, meanwhile, risk losing the ability to associate with FLOC now

11

that dues checkoff is unavailable. DE 34-6 ¶¶ 20-23; DE 34-7 ¶¶ 13-17. These injuries to FLOC and the Individual Plaintiffs are not hypothetical outcomes resulting from a highly attenuated chain of possibilities, but rather the direct and inevitable result of the Farm Act's restrictions on FLOC's standard way of operating, the way unions commonly organize and retain members, and the resulting need for FLOC to adapt to those new restrictions. *See McCardell*, 794 F.3d at 520 (plaintiff satisfied standing requirements because the "asserted injury would be concretely felt in the logical course of probable events flowing from an unfavorable decision by this court"); *see also Aichele*, 757 F.3d at 364 (injury was sufficiently imminent where the risk of incurring cost-shifting sanctions under the challenged statute burdened plaintiffs' electioneering activity and impeded their plans for seeking public office).

Warren's argument that Plaintiffs' injuries are dependent on the conduct of independent actors also fails. Because the "independent actors" that Warren identifies—FLOC's members and agricultural employers—are subject to the Farm Act, their conduct is constrained by law. *See* DE 47 at 23-24. The Court therefore need not engage in "guesswork as to how [these] independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413.

### B. The alleged injury is fairly traceable to Warren.

Plaintiffs have also established a causal connection between their injuries and the challenged action of Warren. As explained above, Warren is the head of an agency that is

12

highly relevant to the statute's enforcement. *See supra* at 3-4. As a result, Plaintiffs' injuries—which stem from the unenforceability of dues checkoff agreements and certain settlement agreements—are traceable to Warren's performance of his duties as AOC Director. Because Warren is charged with ensuring compliance with state and federal laws in the North Carolina courts, and because the challenged statute operates primarily through the North Carolina court system, Plaintiffs' injuries are traceable to Warren and not the result of the independent action of a third party not before the Court.

## CONCLUSION

For the reasons stated, Plaintiffs' Amended Motion for a Preliminary Injunction should be granted.

Respectfully submitted,

/s/ Julia Solórzano
Julia Solórzano
Georgia Bar No. 928725
julia.solorzano@splcenter.org
Kristi L. Graunke
North Carolina Bar No. 51216
kristi.graunke@splcenter.org
Southern Poverty Law Center
150 E. Ponce de Leon Ave., Ste. 340
Decatur, GA 30030
Graunke Tel.: 334-324-5177
Solórzano Tel: 404-521-6700

Brian Hauss
New York Bar No. 5437751
bhauss@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212-549-2500
Fax: 212-549-2650

Meredith B. Stewart
Louisiana Bar No. 34109
meredith.stewart@splcenter.org
Southern Poverty Law Center
1055 St. Charles Avenue, Ste. 505
New Orleans, LA 70130
Tel.:   504-486-8982
Fax:   504-486-8947

Christopher Brook
North Carolina Bar No. 33838
cbrook@acluofnc.org
Emily E. Seawell
North Carolina Bar No. 50207
eseawell@acluofnc.org
ACLU of North Carolina
P. O. Box 28004
Raleigh, NC  27611-8004
Tel: 919-834-3466

Carol Brooke
North Carolina Bar No. 29126
carol@ncjustice.org
Clermont Ripley
North Carolina Bar No. 36761
clermont@ncjustice.org
North Carolina Justice Center
PO Box 28068
Raleigh, NC 27611
Brooke Tel: 919-856-2144
Ripley Tel.: 919-856-2154
Fax: 919-856-2175

Robert J. Willis
North Carolina Bar No. 10730
rwillis@rjwillis-law.com
Law Office of Robert J. Willis, P.A.
P.O. Box 1828
Pittsboro, NC 27312
Tel: 919-821-9031
Fax: 919-821-1763


*Counsel for Plaintiffs*

# **CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS OF LR 7.3(d)**

Relying on the word count function of Microsoft Word, I hereby certify that this brief complies with L.R. 7.3(d) word count limitations.

/s/ Julia Solórzano
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on March 6, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve counsel for all parties.

/s/ Julia Solórzano<br>
*Counsel for Plaintiffs*