**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No. 1:17-cv-01037-UA-LPA**

| | |
|---|---|
| **FARM LABOR ORGANIZING COMMITTEE, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **JOSHUA STEIN, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT JOSHUA STEIN**

## INTRODUCTION

Defendant Joshua Stein moves to dismiss the claims against him in this action, arguing that the Court lacks personal jurisdiction over him and that Plaintiffs lack standing to bring this lawsuit. DE 44. The Court should deny the motion to dismiss. Stein is a proper defendant because, as Attorney General, he is required to investigate, and authorized to bring criminal and civil enforcement actions against, persons entering or conspiring to enter agreements in violation of Section 20.5 of the Farm Act. Plaintiffs have established actual or imminent injury because they allege injuries that are now occurring and directly result from the Act's restrictions on union organizing activities. Plaintiffs' injuries are traceable to Stein because of his statutory duties to investigate and enforce violations of the Act.

## FACTUAL BACKGROUND

On July 12, 2017, North Carolina Session Law 2017-108, also known as the Farm Act, took effect. DE 31 (Am. Compl.) ¶ 1. Section 20.5 of the Act mandates that agreements by agricultural employers to administer union dues payroll deductions requested by employees (commonly known as "dues checkoff" agreements) shall be "invalid and unenforceable as against public policy in restraint of trade or commerce." N.C. Gen. Stat. § 95-79(b). The Act also declares that settlement agreements that include a stipulation that an agricultural employer will recognize or enter into an agreement with a union are similarly "invalid and unenforceable as against public policy in restraint of trade or commerce." *Id*. Persons who enter into or conspire to enter into agreements "in restraint of trade or commerce" are subject to criminal prosecution and civil enforcement actions by the North Carolina Attorney General. *See* N.C. Gen. Stat. §§ 75-1, 75-9 – 75-14.

Plaintiffs Farm Labor Organizing Committee (FLOC), Victor Toledo Vences, and Valentin Alvarado Hernandez brought this action alleging that the Farm Act violates the First and Fourteenth Amendments, as well as the Bill of Attainder Clause, of the United States Constitution. *See* DE 1. Plaintiffs filed an amended complaint on February 5, 2018. DE 31. On March 2, 2018, Defendant Stein filed a motion to dismiss Plaintiffs' Amended Complaint. DE 44.

## ARGUMENT

### I. Legal Standards

#### A. Rule 12(b)(2)

When a court decides jurisdiction on the motion papers alone, the plaintiff need only make a prima facie showing of a sufficient jurisdictional basis to prevail. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (internal citation omitted). The court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (internal citation omitted).

#### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). All well-pleaded facts in the complaint must be regarded as true and construed in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

#### C. Rule 12(b)(1)

When a defendant makes a facial challenge to subject matter jurisdiction under Rule 12(b)(1), the plaintiff is afforded the same standards that apply to a Rule 12(b)(6)

challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The motion to dismiss must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. *Id.*

## II. Stein is a proper defendant because he has a special relation to the Farm Act.

Defendant Stein argues that the Eleventh Amendment bars the claims brought against him, requiring dismissal of Plaintiffs' claims pursuant to Rules 12(b)(1), (2) and (6). DE 45 at 8-15. However, because Stein has investigative and enforcement authority with regard to the challenged statute, he falls within an exception to Eleventh Amendment immunity.

### A. Eleventh Amendment immunity and the *Ex parte Young* doctrine

Under the Eleventh Amendment doctrine of sovereign immunity, a state generally may not be sued by one of its own citizens without its consent. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). An exception exists where a plaintiff sues in federal court to enjoin a state officer from enforcing an unconstitutional statute. *Ex parte Young*, 209 U.S. 123 (1908); *Waste Mgmt.*, 252 F.3d at 329-30. For this exception to apply, there must be a "special relation" between the state officer defendant and the enforcement of the challenged statute; that is, the "defendant must have some connection with the enforcement of the act." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) (internal quotations omitted). The defendant's connection to the

challenged statute need not arise from the challenged statute itself, but may arise from other statutory provisions. *Ex parte Young*, 209 U.S. at 157. Significantly, the claim of sovereign immunity is not a jurisdictional defense, but a defense that the defendant bears the burden of proving. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014). As set forth below, Stein has failed to carry his burden.

**B. Stein has a statutory duty to enforce the Farm Act's prohibition on agreements in restraint of trade or commerce.**

The Farm Act declares that dues checkoff agreements and settlement agreements between agricultural producers and FLOC are "invalid and unenforceable as against public policy *in restraint of trade or commerce*." N.C. Gen. Stat. § 95-79(b) (emphasis added). The statutory language of § 95-79(b) refers to Chapter 75 of the General Statutes, which prohibits "[e]very contract, combination…, or conspiracy in restraint of trade or commerce in the State of North Carolina," N.C. Gen. Stat. § 75-1, and establishes an enforcement scheme for violations. Any person or corporation who makes, or conspires to make, a contract in restraint of trade or commerce is guilty of a Class H felony. *Id.* As Attorney General, Stein is *required* to investigate activities "which are or may be embraced within the meaning of the statutes . . . defining and denouncing trusts and combinations against trade and commerce, or which he shall be of opinion are so embraced." N.C. Gen. Stat. § 75-9. Following such investigation, Stein has the authority to "take charge of and prosecute all cases" regarding illegal restraint of trade or commerce in both criminal and civil actions. N.C. Gen. Stat. §§ 75-13 & 75-14. The

Farm Act's invocation of Chapter 75 requires Stein to investigate, and authorizes him to take legal action against, parties to contracts prohibited by the Act. That authority gives Stein a special relation to the Act.

In *Does 1-5 v. Cooper*, 40 F. Supp. 3d 657 (M.D.N.C. 2014), this Court held that the Attorney General satisfied the special relation requirement based on a similar enforcement role. The plaintiffs in that case challenged a statute restricting the locations where registered sex offenders can "knowingly be." *Id.* at 664-65. Violation of the statute was a Class H felony. *Id*. Then-Attorney General Roy Cooper argued that he was not a proper defendant because he lacked authority to criminally prosecute violations of the statute. *Id*. at 672. This Court disagreed, pointing to a *separate* statute that allows the Attorney General's office to prosecute criminal cases upon the request of a District Attorney. *Id*. at 673-74. Based on that statute, the Court reasoned that the Attorney General had "at the outset" statutory authority to enforce violations of the location restriction statute, and thus was a proper defendant. *Id*.

Here, the Attorney General's authority to enforce the challenged statute is even more direct. Stein's authority to investigate or prosecute does not rely on a request from a district attorney; he is *required* to investigate possible contracts in restraint of trade or commerce and authorized to bring his own criminal or civil enforcement action. *See* N.C. Gen. Stat. §§ 75-9 – 75-14. Stein's statutory mandate to enforce the law against those

who enter into contracts declared invalid by the Farm Act makes him a proper defendant in this action.

Stein claims that he has discretion with regard to investigation and enforcement under Chapter 75, DE 45 at 14 n.4, but such discretion only applies to enforcement action. He is *required* to investigate possible combinations in restraint of trade or commerce. N.C. Gen. Stat. § 75-9. Moreover, he cites no authority for the proposition that a defendant's enforcement duties must be mandatory in order for the *Ex parte Young* exception to apply. *Does 1-5* illustrates that discretionary authority is sufficient. 40 F. Supp. 3d at 672-74.

Defendant Stein also contends that Chapter 75 does not apply to employment practices and employer-employee relationships.[1] Notably, the Farm Act addresses agreements between farmworker unions and agricultural employers, which are not employer-employee relationships.

Moreover, the North Carolina Supreme Court has observed that "the mere existence of an employer-employee relationship does not in and of itself serve to exclude

[1] The cases Stein cites are factually inapposite and do not support the his assertion that Chapter 75 does not apply to violations of the Farm Act. *See Burkeen v. Advantage RN*, 1:15CV420, 2016 WL 1122051, at *3 (M.D.N.C. Mar. 22, 2016) (no Chapter 75 remedies for breach of employment contract); *White v. Thompson*, 691 S.E.2d 676, 676 (N.C. 2010) ("This case presents the question whether the General Assembly intended unfair or deceptive conduct among *partners contained solely within a single business* to be 'in or affecting commerce'") (emphasis added); *Kinesis Advert., Inc. v. Hill*, 652 S.E.2d 284, 298 (N.C. Ct. App. 2007) (violation of a covenant-not-to-compete lies outside Chapter 75).

a party from pursing [a claim under Chapter 75].” *Dalton v. Camp*, 548 S.E.2d 704, 710 (N.C. 2001). Indeed, the North Carolina Supreme Court has specifically held that Chapter 95, which regulates labor, and which contains the statute challenged in this action, may be enforced through Chapter 75. *Winston Realty Co. v. G.H.G., Inc.*, 331 S.E.2d 677, 681 (N.C. 1985) (false representations by personnel agencies in violation of N.C. Gen. Stat. § 95-47.6 also violated Chapter 75); *see also State v. Whitaker*, 45 S.E.2d 860 (N.C. 1947) (upholding criminal convictions of employer and union officers under Chapter 75 for entry into an agreement that violated the state’s right to work statute (now codified as Gen. Stat. § 97-79(a))).

Here, the intent of the legislature to incorporate Chapter 75’s enforcement scheme is clear. The General Assembly deliberately used the phrase “in restraint of trade or commerce,” a term of art which is not defined in the Act and has no logical reference point other than to invoke the enforcement scheme of Chapter 75. *See Sheffield v. Consol. Foods Corp.*, 276 S.E.2d 422, 437 (N.C. 1981) (“When a term has long-standing legal significance, it is presumed that legislators intended the same significance to attach by use of that term, absent indications to the contrary”). Further undermining Stein’s argument is the fact that the federal Sherman Act applies to unions that act in combination with businesses to restrain trade. *H.A. Artists & Assocs., Inc. v. Actors’ Equity Ass’n*, 451 U.S. 704, 714-16 (1981). This is significant in analyzing the application of Chapter 75 to dues checkoff and settlement agreements between FLOC or

its members, and agricultural producers because "the body of law applying the Sherman Act, although not binding upon this Court in applying G.S. 75-1, is nonetheless instructive in determining the full reach of that statute." *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973). The General Assembly's use of "in restraint of trade or commerce" clearly invokes Chapter 75's enforcement scheme, including criminal and civil enforcement by Defendant Stein.

### C. There is a credible threat that the Attorney General will enforce the Farm Act.

Defendant Stein argues that he should be dismissed because he has not engaged in an ongoing violation of the Constitution. DE 45 at 11-15. *Ex parte Young*'s ongoing violation requirement, however, serves only to bar claims for retrospective relief. *See Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (*Ex parte Young* "does not permit federal courts to entertain claims seeking retrospective relief . . . for completed, not presently ongoing violations of federally-protected rights"). Here, Plaintiffs' claims easily satisfy the ongoing violation requirement; the Farm Act is still in effect, and Plaintiffs seek prospective, rather than retrospective, relief.

Defendant Stein further argues that he is not a proper defendant because he has not acted or threatened to act to enforce the Farm Act. Stein relies principally on *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010), in which the Fourth Circuit held that the Virginia Attorney General was not a proper defendant to a lawsuit challenging citizenship requirements under the Virginia Freedom of Information Act (VFOIA). In *McBurney*, the

Attorney General was not a proper defendant because he had no specific statutory duty related to, nor any involvement in, VFOIA's enforcement. 616 F.3d at 400-02. By contrast, Stein has explicit statutory authority to investigate and enforce violations of the Farm Act.[2]

Courts have repeatedly held that a threat of criminal enforcement is credible as long it is "not imaginary or wholly speculative." *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979). Significantly, unlike *McBurney*, this case implicates First Amendment rights. As such, Plaintiffs demonstrate a credible threat if they show that the challenged statute burdens the expressive or associative activities of a class of persons to which the plaintiff belongs. *See Cooksey v. Futrell*, 721 F.3d 226, 237 (4th Cir. 2013) (plaintiff demonstrated credible threat where he belonged to a class whose speech was regulated by the statute); *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705,

[2] Stein also relies on *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986) ("A litigant must show more than the fact that state officials stand ready to perform their general duty to enforce laws"). There, the court held that, because of the "total absence of prosecutions" under the "antique" Virginia fornication statute (and indeed, no convictions under any Virginia fornication law for more than a century), the plaintiffs failed to show that the threat of prosecution was "real and immediate" rather than "imaginary or speculative." *Id.* at 1204-07. *Duling* is inapposite, especially since the Farm Act is less than a year old. *See, e.g.*, *Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73, 74-76 (4th Cir. 1991) (where law had been enacted a year earlier, "[w]e see no reason to assume that the Virginia legislature enacted this statute without intending it to be enforced."); *Hoffman v. Hunt*, 845 F. Supp. 340, 347 (W.D.N.C. 1994) ("[T]he newness of this statute is also what gives it vigor and potential potency . . . . Its youth counsels not that it will go unenforced, but instead that the reach of its proscriptions and the zeal of their enforcement remains unknown.").

710 (4th Cir. 1999) (threat of enforcement is credible where a non-moribund statute restricts expressive activity by the class to which the plaintiff belongs).

Moreover, courts in the Fourth Circuit have repeatedly recognized that state officials are proper defendants based on their statutory official duties, without requiring additional allegations that the official acted or threatened to act. *See, e.g.*, *Limehouse*, 549 F.3d at 333; *Capital Associated Indus., Inc. v. Cooper* ("*CAI*"), 129 F. Supp. 3d 281, 300-07 (M.D.N.C. 2015); *Red Wolf Coal. v. N.C. Wildlife Res. Comm'n*, No. 2:13-CV-60-BO, 2014 WL 1922234, at *4 (E.D.N.C. May 13, 2014). In *CAI*, this Court rejected the defendant's Eleventh Amendment defense despite the fact that the plaintiff did not allege any facts showing that the defendants intended to take any action against them, reasoning that "[a]ll that is required of [the plaintiff] is that it allege ongoing violations of its constitutional rights, which [the plaintiff] has done, and that [the defendants] have some connection with the enforcement of the [challenged statute]." 129 F. Supp. 3d at 307. As in those cases, Stein is a proper defendant based on the statutory duties of his office, which include investigating and taking enforcement action against those who enter into agreements that the Farm Act has declared to be illegal.

## III. Plaintiffs have standing to challenge the 2017 Farm Act.

Stein argues that Plaintiffs lack standing and their claims must be dismissed pursuant to Rule 12(b)(1). Article III standing has three elements: injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). To

establish injury in fact, a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id*. at 560 (internal citations omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)) (quotation marks omitted).

### A. Plaintiffs have established injury in fact.

#### i. The Act prevents FLOC from engaging in its prior and ongoing expressive activities.

Plaintiffs have alleged that the Farm Act currently prevents FLOC from engaging in its prior and ongoing expressive and associative activities to advocate for its members. The Act hinders FLOC and its members' ability to advance or publicize their interests through litigation because the Act prevents FLOC from settling litigation or anticipated litigation as a party, securing recognition as a bargaining representative in settlements by FLOC members, or obtaining collective bargaining agreements (CBAs) in settlements entered into by FLOC members. DE 31 ¶ 89. FLOC has had at least one opportunity since the passage of the Act to assist members who had potential employment claims to negotiate a settlement. *Id*. ¶ 90. Because of the Act, those members are unable to seek a settlement agreement that includes voluntary recognition of FLOC as their bargaining representative and dues checkoff. *Id*.

Additionally, because dues checkoff agreements are unenforceable under the Act, FLOC is unable to grow its membership by entering into new dues checkoff agreements, which was FLOC's standard practice prior to the Act. *Id*. ¶ 87. FLOC has had at least one opportunity since the passage of the Act to negotiate a CBA with an agricultural producer, and because of the Act it was unable to negotiate a dues checkoff agreement. *Id*.

By declaring that dues checkoff agreements and settlement agreements that include recognition of FLOC are "in restraint of trade or commerce," the Act chills FLOC from joining new members and advocating for the interests of itself and its members, central and regular activities of FLOC. *See id.* ¶¶ 37-38, 43, 55, 61, 87, 89-92. State law provides for felony prosecution and civil enforcement action by Defendant Stein for "conspiracy in restraint of trade or commerce." N.C. Gen. Stat. §§ 75-1 – 75-14. As such, FLOC risks civil and criminal liability any time it raises the possibility of union recognition to resolve a dispute, since FLOC may be accused of attempting or conspiring to enter into an agreement in restraint of trade.

When a plaintiff asserts injury based on the threatened enforcement of a law, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus*, 134 S. Ct. at 2342. The plaintiff may establish injury in fact by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and [that] there exists a credible threat of

prosecution thereunder." *Id*. (internal citation omitted); *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011) (chill of First Amendment rights satisfies injury in fact requirement). A threat of prosecution is credible if it is "not imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302.

Here, Plaintiffs have alleged a desire to continue their previous practices of negotiating for dues checkoff and employer recognition of FLOC, activities that implicate Plaintiffs' First Amendment rights to association and expression. DE 31 ¶¶ 39, 84, 87, 89, 90; *see Babbitt*, 442 U.S. at 299-303 & n.11 (case was justiciable and farmworker union had standing where it alleged past practices arguably proscribed by a new statute). Such agreements are unequivocally proscribed by the Farm Act, and Stein's authority to investigate and bring enforcement actions regarding combinations in restraint of trade or commerce constitutes a credible threat of enforcement. The threat of enforcement—whether by Stein or by private parties pursuing civil actions, *see* N.C. Gen. Stat. § 75-16—is particularly credible in light of Plaintiffs' assertion that the legislature deliberately targeted FLOC and its members, with the intent to punish them and suppress their speech. DE 31 ¶¶ 80, 103-105.[3]

---

[3] That threat is no less credible in light of Stein's current assertion that Chapter 75 does not apply to Plaintiffs' activities. The plain language of N.C. Gen. Stat. §§ 95-79(b), 75-1, & 75-9 – 75-14 situates Plaintiffs' activities within the conduct proscribed by Chapter 75 and requires Stein to investigate alleged violations. As such, if Plaintiffs lacked standing on the basis of Stein's interpretation of Chapter 75, then their "First Amendment rights would exist only at the sufferance of [Stein]," with "no guarantee that [Stein] might not tomorrow bring [his] interpretation more in line with the provision's plain language."

These significant changes to FLOC's normal manner of operating, including loss of opportunities to enter into contracts, constitute injury in fact. *See Babbitt*, 442 U.S. at 299-303 & n.11 (standing and a justiciable case and controversy existed where a union challenged Arizona law that created procedures for union elections, arguably proscribed regular union publicity efforts directed at consumers, and created criminal penalties for violations); *Am. Fed'n of Gov't Emps. Local 1 v. Stone*, 502 F.3d 1027, 1032-34 (9th Cir. 2007) (union had standing to challenge firing of an employee for attempting to recruit new members where the firing interfered with the union's ability to solicit membership and communicate its message); *Waste Mgmt.*, 252 F.3d at 332 (state law interfering with plaintiffs' ability to bid on contracts caused harm sufficient to confer standing); *Int'l Union, United Auto. Aerospace, & Agric. Implement Workers of Am. v. Brock*, 783 F.2d 237, 246-47 (D.C. Cir. 1986) (union had standing to challenge a reduction of statutory reporting requirements for employers because the reduction deprived the union of information about employer activities aimed at discouraging employee organization and thereby interfered with the union's ability to organize.); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 135-36 (E.D.N.Y. 2013) (organization had standing because the challenged ordinance prevented the organization's standard practice of meeting with day laborers at street corners).

---

*See N.C. Right to Life*, 168 F.3d at 711 (finding a threat of prosecution credible where "the only thing standing in the way of a criminal prosecution is the State's litigation position that it will voluntarily refrain from enforcing the statute according to its plain language").

### ii. The Act will force FLOC to divert its resources.

In addition to preventing FLOC from engaging in its prior and ongoing expressive and associative activities, the Farm Act will have a tremendous impact on FLOC's funding and will force FLOC to divert its limited resources. Plaintiffs have alleged that union member dues constitute 50 to 60 percent of FLOC's annual budget, and that barriers such as lack of access to bank accounts prevent many farmworkers from paying union dues by any method besides dues checkoffs. DE 31 ¶¶ 83-84. The Act's prohibition on dues checkoff agreements will therefore leave FLOC unable to collect dues from most of its current members once the current CBAs expire, forcing FLOC to divert most of its staff resources to dues collection or other fundraising efforts. *Id.* ¶¶ 56, 88. Courts have long recognized such diversion of organizational resources as a basis for standing. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982); *N.C. State Conference of NAACP v. N.C. State Bd. of Elections*, 1:16cv1274, ---F. Supp. 3d ---, 2017 WL 4286275, at *6 (M.D.N.C. Sept. 26, 2017).

### iii. The Individual Plaintiffs have alleged injury in fact.

The Amended Complaint also establishes injury in fact with regard to Plaintiffs Victor Toledo Vences and Valentin Alvarado Hernandez (hereinafter the Individual Plaintiffs). The Individual Plaintiffs, both Mexican nationals who have returned to North Carolina repeatedly to work as agricultural "guestworkers" in previous years, plan to return to North Carolina to work in future seasons, as guaranteed by the relevant CBAs.

DE 31 ¶¶ 10-11. They rely on dues checkoff to pay their FLOC dues and wish to continue using dues checkoff in the future, but because of the Farm Act, they will not be able to do so once the current CBAs expire. *Id*. ¶¶ 10-11, 56, 84-85. Indeed, they risk criminal and civil enforcement actions by Defendant Stein for conspiracy in restraint of trade or commerce for even raising the possibility of dues checkoff. Moreover, the Individual Plaintiffs will be harmed by FLOC's diminished capacity to provide personal assistance to its members, as described above. *Id.* ¶ 88.

Defendant Stein argues that the Individual Plaintiffs' injuries are not sufficiently concrete because they are not currently working in North Carolina. DE 45 at 19. This is incorrect because (1) they are current FLOC members; (2) they have repeatedly worked in North Carolina in past agricultural seasons and relied on dues checkoffs to pay union dues during those seasons; (3) they intend to return to North Carolina in future seasons; (4) they have a right of rehire under their current union contracts; and (5) they want to continue relying on checkoffs to pay dues in the future. DE 31 ¶¶ 10-11; *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (in Clean Water Act suit, plaintiffs adequately alleged injuries in fact when they had previously used a river area for recreation and were deterred from doing so by the defendant's discharge of pollutants into the river); *Hill v. Coggins*, 867 F.3d 499, 506 (4th Cir. 2017), *cert. denied*, No. 17-865, 2018 WL 942505 (U.S. Feb. 20, 2018) (plaintiffs had standing under the Endangered Species Act to challenge a zoo's treatment of bears where

the plaintiffs stated "that they are willing and able to go back and visit the bears if the conditions that the bears live in are improved").

**iv. Plaintiffs' injuries satisfy the actual or imminent requirement.**

Stein argues that Plaintiffs have failed to establish injury in fact because the alleged injuries are hypothetical, speculative, and dependent on the conduct of independent actors. DE 45 at 15-20. Stein relies primarily on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), in which the Supreme Court held that the plaintiffs' standing theory failed because it relied on a "highly attenuated chain of possibilities." 568 U.S. at 410. The *Clapper* plaintiffs—U.S.-based attorneys and human rights, labor, legal, and media organizations whose work required them to engage in sensitive international communications with individuals outside the U.S.—challenged a provision of the Foreign Intelligence Surveillance Act (FISA) that permitted surveillance of non-U.S. persons located abroad. *Id*. at 401-07. The plaintiffs asserted injury based on an objectively reasonable likelihood that their communications would be surveilled in the future. *Id*.. The Supreme Court held that they had not satisfied their burden at the summary judgment stage to establish actual or imminent injury. *Id*. at 410-14.[4] The Court characterized the plaintiffs' fear of injury as highly speculative, observing that the injury to the plaintiffs would occur only if: (1) the government decided to target the communications of non-

[4] Because the *Clapper* plaintiffs faced a standing challenge at the summary judgment stage, not the motion to dismiss stage, they bore a significantly higher burden than do the Plaintiffs in this case. *Schuchardt v. President of the U.S.*, 839 F.3d 336, 351 (3d Cir. 2016) (distinguishing *Clapper* on this basis).

U.S. persons with whom the U.S.-based plaintiffs communicate, (2) the government invoked the challenged provision to surveil the plaintiffs' communications, (3) the Foreign Intelligence Surveillance Court approved the government's proposed surveillance, (4) the government succeeded in intercepting the communications, and (5) the plaintiffs were parties to the intercepted communications. *Id*. at 410.

This case differs from *Clapper* in several key respects. First, FLOC and its members, unlike the *Clapper* plaintiffs, have alleged actual injuries which have already occurred. Since the passage of the Farm Act, FLOC has had at least one opportunity to negotiate a CBA with an agricultural producer and at least one opportunity to assist members with potential employment claims to negotiate for a pre-filing settlement of those claims. DE 31 ¶¶ 87, 90. Because of the Act, FLOC has been unable to negotiate a dues checkoff agreement, nor can they seek a settlement agreement that includes voluntary recognition of FLOC. *Id.* Far from being hypothetical, speculative, or dependent on the conduct of independent actors, these injuries have already occurred, and *Clapper*'s analysis is inapplicable. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 210 (4th Cir. 2017) (distinguishing *Clapper* where defendant National Security Agency had already intercepted plaintiff's communications).

To the extent that FLOC and the Individual Plaintiffs allege future harm, that harm is sufficiently imminent to establish standing. *Clapper* did not preclude standing based on future harm or harm that depends on the occurrence of a chain of events; *Clapper* merely

precluded standing based on a long, attenuated, and overly conjectural chain of events. *See* 568 U.S. at 409 (future injury may establish standing if the injury is "certainly impending" rather than merely "possible") (internal citations omitted); *McCardell v. U.S. Dep't of Hous. & Urban Dev.*, 794 F.3d 510, 520 (5th Cir. 2015) (plaintiff's "injury is inescapably 'speculative' in the sense that it is not yet felt. But unlike in *Clapper*, where the alleged injury depended on a long and tenuous chain of contingent events, the chain-of-events framework in this case involves fewer steps and no 'unfounded assumptions.'"); *Doe 1 v. Trump*, 275 F. Supp. 3d 167, 202 (D.D.C. 2017) ("Plaintiffs have demonstrated a chain of causation leading to concrete and particularized injuries in which there are few links and each link is substantially likely to occur").

The causal connection between the Farm Act and Plaintiffs' injury is clearer here than the causal connection asserted in *Clapper*, where the challenged statute applied to third parties and not directly to the plaintiffs. Here it is clear that the Farm Act will apply to Plaintiffs, and its effect on Plaintiffs' activities is unequivocal. The Act directly regulates Plaintiffs' activities, including their negotiations for and entry into dues checkoff and settlement agreements and efforts to secure and maintain membership through dues checkoffs. Plaintiff FLOC is the only union regulated by the Act. DE 31 ¶ 80. The statute applies to all dues checkoff agreements designating FLOC as a recipient of dues, and all agreements to settle litigation between FLOC and agricultural producers, or which stipulate to an agreement with FLOC. *See* N.C. Gen. Stat. § 95-79(b)); *see also*

*Lujan*, 504 U.S. at 561-62 (if "the plaintiff is himself an object of the action (or forgone action) at issue . . . there is ordinarily little question that the action or inaction has caused him injury"); *Constitution Party of Penn. v. Aichele*, 757 F.3d 347, 362 (3d Cir. 2014) (the fact that the challenged portion of the Pennsylvania election code directly regulated the category of political organizations to which plaintiffs belonged supported plaintiffs' argument for standing). Indeed, Plaintiffs assert that the legislature deliberately targeted FLOC and its members, with the intent to punish them and suppress their speech. DE 31 ¶¶ 80, 103-05. The intentional targeting alleged here further supports standing. *See Scooters of Charleston v. City of Charleston, S.C.*, 182 F.3d 909 (4th Cir. 1999) (plaintiff satisfied injury requirements because plaintiff was the only party affected by the challenged ordinance "and indeed appears to have been the target of the ordinance in the first place").

The chain of causation between the Farm Act and Plaintiffs' future injuries has few links, and each link is likely to occur. FLOC and the Individual Plaintiffs have alleged facts establishing that, because of the Farm Act, they will be harmed in concrete and particularized ways. Plaintiffs have alleged that half or more of FLOC's annual budget comes from union member dues, and that current FLOC members will have difficulty paying dues once the current CBAs expire and dues checkoff is not available. DE 31 ¶¶ 56, 83-84. As a result, FLOC will have to divert its staff to collection of dues and other fundraising, impeding its ability to maintain the level of personal assistance it

provides to its members. *Id*. ¶ 88. FLOC has further alleged that the Act prohibits it from growing its membership through dues checkoff agreements or negotiating for union recognition as part of agreements to settle litigation, both of which were FLOC's routine practices before the Act. *Id*. ¶¶ 87, 89. The Individual Plaintiffs have alleged that they rely on dues checkoff to pay their FLOC dues, and that they risk losing the ability to associate with FLOC now that dues checkoff is unavailable. *Id*. ¶¶ 84-86.

These injuries to FLOC and the Individual Plaintiffs are the direct and inevitable result of the Farm Act's restrictions on FLOC's standard way of operating, the way unions in North Carolina commonly organize and retain members, and the resulting need for FLOC to adapt to those new restrictions. *See McCardell*, 794 F.3d at 520 (plaintiff satisfied standing requirements because the "asserted injury would be concretely felt in the logical course of probable events flowing from an unfavorable decision by this court"); *see also Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (injury was sufficiently imminent where plaintiffs' data had already been stolen, even though no fraud had yet occurred); *Aichele*, 757 F.3d at 364 (injury was sufficiently imminent where the risk of cost-shifting sanctions under the challenged statute burdened plaintiffs' electioneering activity and impeded their plans for seeking public office).

**v. Plaintiffs' injuries are not dependent on the conduct of independent actors.**

Defendant Stein's argument that Plaintiffs' injuries, particularly those related to dues collection, are dependent on the conduct of independent actors also fails. The

conduct of the “independent actors” that Stein identifies—FLOC’s members and agricultural employers—is far more predictable than that of the independent actors identified in *Clapper*. Unlike government officials acting with discretion, *see* 568 U.S. at 412, agricultural employers must operate within the parameters of the Farm Act, which now prevents them from entering into voluntary dues checkoff agreements and settlement agreements with FLOC and its members. Therefore, it is clear that those employers will not enter into dues checkoff agreements with Plaintiffs after the current CBAs expire or the now-prohibited settlement agreements because they would be committing a felony, subjecting themselves to civil liability, and wasting time and resources by entering an unenforceable and invalid agreement if they did so. Even if a third party might exercise its discretion not to take certain actions, a plaintiff may challenge a law that affirmatively prohibits those actions. *See Fed. Election Comm’n v. Atkins*, 524 U.S. 11, 25 (1998) (plaintiffs had standing to file a complaint with the Federal Election Commission (FEC) to require disclosures by the American Israel Public Affairs Committee, even though the FEC could have exercised discretion not to enforce the requirement).

Moreover, Plaintiffs have made specific factual allegations in the complaint to support their assertion that FLOC will have significant difficulty collecting, and FLOC’s members will have significant difficulty paying, dues in the absence of dues checkoff agreements. DE 31 ¶¶ 83-84. FLOC has pled that dues are a critical and irreplaceable source of its funding. *Id*. ¶ 83. Given the predictable impact of the Act on the conduct of

FLOC members and agricultural employers, the Court need not engage in "guesswork as to how [these] independent decisionmakers will exercise their judgment." *See Clapper*, 568 U.S. at 413. To the extent that their conduct is relevant to Plaintiffs' asserted injury, Plaintiffs have nevertheless shown that their injuries are sufficiently imminent to establish Article III standing.

**B. The alleged injury is fairly traceable to Stein.**

In addition to establishing injury in fact, Plaintiffs must also establish a causal connection between the injury and the challenged conduct; Plaintiffs' injury must be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. *Lujan*, 504 U.S. at 560. Plaintiffs have satisfied this requirement here. As explained above, Stein is required to investigate, and authorized to bring criminal and civil enforcement actions regarding, agreements that the Farm Act has declared to be "in restraint of trade or commerce." *See supra* at 5-9. As a result, Plaintiffs' injuries—which stem from the threat of civil or criminal enforcement actions by Stein—are traceable to the performance of his duties as Attorney General. Because Stein has statutory authority to investigate and enforce violations of the Farm Act, Plaintiffs' injuries are traceable to Stein and not the result of the independent action of a third party not before the Court.

## CONCLUSION

For the reasons stated, Defendant Stein's Motion to Dismiss (DE 44) should be denied.

Respectfully submitted,

/s/ Julia Solórzano
Julia Solórzano
Georgia Bar No. 928725
julia.solorzano@splcenter.org
Kristi L. Graunke
North Carolina Bar No. 51216
kristi.graunke@splcenter.org
Southern Poverty Law Center
150 E. Ponce de Leon Ave., Ste. 340
Decatur, GA 30030
Graunke Tel.: 334-324-5177
Solórzano Tel: 404-521-6700

Meredith B. Stewart
Louisiana Bar No. 34109
meredith.stewart@splcenter.org
Southern Poverty Law Center
1055 St. Charles Avenue, Ste. 505
New Orleans, LA 70130
Tel.: 504-486-8982
Fax: 504-486-8947

Brian Hauss
New York Bar No. 5437751
bhauss@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212-549-2500
Fax: 212-549-2650

Carol Brooke
North Carolina Bar No. 29126
carol@ncjustice.org
Clermont Ripley
North Carolina Bar No. 36761
clermont@ncjustice.org
North Carolina Justice Center
PO Box 28068
Raleigh, NC 27611
Brooke Tel: 919-856-2144
Ripley Tel.: 919-856-2154
Fax: 919-856-2175

Christopher Brook
North Carolina Bar No. 33838
cbrook@acluofnc.org
Emily E. Seawell
North Carolina Bar No. 50207
eseawell@acluofnc.org
ACLU of North Carolina
P. O. Box 28004
Raleigh, NC 27611-8004
Tel: 919-834-3466

Robert J. Willis
North Carolina Bar No. 10730
rwillis@rjwillis-law.com
Law Office of Robert J. Willis, P.A.
P.O. Box 1828
Pittsboro, NC 27312
Tel: 919-821-9031
Fax: 919-821-1763

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS OF LR 7.3(d)**

Relying on the word count function of Microsoft Word, I hereby certify that this brief complies with L.R. 7.3(d) word count limitations.

/s/ Julia Solórzano
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on March 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve counsel for all parties.

/s/ Julia Solórzano
*Counsel for Plaintiffs*