**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| FARM LABOR ORGANIZING | ) | |
| COMMITTEE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:17cv1037 |
| | ) | |
| JOSHUA STEIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion for Reconsideration by North Carolina Farm Bureau Federation, Inc." (Docket Entry 64) (the "Reconsideration Motion"). For the reasons that follow, the Court should deny the Reconsideration Motion.

**BACKGROUND**

**I. Procedural History**

Asserting constitutional and statutory violations, the Farm Labor Organizing Committee ("FLOC"), Victor Toledo Vences, and Valentin Alvarado Hernandez (collectively, the "Plaintiffs") initiated this lawsuit against Roy Cooper, in his official capacity as Governor of the State of North Carolina, and Marion R. Warren, in his official capacity as Director of the North Carolina Administrative Office of the Courts. (See Docket Entry 1 (the "Complaint"), ¶¶ 1, 2, 7, 8.) The following week, Plaintiffs filed

a motion for preliminary injunction. (See Docket Entry 7.) Shortly thereafter, the North Carolina Department of Justice (at times, the "NC DOJ") filed notices of appearance on behalf of Governor Cooper (see Docket Entry 12) and Warren (see Docket Entry 14), after which Governor Cooper and Warren moved to dismiss the Complaint (see Docket Entries 24, 27) on eleventh-amendment immunity and standing grounds (see Docket Entries 25, 27, 28). That same day, the North Carolina Farm Bureau Federation, Inc. (the "Farm Bureau") filed a motion to intervene as a defendant in this action (see Docket Entry 21) pursuant to Rule 24 of the Federal Rules of Civil Procedure (the "Rules"). Rather than attach a proposed answer to its intervention motion, the Farm Bureau instead submitted a proposed motion to dismiss (Docket Entry 21-1). (See Docket Entries 21-1 to 21-6.)

Plaintiffs then filed an amended complaint, which replaced Governor Cooper as a defendant with Joshua Stein, in his official capacity as Attorney General of the State of North Carolina. (See Docket Entry 31 (the "Amended Complaint"), ¶¶ 7, 8, 12, 13 (identifying Stein and Warren as defendants).) Plaintiffs also filed an amended preliminary injunction motion, seeking "to preliminar[ily] enjoin Section 20.5 of the North Carolina General

Assembly Session Law 2017-108, SB 615 ('the Farm Act' or 'the Act')." (Docket Entry 34 at 1.)[1]

In response, the NC DOJ filed a notice of appearance on Stein's behalf (see Docket Entry 36),[2] Stein and Warren moved to dismiss the Amended Complaint (Docket Entries 39, 44), and they opposed Plaintiffs' preliminary injunction request (see Docket Entries 41, 46). Stein's dismissal motion and preliminary injunction opposition relied on eleventh-amendment sovereign immunity and standing grounds. (See generally Docket Entries 45, 46; see also, e.g., Docket Entry 45 at 7 (summarizing dismissal argument as follows: "Plaintiffs' Amended Complaint should be dismissed because the Eleventh Amendment bars all the claims brought against Attorney General Stein in this case, and as a result, this court lacks jurisdiction over him. Moreover, the Amended Complaint should be dismissed because Plaintiffs[] have failed to demonstrate that they have suffered an injury-in-fact and that any alleged injuries are traceable to the Attorney General, and as a result, Plaintiffs lack standing to bring this lawsuit.").) Governor Cooper, Warren, and Stein took "no position on the [Farm Bureau's intervention] motion," but "Plaintiffs

---

1 Docket Entry page citations utilize the CM/ECF footer's pagination.

2 More specifically, the NC DOJ lawyer who previously represented Governor Cooper now represents Stein. (Compare Docket Entry 12 at 1, with Docket Entry 36 at 1.)

oppose[d] th[e] motion." (Docket Entry 21 at 2; see also Docket Entries dated Jan. 25, 2018, to present (containing responses to intervention motion and Reconsideration Motion from Plaintiffs, but not Governor Cooper, Warren, or Stein).)

Thereafter, the undersigned recommended that the Court dismiss Warren from the lawsuit, deny Stein's dismissal motion, deny the Farm Bureau's intervention request, and grant Plaintiffs' preliminary injunction motion. (See Docket Entry 56 (the "Recommendation") at 79-80.) In so doing, the Recommendation concluded:

> Plaintiffs possess standing to pursue this action, but sovereign immunity shields Warren from suit. Conversely, the Ex parte Young exception applies to Stein, rendering him a proper defendant. Further, the Farm Bureau has not shown entitlement to intervention of right or circumstances warranting permissive intervention as a defendant in this action. Finally, Plaintiffs have established entitlement to issuance of an injunction without posting a bond.

(Id. at 79.) Neither Plaintiffs nor Stein objected to the Recommendation. (See Docket Entries dated Aug. 21, 2018, to Sept. 20, 2018.) The Farm Bureau, however, filed objections (see Docket Entry 59), to which it attached a proposed answer (see Docket Entry 59-1) (the "Answer"). Plaintiffs responded in opposition to the Farm Bureau's objections (see Docket Entry 61), but Stein again declined to either endorse or oppose the Farm Bureau's position (see Docket Entries dated Sept. 4, 2018, to Sept. 20, 2018 (containing no response from Stein)).

The Court (per United States District Judge Loretta C. Biggs) "appropriately reviewed the Magistrate Judge's Recommendation and . . . made a *de novo* determination in accord with the Magistrate Judge's Recommendation." (Docket Entry 62 (the "Order") at 1.) Thus, the Court adopted the Recommendation, granted Warren's dismissal request, denied Stein's dismissal request, denied the Farm Bureau's intervention request, and issued a preliminary injunction enjoining Stein "from enforcing the Farm Act." (Id.) Twenty-eight days later, the Farm Bureau filed the Reconsideration Motion. (See Docket Entry 64.) The following day, the Farm Bureau filed a notice of appeal from the Order to the United States Court of Appeals for the Fourth Circuit. (See Docket Entry 66 at 1.)[3]

## II.  Reconsideration Motion

According to the Reconsideration Motion, a week after the Court issued the Order,

> the North Carolina Attorney General's Office posted on its official Twitter account (@NCAGO) a photograph of Defendant Stein addressing a local labor union, with a quote from his remarks. The quote reads, "Unions provide a critical voice to the workers they represent, which benefits both employees and employers. *That's why I have been fighting in the courts to protect your rights*." (Emphasis added.)

(Docket Entry 64, ¶ 9 (emphasis in original).) That same day, the Reconsideration Motion alleges, "Stein made the exact same post to

_____

3   The notice of appeal "becomes effective to appeal [the Order]" once the Court resolves the Reconsideration Motion. Fed. R. App. P. 4(a)(4)(B)(i).

his personal Twitter account." (Id., ¶ 10.)  In the Farm Bureau's view,

> Stein's recent statements and waiver of certain appellate rights have undermined the basis of this Court's Order denying [the] Farm Bureau's Motion to Intervene.  He publicly stated, in both his official capacity as the Attorney General of North Carolina and in his personal capacity, that he is presently fighting in court for union rights.  Moreover, shortly before making those statements he chose not to object to the [Recommendation], thereby voluntarily waiving any right to appeal certain issues raised therein and allowing the injunction of [the Farm Act].  These actions underscore that [the] Farm Bureau's interests have not been and will not be adequately represented by Defendant Stein, the only remaining defendant in this case.

(Id., ¶ 11.)[4]

Stein filed no response to the Reconsideration Motion.  (See Docket Entries dated Oct. 18, 2018, to present.)  However, in response to an order scheduling a hearing on the Reconsideration Motion (see Text Order dated Nov. 26, 2018), Stein stated, in part, that

> [he] disagrees with the Farm Bureau's contention that he cannot adequately defend the lawsuit and notes that he has vigorously defended the Farm Act in this lawsuit to date and intends to continue to do so as this litigation progresses. Accordingly, [Stein] continues to take no position on the Farm Bureau's motion to reconsider its motion to intervene, other than to dispute [the] Farm Bureau's characterizations of the interests of [Stein] in his official capacity.

---

4  The Reconsideration Motion fails to identify any specific "appellate rights" or "issues raised" in the Recommendation that Stein allegedly waived.  (See generally Docket Entries 64, 65.)

(Docket Entry 72 at 3 n.2; see also id. at 8 (explaining that Stein continued to "t[a]k[e] no position" on the Farm Bureau's intervention request, but "dispute[s the] Farm Bureau's mischaracterizations of [Stein's] ability to continue to adequately defend the lawsuit").)

In addition, Plaintiffs filed a response in opposition to the Reconsideration Motion. (See Docket Entry 69.) In particular, Plaintiffs maintain that "[t]he 'new evidence' that the Farm Bureau presents — a tweet by Defendant Stein and Stein's strategic choice not to object to [the] Recommendation — does not provide a reason for the Court to reconsider intervention by the Farm Bureau." (Id. at 4.) Plaintiffs further contend that "[t]he rule that the Farm Bureau urges — that adversity of interest exists any time a government defendant expresses generalized support for a non-party that shares some characteristics with the plaintiff — would be unworkable in practice," as it "would open the door to intervention by third parties in any case concerning a wide variety of topics and entities about which Defendant Stein has publicly spoken." (Id. at 8-9.) Finally, Plaintiffs argue:

> [T]o the extent that Defendant Stein's position in this lawsuit can be discerned from vague commitments and expressions of support contained in his speeches, the Farm Bureau need not worry about adequate representation. A video posted to the Farm Bureau's own YouTube site shows that in 2015 Defendant Stein, then a state senator and a candidate for attorney general, addressed the Farm Bureau's Annual Meeting. *See* Ex. 2 (also available at https://www.youtube.com/watch?v=3s5yhkbsHCQ). Introduced by a Farm Bureau representative as a "friend" of the Farm

Bureau, Defendant Stein told the audience that "there is no more important industrial sector in North Carolina than agriculture." *Id.* He described his close relationship with the [Farm] Bureau and pledged that, "just [as] I have sought out and benefitted from the wisdom of the Farm Bureau as a state senator, I will seek out the wisdom of the Farm Bureau as your attorney general." *Id.* Defendant Stein's expressed belief in the importance of agriculture, followed by a pledge to work in collaboration with the Farm Bureau as attorney general, is similar to the language with which the Farm Bureau takes issue from Defendant Stein's 2018 tweet. Unlike the tweet, however, Stein's 2015 speech directly addresses and aligns his future political office with a would-be party to this litigation. In light of Defendant Stein's prior public statements of strong support for the Farm Bureau (amplified by the Farm Bureau on its own social media), the Court should reject the Farm Bureau's contention of adversity of interest.

(Docket Entry 69 at 9-10 (final set of brackets in original) (citing Docket Entry 69-2).)[5]

### III. Reconsideration Motion Hearing

Thereafter, the Court (per the undersigned) conducted a hearing on the Reconsideration Motion. (<u>See</u> Minute Entry dated

---

5  When introducing Stein, the Farm Bureau representative stated that "he's a friend of ours" and "a legislator with whom we've worked closely over the years." NC Farm Bureau, <u>State Sen. Josh Stein 2015 Annual Meeting</u>, Youtube (Dec. 15, 2015), <u>https://www.youtube.com/watch?v=3s5yhkbsHCQ</u>, at 0:15, 0:21-0:24. The representative further noted that, "during his four terms in the legislature, [Stein] has consistently supported [the] Farm Bureau and Farm Bureau backed legislation." <u>Id.</u> at 0:56-1:04. In turn, Stein thanked the Farm Bureau for its "partnership" and stated that "the work you all do in the General Assembly is extremely important." <u>Id.</u> at 1:32-1:37. He further noted that, as state senator, he had "worked closely with [the Farm Bureau] on issues that are a priority to the Farm Bureau," <u>id.</u> at 5:27-5:41, and specifically emphasized that he had conferred with the Farm Bureau regarding, and "[was] proud to have supported strongly[,] the North Carolina Farm Act of 2015, 2014, and 2013," <u>id.</u> at 6:09-6:29.

Dec. 7, 2018.)  At the hearing, the Farm Bureau "freely concede[d] that" Stein and his NC DOJ counsel "are capable of defending the [Farm Act]."  (Hearing Recording at 3:37; <u>see also</u> <u>id.</u> (stating that Stein and the NC DOJ "will do a fine job of defending the law").)[6]  However, the Farm Bureau contended "that North Carolina Agriculture has a unique perspective and a unique voice" that the Farm Bureau can bring to the litigation, explaining that it "would like to work with the Attorney General's Office to kind of bring to their defense [the Farm Bureau's] unique perspective and abilities."  (<u>Id.</u> at 2:50-51.)  Although it acknowledged that it did not need party status to achieve those ends, the Farm Bureau lamented that as a non-party, it "can't file motions, [it] can't participate in discovery, [and it] can't appeal an adverse ruling." (<u>Id.</u> at 2:54.)  In the Farm Bureau's view, its knowledge of the agriculture industry would enable it to engage in more effective discovery than Stein, although it might not involve any different witnesses.  (<u>See</u> <u>id.</u> at 2:57-3:00.)

The Farm Bureau also conceded that (1) it "ha[s] no reason to believe that the Attorney General's Office wouldn't take [its] call and [(2) it] ha[s] no concerns with the[] abilities or the[] motivations [of that Office]."  (<u>Id.</u> at 3:00.)  Nevertheless,

_____

6    The Clerk's Office created a contemporaneous audio recording of the hearing.  (<u>See</u> Minute Entry dated Dec. 7, 2018.) For readability purposes, this Opinion omits vocal fillers in all quotations from the hearing.

although the Farm Bureau did not believe that "anything untoward" occurred regarding Stein's statement, the Farm Bureau's "position was, if the Attorney General's Office is fighting in court for union rights, who's fighting in court for North Carolina farmers' rights," as "in this particular case, those two things are arguably opposed." (Id. at 2:49.) The Farm Bureau further expressed concern that "the policy position announced on behalf of the North Carolina Department of Justice . . . may limit the Attorney General's Office going forward. If they have a tough choice to make or a close call to make in discovery about whether to pull a punch, . . . they may be influenced by the fact that they've previously articulated a priority or preference for fighting for union rights in a way that [the Farm Bureau is] not." (Id. at 3:01.)

The Farm Bureau could not, however, identify any concrete action that Stein would do or fail to do as a consequence of this alleged limitation nor could it identify any specific issue that Stein waived by not objecting to the Recommendation. (See id. at 2:45-3:02, 3:37-3:43.) Further, although the Farm Bureau "would have objected" to the Recommendation regarding the preliminary injunction motion, it "understands that it was a tactical consideration that [the NC DOJ] made" not to object. (Id. at 3:41-3:42.) In sum, the Farm Bureau stands "ready to be the voice for North Carolina Ag in this case, and [the Farm Bureau] think[s its

members] deserve and have a right to a seat at the table." (Id. at 2:51.)

In response to the Farm Bureau's concerns, Stein and the NC DOJ confirmed that the specified tweets "had nothing to do with this case." (Id. at 3:15 (emphasis in original); see also id. at 3:16.)[7] Stein explained that the communications derived from a speech that he gave to the Teamsters and referred to amicus briefs that Stein had signed on behalf of North Carolina in two United States Supreme Court cases, Janus v. American Federation of State, County, & Municipal Employees, Council 31, __ U.S. __, 138 S. Ct. 2448 (2018), and Epic Systems Corporation v. Lewis, __ U.S. __, 138 S. Ct. 1612 (2018). (See Hearing Recording at 3:15.)[8] Stein's NC DOJ counsel further confirmed that he did not perceive "those tweets as having anything to do with the legal issues involved in the Farm Act itself, which is a completely separate statute, . . .

_____

7  In addition to the NC DOJ attorney representing Stein in his official capacity in this litigation, Stein (and his general counsel) appeared at the hearing. (See Text Orders dated Nov. 26, 2018, and Nov. 29, 2018; see also Minute Entry dated Dec. 7, 2018.) Both Stein and his NC DOJ counsel addressed the Court and its questions during the hearing. (See Hearing Recording at 3:02-3:20.)

8  The first of those cases involved payment of union agency fees by public employees, see, e.g., Janus, __ U.S. at __, 138 S. Ct. at 2460, and the other involved the interplay between class waivers in employee arbitration agreements and the National Labor Relations Act, see, e.g., Epic Sys., __ U.S. at __, 138 S. Ct. at 1619.

and [they] ha[ve] no bearing in terms of . . . what [he] will do in terms of defending this case." (Id. at 3:16.)

Both Stein and his NC DOJ counsel also stated that any personal opinion that Stein possessed regarding unions would not impact the NC DOJ's career lawyers' "zealous[] and vigorous[]" defense of this action. (Id. at 3:08; see also id. at 3:16-3:18.) In this regard, the NC DOJ counsel explained that Stein's personal preferences do not affect the litigation, as evidenced by the fact that the NC DOJ counsel decided not to file a response to the Reconsideration Motion — as he perceived such approach as more consistent with the NC DOJ's past practices and prior position of not responding to the Farm Bureau's intervention motion (see id. at 3:04-3:06) — even though Stein "was bothered by some of the assertions that the Farm Bureau made." (Id. at 3:17.) Moreover, "it's [the NC DOJ counsel's] job to defend the statutes that are at issue," and, although "[Stein] and his general counsel have been kept apprised of the case, they have not directed litigation strategy . . . and the litigation decisions in this case have been [the NC DOJ's counsel's] in consultation with [his] supervisor and the Chief Deputy and Head of Litigation and . . . in terms of how [they]'ll proceed going on, the [NC DOJ] Office is fully prepared to defend this lawsuit." (Id. at 3:09.) The NC DOJ counsel further disputed the Farm Bureau's assertion that Stein waived any appellate rights by the NC DOJ's "tactical decision" not to object

to the Recommendation, explaining that Stein's standing and sovereign immunity defenses "[a]re not waiveable." (Id. at 3:12-3:13.)

In addition, Stein noted that he "think[s] farmers are important." (Id. at 3:17.) He further observed that he has "spoken to the Farm Bureau and [he] ha[s] talked about ways in which [he] ha[s] fought for agriculture in North Carolina, and [he] ha[s] fought for farmers in court, not only in this matter but" in "other litigation in which . . . the representation of the State is aligned with theirs." (Id.) Stein "do[es]n't believe that [his] view of important institutions within North Carolina, whether it's agriculture or labor or anything else, are in conflict, and certainly the career lawyers in the Office know that they are to carry out their defense of the State of North Carolina zealously and do it as they should." (Id. at 3:17-3:18.)

Moreover, the NC DOJ confirmed that, although it remained fully prepared and capable of defending this lawsuit, it welcomed any help and resources that the Farm Bureau offered. (See id. at 3:18-3:19.) The NC DOJ noted that it had already met with the Farm Bureau and had engaged "in multiple conversations with [the Farm Bureau]." (Id. at 3:19.) Further, the NC DOJ confirmed that "of course" it remained open to "input from the Farm Bureau even if the Farm Bureau's not formally a party," including any of the Farm Bureau's "insights that could be useful in litigating the case,

13

defending the case, getting information from the other side, putting things that they might ask for or things that they might assert in context." (Id. at 3:18.) Put simply, the NC DOJ "recognize[s] that [the Farm Bureau] has an interest in this case, but [believes that it is] fully able to [provide such assistance and insights] without intervening as a party." (Id. at 3:19.) Thus, like in other matters where the NC DOJ has "worked with many interested parties who aren't necessarily involved as defendants or named defendants," the NC DOJ remains willing to work with the Farm Bureau in this litigation. (Id.)

Plaintiffs similarly observed that they "will not oppose the Farm Bureau submitting an amicus brief in this case," which they believe "would be sufficient . . . to develop the[ Farm Bureau's] arguments against [Plaintiffs'] claim[s]." (Id. at 3:30-3:31.) However, Plaintiffs reiterated their concerns regarding the Farm Bureau's intervention, including that such intervention will unduly delay and prejudice the adjudication of Plaintiffs' claims. (See id. at 3:31-3:32.) In particular, Plaintiffs noted that the Farm Bureau's proposed Answer "in many instances . . . den[ies] facts that are not reasonably subject to denial." (Id. at 3:32.) For instance, according to Plaintiffs,

> [the Farm Bureau] den[ies] the identity of the
> Representative and the Senator that chaired the
> conference committees to move the bill through the House
> and Senate. That's a matter of public record . . . .
> [The Farm Bureau] den[ies] the date on which the
> legislation was moved through the House. Again, seems

14

> pretty straightforward. [The Farm Bureau] den[ies] that
> FLOC has an office in North Carolina. [The Farm Bureau]
> den[ies] that North Carolina is a leading producer of
> tobacco. [The Farm Bureau] den[ies] that FLOC has a
> collective bargaining agreement with the North Carolina
> Growers' Association. . . .

(Id.) That the Farm Bureau "intends to fight [Plaintiffs] on" such "fairly indisputable facts . . . suggests to [Plaintiffs] that [the case will] get bogged down in discovery about a lot of facts that really aren't reasonably disputable and that will hold back the progress of this case." (Id. at 3:32-3:33.) As such, Plaintiffs worry, permitting the Farm Bureau to intervene will complicate discovery and, as shown by the filings to date, will result in a multiplicity of duplicative motions. (See id. at 3:34.)

In response to these concerns, the Farm Bureau maintained that "[Plaintiffs] have already undertaken to prove the allegations in their complaint and if they actually end up having to prove them, that's no different then whether [the Farm Bureau's] in or out." (Id. at 3:39.) When pressed by the Court on this point, though, the Farm Bureau agreed that forcing a party to litigate facts not reasonably subject to dispute could needlessly drag out a lawsuit. (See id. at 3:39-3:40.) The Farm Bureau disputed that any such situation had arisen here and "stand[s] by the answers in [its] Answer." (Id. at 3:40.) In addition, the Farm Bureau contended that, to the extent it denied anything for "lack [of] current information [or] subject to further discovery," if "there's

15

something in there that's of particular concern," Plaintiffs can "quickly and easily" resolve such denial by "fir[ing] off a set of written discovery saying, 'hey, you denied this, but we don't think it's [subject to denial], what's the deal'" or calling the Farm Bureau.  (Id.)

## DISCUSSION

### I.  Preliminary Matters

The Farm Bureau purports to bring the Reconsideration Motion "[p]ursuant to [Rule] 59(e), and in the alternative Rules 60(b) and 54(b)."  (Docket Entry 64 at 1; see also Docket Entry 65 at 1, 7 nn.6-7.)  Rule 54(b) authorizes the Court to "revise[]" interlocutory orders prior to entry of a final judgment.  Fed. R. Civ. P. 54(b).  However, an order denying Rule 24 intervention constitutes a final judgment subject to immediate appeal.  See Alt v. United States Envtl. Prot. Agency, 758 F.3d 588, 590 (4th Cir. 2014).  Accordingly, Rule 54(b) does not apply here.  In addition, although the Farm Bureau notes the standards that govern a Rule 60(b) motion, including "three threshold conditions" that "a movant must show," it did not address two of those threshold conditions — "[2] that [it] has a meritorious defense to the action, and [3] that the opposing party would not be unfairly prejudiced by having the judgment set aside" — in its Reconsideration Motion. (Docket Entry 65 at 7 n.6 (first and third set of brackets in original); see generally Docket Entries 64, 65.)  Because the Farm

16

Bureau "cannot expect th[e C]ourt to fill in the essential information for [its motion]," <u>Scott v. Lyall</u>, No. 2:17cv50, 2018 WL 323947, at *2 (W.D. Va. Jan. 8, 2018), the Reconsideration Motion does not properly invoke Rule 60(b). Thus, this Opinion analyzes the Reconsideration Motion solely under Rule 59(e).[9]

## II. Reconsideration Analysis

Although the "[C]ourt has considerable discretion in deciding whether to modify or amend a judgment," <u>Gagliano v. Reliance Standard Life Ins. Co.</u>, 547 F.3d 230, 241 n.8 (4th Cir. 2008), "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly," <u>Pacific Ins. Co. v. American Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks omitted). As such, the Court may amend a final judgment pursuant to Rule 59(e) in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." <u>Id.</u> As the Fourth Circuit has explained, Rule 59(e)

> permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings. Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the

---

9  In any event, because (as discussed below) the Farm Bureau has not justified intervention, analysis under Rule 60(b) or Rule 54(b) would yield the same result.

first instance.  Similarly, if a party relies on newly discovered evidence in its Rule 59(e) motion, the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding.

Id. (internal quotation marks and citations omitted).

Here, the Farm Bureau urges reconsideration on the basis of newly discovered evidence, namely Stein's alleged "waiver of certain appellate rights" by failing to object to the Recommendation and tweets made after the Court issued the Order. (Docket Entry 64, ¶ 11; see also Docket Entry 65 at 7-8.)  The Farm Bureau receives notifications of filings in this action.  (See, e.g., Docket Entry 23 at 1.)  Stein's deadline to file objections to the Recommendation occurred more than a week before the Court issued the Order.  (Compare Text Order dated Aug. 30, 2018, with Docket Entry 62 at 1.)  The Farm Bureau therefore knew of Stein's failure to file objections before the Court issued the Order. (See Docket Entries dated Aug. 21, 2018, to Sept. 20, 2018 (reflecting electronic notification to the Farm Bureau of eleven developments in the case between the Recommendation and Order, which did not include any objections from Stein).)  As such, Stein's alleged "waiver of certain appellate rights" (Docket Entry 64, ¶ 11) does not constitute "newly discovered evidence" under Rule 59(e), and any arguments based upon such failure "could have been raised prior to the issuance of the judgment," Pacific Ins., 148 F.3d at 403. However, Plaintiffs do not object to the Court's consideration of such evidence, and arguably the alleged significance of Stein's

actions only became apparent when the tweets occurred. Accordingly, this Opinion considers both the tweets and Stein's litigation decisions in evaluating the Reconsideration Motion.

## A. Intervention of Right

To establish an entitlement to intervention of right under Rule 24(a), the Farm Bureau must "demonstrate: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that [its] interest is not adequately represented by existing parties to the litigation." Teague v. Bakker, 931 F.2d 259, 260–61 (4th Cir. 1991). Plaintiffs continue to dispute that the Farm Bureau possesses the requisite "significantly protectable interest," id. at 261 (internal quotation marks omitted), for intervention of right. (See Docket Entry 69 at 14-16.) The Court need not determine whether the Farm Bureau satisfies the first two elements of this test, though, for even with the proffered evidence, "the [Farm Bureau] clearly ha[s] not met the third element of the test: [it] ha[s] not shown that [its] interests are not being properly represented by [Stein]." Stuart v. Huff, No. 1:11cv804, 2011 WL 6740400, at *2 (M.D.N.C. Dec. 22, 2011), aff'd, 706 F.3d 345 (4th Cir. 2013).

"When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [proposed

intervenor] must demonstrate adversity of interest, collusion, or nonfeasance." Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976). Moreover, "where the proposed intervenor shares the same objective as a government party," Stuart v. Huff, 706 F.3d 345, 351 (4th Cir. 2013), "the putative intervenor must mount a strong showing of inadequacy," id. at 352. See also id. (explaining that any lesser requirement "would place a severe and unnecessary burden on government agencies as they seek to fulfill their basic duty of representing the people in matters of public litigation"). That requirement carries particular importance given the fact that this litigation involves a constitutional challenge to a "duly enacted statute." Id. at 351; see also id. ("[W]hen a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government.").[10]

---

10  As the Fourth Circuit explained,

[T]o permit private persons and entities to intervene in the government's defense of a statute upon only a nominal showing would greatly complicate the government's job. Faced with the prospect of a deluge of potential intervenors, the government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation. In short, the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view.

Id. (internal quotation marks omitted).

The Farm Bureau's Reconsideration Motion memorandum states that its "objective in this case is to oppose the union's [(i.e., FLOC's)] attack on [the Farm Act] and thereby preserve its important protections for North Carolina farmers." (Docket Entry 65 at 9.) Further, according to the Farm Bureau,

> Stein's recent public statements praising unions and boasting that he has "been fighting in the courts" to protect their rights show that he does not share this objective. To be "fighting in the courts to protect [union] rights" would require Defendant Stein to fight against [the] Farm Bureau in this case, not join with it in vigorously defending its interests in [the Farm Act]. These statements suggest that even if Defendant Stein continues to litigate this case, it will not be in pursuit of [the] Farm Bureau's objectives.

(Id. (first set of brackets in original).)  At the hearing, however, the Farm Bureau "freely concede[d] that" Stein and his NC DOJ counsel "are capable of defending the [Farm Act]."  (Hearing Recording at 3:37; see also id. (asserting that Stein and the NC DOJ "will do a fine job of defending the law")).)  The Farm Bureau also confirmed that it "ha[s] no concerns with their abilities or their motivations."  (Id. at 3:00.)

In addition, both Stein and his NC DOJ counsel affirmed that they will continue to "zealously and vigorously" (id. at 3:08) defend the Farm Act.  (See, e.g., id. at 3:09, 3:16-3:18.)  They also emphasized that the disputed tweets "had nothing to do with this case" (id. at 3:15 (emphasis in original); see id. at 3:16), but instead referred to two unrelated Supreme Court amicus briefs (see id. at 3:15).  Furthermore, Stein's NC DOJ counsel

21

specifically confirmed that (1) "it's [his] job to defend the [Farm Act]" (id. at 3:09 (emphasis in original)), (2) he and the lawyers in his Office, not Stein, have made "the litigation decisions in this case" (id.), (3) the NC DOJ "Office is fully prepared to defend this lawsuit" going forward (id.), (4) the tweets did not "hav[e] anything to do with the legal issues involved in the Farm Act itself" (id. at 3:16), and (5) they "ha[ve] no bearing . . . [on his] ability or what [he] will do in terms of defending this case" (id.).

Under the circumstances, the Farm Bureau's interest continues to align with Stein's interest, as "[b]oth the government [official] and the would-be intervenor[] want the statute to be constitutionally sustained," Stuart, 706 F.3d at 352. The presumption of adequate representation therefore applies, against which the Farm Bureau "must mount a strong showing of inadequacy," id. The Farm Bureau failed to make that showing.

To begin, the Farm Bureau has not shown adversity of interest. As discussed above, Stein and his NC DOJ counsel have explicitly confirmed their commitment to defending the Farm Act. Notably, the Farm Bureau has also conceded both the capability of Stein and his NC DOJ counsel to defend the Farm Act and a lack of concern about their motivations. In addition, Stein's explanation regarding the tweets — which the Farm Bureau does not contest — reveals their

lack of relevance to this litigation, a perspective that the NC DOJ counsel tasked with defending this litigation reaffirmed.

The mere fact that Stein expressed support for, and advocated in other, unrelated matters on behalf of, a segment of the North Carolina population that shares some characteristics with Plaintiffs cannot, by itself, create the "strong showing" of adverse interests necessary for intervention of right. See Maryland Restorative Justice Initiative v. Hogan, 316 F.R.D. 106, 115 (D. Md. 2016) (denying intervention even though proposed intervenors "refer to numerous instances in which the State has taken positions [in other cases] that do not coincide with those of [proposed intervenors]"). Because governments "serve in a representative capacity on behalf of [their] people," Stuart, 706 F.3d at 351, and the "people" possess myriad interests and characteristics, whether a government's interest aligns with a particular segment of its constituents will necessarily vary from case to case. See, e.g., id. (recognizing that "[i]n matters of public law litigation that may affect great numbers of citizens, it is the government's basic duty to represent the public interest"); Feller v. Brock, 802 F.2d 722, 730 (4th Cir. 1986) ("[T]he government's position is defined by the public interest, as well as the interests of a particular group of citizens."). Thus, "the business of the government could hardly be conducted if, in matters of litigation," Stuart, 706 F.3d at 351 (internal quotation marks

omitted), the government's support in unrelated matters for the interests of entities who share arguable similarities with an opposing party sufficed to allow "individual citizens . . . [to] intervene and assert individual points of view," id. (internal quotation marks omitted).  See also Maryland Restorative Justice, 316 F.R.D. at 115 ("The Attorney General's responsibility to apply or uphold the law does not constitute the kind of adverse interest contemplated by *Virginia v. Westinghouse Elect. Corp.*, *supra*, 542 F.2d at 216.").

Here, the Farm Bureau has not identified any concrete harm to the governmental defense of the Farm Act that Stein's tweets (and underlying sentiments) have caused or will cause.  For instance, the Farm Bureau failed to specify any "appellate rights" that Stein waived by not objecting to the Recommendation.  (See generally Docket Entries 64, 65; see also Hearing Recording at 2:45-3:02, 3:37-3:43; cf. id. at 3:12-3:13 (Stein's NC DOJ counsel asserting that Stein's defenses "are not waiveable")).  Nor can Stein's "tactical decision" (id. at 3:12) to proceed with litigation rather than object to the Recommendation (and subsequently appeal from the Order) establish adversity of interest.  See, e.g., Stuart, 706 F.3d at 353 (rejecting argument that adversity existed "because, in defending the Act, the Attorney General made certain strategic decisions with which [the proposed intervenors] disagree" — namely "the Attorney General relied on legal arguments at the preliminary

injunction stage and chose to litigate the case to final judgment, whereas the[ proposed intervenors] would have presented factual evidence and immediately appealed the preliminary injunction" — as "the relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy"); Outdoor Amusement Bus. Ass'n, Inc. v. Department of Homeland Sec., No. CV 16-1015, 2017 WL 2778820, at *11 (D. Md. June 26, 2017) ("The presumption of adequate representation is not rebutted simply because defendants have chosen to focus on the merits or because the would-be intervenors disagree with the government's reasonable litigation tactics." (internal quotation marks omitted)).

Finally, the Farm Bureau's concern that Stein's statements could "influence[]" his NC DOJ counsel if counsel faces "a tough choice to make or a close call to make in discovery about whether to pull a punch" (Hearing Recording at 3:01) fails to establish adversity of interest. Speculation about some potential, amorphous influence does not constitute a "strong showing" of adverse interests. See, e.g., Outdoor Amusement, 2017 WL 2778820, at *12 ("[The proposed intervenors'] speculative concern that the [government defendants] will not vigorously defend the contested regulations does not justify intervention."); Ohio Valley Envtl. Coal., Inc. v. McCarthy, 313 F.R.D. 10, 29 (S.D. W. Va. 2015) ("The mere allegation that a governmental party could argue less

vigorously than members of the regulated industry is at best an argument that the government *could* commit nonfeasance, which is insufficient to rebut the presumption of adequate representation." (emphasis in original)).[11] Moreover, to the extent that Stein's personal preferences matter, he has directly and explicitly expressed support for the Farm Bureau, both in his 2015 speech at the Farm Bureau's annual meeting, see NC Farm Bureau, State Sen. Josh Stein 2015 Annual Meeting, YOUTUBE (Dec. 15, 2015), https://www.youtube.com/watch?v=3s5yhkbsHCQ, and in this Court, where he affirmed his intent to fight for farmers in this litigation (see Hearing Recording at 3:17). In any event, by declining to respond to the Reconsideration Motion even though Stein "was bothered by" its assertions (id.), the NC DOJ demonstrated that Stein's personal preferences do not control this litigation.

The Farm Bureau further failed to establish nonfeasance or collusion. In its memorandum in support of the Reconsideration

---

11 Insofar as the Farm Bureau objects to non-party status because it "can't appeal an adverse ruling" (Hearing Recording at 2:54), any concern that Stein would not appeal an adverse final judgment constitutes speculation that cannot justify intervention. See Makhteshim Agan of N. Am., Inc. v. National Marine Fisheries Serv., No. 8:18cv961, 2018 WL 5846816, at *5 (D. Md. Nov. 8, 2018) ("To suggest, as the Applicants do, that the agency 'may enter a settlement that allows for less effective protections than those required by the [challenged opinion] or may not present a vigorous defense to [the plaintiffs'] claims' is to indulge in speculation. Applicants must present a good deal more than this to rebut the presumption of adequacy." (citation omitted)).

Motion, the Farm Bureau maintained that Stein committed nonfeasance by declining to object to the Recommendation. (See Docket Entry 65 at 12-13.) At the hearing, however, the Farm Bureau acknowledged "that[ it was] a tactical consideration" not to object. (Hearing Recording at 3:41-3:42.) Although the Farm Bureau would prefer that Stein had further litigated the preliminary injunction motion (see id.), such tactical considerations do not constitute nonfeasance. See Stuart, 706 F.3d at 353. Finally, in its Reconsideration Motion memorandum, the Farm Bureau argued that Stein's tweets and failure to object to the Recommendation, combined with Plaintiffs' "vehement[] oppos[ition]" to the Farm Bureau's intervention, constitute "procedural maneuvering [that] indicates an attempt to go behind the North Carolina General Assembly and the State's governor in order to invalidate a law enacted with bi-partisan support." (Docket Entry 65 at 14.) In light of its subsequent admission that it "ha[s] no concerns" about Stein's and the NC DOJ's "motivations" (Hearing Recording at 3:00), the Farm Bureau appears to have abandoned this argument. Regardless, the Farm Bureau has not established how Plaintiffs' decision to litigate against Stein, whom the Court concluded constituted a proper defendant under the Ex parte Young sovereign immunity exception,[12] and Stein's decision to proceed to defending

---

12    Notably, the Farm Bureau's proposed motion to dismiss argued that Plaintiffs lacked standing to sue Governor Cooper regarding the Farm Act on the theory that "they can[not] establish sufficient traceability . . . ." (Docket Entry 21-1 at 3.)

this case on its merits (see Docket Entry 70) constitutes collusion. (See Docket Entries 64, 65; Hearing Recording at 2:45-3:02, 3:37-3:43.)

In sum, even considering its "newly discovered evidence," the Farm Bureau fails to overcome the strong presumption of Stein's adequate representation. Accordingly, the Farm Bureau has not shown entitlement to intervention of right.

### B. Permissive Intervention

The Farm Bureau also seeks reconsideration of the Court's denial of permissive intervention. (See, e.g., Docket Entry 65 at 14-15; Hearing Recording at 2:52 ("[T]he Court should use its discretion to allow [the Farm Bureau] into the case to, again, give North Carolina farmers a voice in this case.").) Under Rule 24(b), "the [C]ourt may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). However, when "exercising its discretion [regarding permissive intervention], the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). After all, as the Fourth Circuit has recognized, "[i]t is incontrovertible that motions to intervene can have profound implications for district courts' trial management functions. Additional parties can complicate routine scheduling orders, prolong and increase the burdens of discovery and motion

practice, thwart settlement, and delay trial." <u>Stuart</u>, 706 F.3d at 350.  Here, the Farm Bureau failed to justify reconsideration of the Court's conclusion that its intervention "'would result in undue delay in adjudication of the merits, without a corresponding benefit to existing litigants, the courts, or the process'" (Docket Entry 56 at 60 (quoting <u>Stuart</u>, 2011 WL 6740400, at *3); <u>see also</u> <u>id.</u> at 57 (concluding that "permitting the Farm Bureau to intervene will needlessly complicate and unduly delay the adjudication of the existing parties' rights; it will also needlessly consume both the parties' and the Court's resources"); Docket Entry 62 at 1 (adopting the Recommendation)).

In regard to permissive intervention, the Reconsideration Motion memorandum argued (in full):

> **C. [The] Farm Bureau's intervention will contribute to the full development of the factual issues and legal arguments in this case.**
>
> In determining whether to grant permissive intervention, "courts may consider whether such intervention will 'contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" <u>Students for Fair Admissions Inc. v. Univ. of N. Carolina</u>, 319 F.R.D. 490, 496 (M.D.N.C. 2017). Defendant Stein's recent statements underscore his inability to represent the perspective of North Carolina farmers, a constituency that will be substantially impacted by the outcome of this lawsuit.  For this reason and those set forth in [the] Farm Bureau's prior filings, this Court should permit [the] Farm Bureau's intervention in this case because the presence of an opposing viewpoint that represents North Carolina farmers will

> contribute to the full development of the factual and
> legal issues in this case.

(Docket Entry 65 at 14-15 (bold font in original).)

This argument does not justify intervention.  Most notably, as discussed above, the Farm Bureau has shown neither that Stein cannot (or will not) represent farmers' interest in sustaining the Farm Act nor that the Farm Bureau requires party status to "contribute to the full development of the factual and legal issues in this case" (id. at 15).  In addition, the Farm Bureau's arguments do not address, let alone ameliorate, the concern that its intervention "will needlessly complicate and unduly delay the adjudication of the existing parties' rights[ and] needlessly consume both the parties' and the Court's resources" (Docket Entry 56 at 57).  (See Docket Entry 65 at 14-15.)[13]

---

13   At the hearing, the Farm Bureau argued that its intervention would reduce the risk of a "deluge of intervenors" because "[the Farm Bureau] can speak with authority for thousands of North Carolina farmers, and so they know [the Farm Bureau has] their back and that they don't need to come in here and try to intervene" (Hearing Recording at 2:51).  The Farm Bureau provided no support for this proposition, and it fails to explain how its intervention would assuage the concerns of farmers who opted against Farm Bureau membership.  In any event, this assertion addresses neither the concern that permitting the Farm Bureau's intervention would invite, inter alia, other entities mentioned in the Amended Complaint "to individually petition for permissive intervention" (Docket Entry 56 at 59 (internal quotation marks omitted)), nor the concern that, should it permit the Farm Bureau's intervention, "the Court could not draw a meaningful line that prevents all such entities and individuals from gaining permissive intervention in this case" (id. (brackets and internal quotation marks omitted)).

Nor did the Farm Bureau satisfactorily resolve the issues its litigation approach presents. For instance, the Farm Bureau's proposed Answer denied many more allegations than Stein's answer did. (Compare, e.g., Docket Entry 70, ¶¶ 18, 20, 22, 27, 31, 32 (admitting, inter alia, (1) that North Carolina is a leading tobacco producer, (2) North Carolina's H-2A visa statistics, (3) the predominantly Hispanic/Latino and immigrant character of North Carolina's farmworkers, and (4) FLOC's membership characteristics and historic presence in North Carolina), with Docket Entry 59-1, ¶¶ 18, 20, 22, 27, 31, 32 (denying all allegations).) The fact that the Farm Bureau disputes seemingly uncontroversial allegations that Stein has not disputed increases the risk of unnecessary delay and complication of this case.[14]

In sum, the Court thus should decline to reconsider its denial of Rule 24(b) intervention.

## CONCLUSION

Even given its "newly discovered evidence," the Farm Bureau has not shown entitlement to intervention of right or circumstances warranting permissive intervention.

---

14 At the hearing, the Farm Bureau suggested that Plaintiffs could resolve any "particular[ly] concern[ing]" denials (Hearing Recording at 3:40) through written discovery or calling the Farm Bureau (id.). This suggestion ignores both the time and effort required to address the Farm Bureau's denials, as well as this Court's discovery limitations, see M.D.N.C. LR 26.1(a).

**IT IS THEREFORE RECOMMENDED** that the Court deny the Reconsideration Motion (Docket Entry 64).

This 17ᵗʰ day of May, 2019.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**
