# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FARM LABOR ORGANIZING
COMMITTEE ET AL.,

     Plaintiffs,

v.

JOSHUA STEIN,

     Defendant,

     and

NORTH CAROLINA FARM BUREAU
FEDERATION, INC.,

     Proposed Defendant-Intervenor.

Case No.: 1:17-cv-01037

## OBJECTION TO MEMORANDUM OPINION AND RECOMMENDATION BY NORTH CAROLINA FARM BUREAU FEDERATION, INC.

Proposed Intervenor North Carolina Farm Bureau Federation, Inc. ("NC Farm Bureau") files this Objection to the Memorandum Opinion and Recommendation by United States Magistrate Judge Patrick Auld (the "Magistrate Judge") (D.E. 75) (hereinafter the "Recommendation"), pursuant to Federal Rule 72(b) and Local Civil Rule 72.4. NC Farm Bureau has a right to intervene in this matter pursuant to Federal Rule 24(a), and even without such a right, should be permitted to intervene under Rule 24(b). Accordingly, NC Farm Bureau objects to the Magistrate Judge's findings regarding NC Farm Bureau's Motion to Reconsider (D.E. 64) and his recommendation

that said motion be denied (D.E. 75).  For reasons stated below, this Honorable Court should grant NC Farm Bureau's Motion to Reconsider.

**SUMMARY**

Plaintiffs accuse NC Farm Bureau, by name, of instigating the passage of Section 20.5 of the North Carolina Farm Act of 2017 (hereinafter "Section 20.5") as part of a "backlash" against Plaintiffs and in order to "effectuate invidious discrimination based on race."  (D.E. 1; D.E. 31 ¶¶ 107-116 (incorporating ¶¶ 63, 64, 73, and 76).)  NC Farm Bureau is the only organization so named.  Consistent with these serious allegations, Plaintiffs admit NC Farm Bureau has a "very personal" interest in this case and that the case will affect "what Farm Bureau members do for a living."  (A true and accurate copy of the transcript of the hearing on NC Farm Bureau's Motion for Reconsideration is attached hereto as **"Exhibit A."**) (Ex. A 62:23.)  Plaintiffs further admit that NC Farm Bureau has "relevant information" about their racial discrimination claims and that they will target NC Farm Bureau with discovery.  (Ex. A 56:13-57:14.)

Meanwhile, the only defendant in the case, Defendant Joshua Stein in his official capacity as Attorney General of North Carolina, agrees that NC Farm Bureau has an interest in the case (Ex. A 45:13-46:11), does not object to NC Farm Bureau's intervention (Ex. A 38:16-22), and has twice confirmed that NC Farm Bureau's intervention would not "affect [its] ability to defend the lawsuit" (Ex. A 34:19-21; 38:23-25).  Moreover, during the pendency of this case, the North Carolina Attorney General's Office, acting on behalf of the of the North Carolina Department of Justice ("NC DOJ"),

published a statement praising unions and boasting that Defendant Stein was "fighting in the courts" for union rights—a position completely adverse to NC Farm Bureau's interest in protecting North Carolina farmers from the threats posed by this union lawsuit. Moreover, according to Plaintiffs and the Court, Section 20.5 empowers Defendant Stein to criminally prosecute NC Farm Bureau members that violate the Farm Act. (D.E. 62; D.E. 56 pp. 23-25; D.E. 49 pp. 6-11.)

For its part, NC Farm Bureau is the only entity that has sought intervention during the eighteen (18) months this litigation has been pending. (See D.E. 1.) It pledged to take a measured approach to this litigation and has repeatedly invited the court to exercise its discretion to limit the scope of its intervention and/or discovery in order to mitigate the risk that NC Farm Bureau's intervention would unreasonably complicate this case. (Ex. A 18:16; 19:18; 21:22; D.E. 59 p. 19.) Further, allowing NC Farm Bureau's intervention would help level the playing field for defendants (nine lawyers attended the hearing on reconsideration on behalf of Plaintiffs), and would contribute to the lawsuit two essential perspectives it presently lacks. NC Farm Bureau would be the only party to the suit with, according to Plaintiffs, first-hand knowledge of the origins of Section 20.5. It would also be the only party that could represent the perspective of North Carolina farmers, members of a highly specialized industry. Indeed, the only evidence in the record to date from an actual North Carolina farmer came from NC Farm Bureau. (D.E. 22-1.)

PD.26254135.3

Finally, under very similar circumstances, this Court recently allowed NC Farm Bureau's intervention to defend the constitutionality of a statute in a case where Defendant Stein is already a defendant. People for the Ethical Treatment of Animals, Inc. et al. v. Josh Stein in his official capacity as Attorney General of North Carolina et al., No. 1:16-cv-25-TDS-JEP (M.D.N.C., May 14, 2019) (Memorandum Order). (A true and accurate copy of the memorandum order is attached hereto as **"Exhibit B."**)

Against this factual and legal backdrop, the Magistrate Judge persists in recommending denial of NC Farm Bureau's Motion for Reconsideration. With all due respect to the Magistrate Judge, this Court should reject that recommendation. For the reasons that follow, and those already submitted, NC Farm Bureau has a right to intervene in this case, and, alternatively, this Court should permit its intervention.

## ARGUMENT AND AUTHORITIES

I.  **North Carolina Farm Bureau Objects to the Magistrate's Application of <u>Stuart v. Huff's</u> Presumption of Adequacy and Strong Showing Requirement.**

In evaluating NC Farm Bureau's Motion for Reconsideration, the Magistrate Judge misapplies the mandatory intervention standard. (<u>See</u> D.E. 75 pp. 19-28.) Relying on the rationale of <u>Stuart v. Huff</u>, he applies a presumption that Defendant Stein can adequately represent NC Farm Bureau's interests and requires NC Farm Bureau to "mount a strong showing of inadequacy." (D.E. 75 p. 22 (citing <u>Stuart v. Huff</u>, 706 F.3d 345 (4th Cir. 2013)).) New evidence offered by NC Farm Bureau and testimony elicited by the Court at its hearing on the Motion for Reconsideration establishes that the facts and rationale upon which <u>Stuart's</u> holding was based are inapplicable in this case.

- 4 -

Despite this new evidence, the Magistrate Judge applies <u>Stuart's</u> higher burden merely because both NC Farm Bureau and Defendant Stein want to win this case. (D.E. 75 p. 22 (automatically applying the heightened standard of <u>Stuart</u> because both NC Farm Bureau and Defendant Stein want Section 20.5 to be upheld).) With all due respect, this is an erroneous application of <u>Stuart</u>.

### A. The rationales of <u>Stuart v. Huff</u> are inapplicable in this case.

NC Farm Bureau's prior showings (D.E. 21, 22, 43, and 59), combined with the new evidence tendered by NC Farm Bureau (D.E. 65 pp. 5-6) and the testimony elicited by the Magistrate Judge, confirm that the rationales upon which <u>Stuart</u> was decided are inapplicable in this case. (D.E. 65 pp. 8, 10; Ex. A.) The Fourth Circuit's opinion in <u>Stuart</u> was based on the rationales that the proposed intervenors in that case, comprised of three separate groups with separate interests, would "greatly complicate the government's job," and allowing their intervention would "open the door" to a "deluge of intervenors" or a "complicating host of intervening parties." <u>Stuart</u>, 706 F.3d at 351, 353. Indeed, the Fourth Circuit twice emphasized in <u>Stuart</u> that "the business of government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view." 706 F.3d at 349, 351 (quoting 6 Moore's Federal Practice § 24.03(4)(a)(iv)(A) (3d ed. 2011)). Therefore, the heightened intervention standard in <u>Stuart</u> is intended to protect government defendants representing the public interest from being derailed by multiple intervenors pursuing disparate points of view.

PD.26254135.3

The government defendant in this case, Defendant Stein, is in the best position to know whether NC Farm Bureau's intervention would "greatly complicate" its defense. Yet throughout eighteen (18) months of litigation over NC Farm Bureau's proposed intervention, Defendant Stein has not once objected to its intervention. Further, in response to questioning by the Magistrate Judge at the hearing on NC Farm Bureau's Motion for Reconsideration, counsel for the government defendant twice confirmed that NC Farm Bureau's intervention would not "affect [its] ability to defend the lawsuit" (Ex. A 34:19-20; 38:23-24), and he indicated that the government has been and will continue to cooperate with NC Farm Bureau in the defense of Section 20.5. (See Ex. A 45:13-46:11.) Thus, despite Plaintiffs' attempts to invoke Stuart on the government defendant's behalf, it is not applicable in this case because the government defendant's conduct and testimony confirms that NC Farm Bureau will not "greatly complicate" its defense.[1]

The Stuart opinion was also based on the threat that allowing the proposed intervenors would open the floodgates to a "deluge of intervenors." In Stuart there was such a threat because the case dealt with a high-profile "hot button" issue and the proposed intervenors were comprised of three separate interest groups each with its own set of interests. Stuart, 706 F.3d at 348, 350 ("Adding three groups of intervenors would necessarily complicate the discovery process and consume additional resources of the

---

[1] Similarly, the Court can mitigate any risk that the proposed intervention will "greatly complicate" the litigation by exercising its inherent authority under Rule 16 to control the scope of intervention, discovery, and scheduling in this case. Fed. R. Civ. P. 16; see also Ex. B, People for the Ethical Treatment of Animals, Inc. et al. v. Josh Stein in his official capacity as Attorney General of North Carolina et al., No. 1:16-cv-25-TDS-JEP (M.D.N.C., May 14, 2019) (Memorandum Order) (noting, in granting intervention that "in order to hold [proposed intervenor] to its commitment to a minimal discovery burden, the court will authorize the Magistrate Judge overseeing discovery to impose reasonable limits on discovery of and by the [proposed intervenor], if deemed appropriate.").

PD.26254135.3

court and the parties."). There is no such risk in this case. In the eighteen (18) months this case has been pending, NC Farm Bureau is the only entity that has sought intervention. Indeed, North Carolina farmers look to NC Farm Bureau to defend their interests and thus do not see a need to intervene precisely because NC Farm Bureau is already doing so. Thus, there is no risk that allowing NC Farm Bureau's intervention would create a deluge of proposed intervenors in this case and, accordingly, Stuart's second rationale is also inapplicable.

Finally, Stuart is factually distinguishable from this case in ways that render it inapplicable. First, Stuart involved over twenty parties and allowing the intervention of three groups of intervenors would have pushed that number to thirty. In this case, Plaintiff initially named two defendants and after amending the complaint there remains only one. Thus, allowing NC Farm Bureau's intervention would not add a substantial number of parties to an already crowded case like in Stuart. Additionally, the intervenors in Stuart sought intervention at a later stage of litigation, they were not named in the lawsuit, and the government defendant in Stuart had "vigorously pressed the state's important interests" underpinning the legislation, Stuart, 706 F.3d at 351, whereas in this case the government has relied solely on procedural arguments. (See D.E. 56 p. 61 n. 25; D.E. 62.)[2]

### B. NC Farm Bureau and Defendant Stein Do Not Share the Same Ultimate Objective.

---

[2]  In opposing the preliminary injunction in Stuart, the NC DOJ argued the merits of plaintiffs' constitutional claims, the appropriate standard to apply in evaluation, and North Carolina's specific interests in advancing the relevant legislation. See Stuart v. Huff, 834 F. Supp. 2d 424, 430-33 (M.D.N.C. 2011).

NC Farm Bureau's ultimate objective in this case is the protection of North Carolina farmers from the threats this lawsuit poses to their livelihoods. (See D.E. 22 pp. 15-16, 18-19 (noting that this litigation raises "pocketbook issues" for NC Farm Bureau members); D.E. 22-1 ¶¶ 10-12; D.E. 43 p. 2; D.E. 59 pp. 2, 5; Ex. A p. 62:23-25 (wherein Plaintiffs admit that the outcome of this lawsuit will affect, "what Farm Bureau members do for a living").) Specifically, if Plaintiffs succeed in dismantling Section 20.5's protections for North Carolina farmers, NC Farm Bureau members will suffer administrative and financial burdens and repeated union lawsuits intended to bully them into collective bargaining agreements. (D.E. 22 at 15-16.) Moreover, Plaintiffs have made clear that their litigation strategy will involve proving, including by propounding discovery requests on NC Farm Bureau, that Section 20.5 is a "racist" law and that NC Farm Bureau and others proposed Section 20.5 to racially discriminate against Plaintiffs. (See Ex. A 12:19; 47:7; 54:23-56:24.)

Distinct from NC Farm Bureau's ultimate objective, Defendant Stein's ultimate objective is merely to fulfil his duty to defend against the lawsuit. (Ex. A 36:11-12 ("[O]ur office is focused on defending the laws that are at issue.").) This objective stops short of protecting North Carolina farmers, and is fulfilled merely by tendering a competent legal defense of the constitutionality of Section 20.5. Defendant Stein's litigation of the preliminary injunction demonstrates the difference between his and NC Farm Bureau's ultimate objectives and how he can pursue the former while stopping short of achieving the latter. While Defendant Stein's ultimate objective is arguably still

PD.26254135.3

served in spite of his decision not to object to the Magistrate Judge's recommendation that this Court grant Plaintiffs' motion to preliminarily enjoin Section 20.5, thereby waiving his right to appeal the granting of the preliminary injunction motion, such a decision is directly contradictory to NC Farm Bureau's ultimate objective. Indeed, this decision cemented that, beginning eight (8) months ago and continuing for the foreseeable future, Section 20.5 will not be enforced to protect North Carolina farmers. (D.E. 62.)

Additionally, pursuit of Defendant Stein's objective does not require him to defend NC Farm Bureau or its members from Plaintiffs' allegations of racism or discrimination.[3] The Magistrate Judge termed these allegations as potentially "background" and Defendant Stein's counsel even acknowledged that defense of these was not necessary to defend the constitutionality of Section 20.5. (Ex. A 13:19-23; 37:1-4.) But such a defense is necessary to serve NC Farm Bureau's ultimate objective—the protection of North Carolina farmers. Thus, even if Defendant Stein succeeds in providing a defense to this lawsuit, NC Farm Bureau and its members can still be harmed.

The Magistrate Judge concludes that the NC DOJ's statement praising unions and boasting that Defendant Stein is "fighting in the courts" for union rights, made while this case was pending, is not in conflict with Defendant Stein's duty to defend the constitutionality of Section 20.5 and is not relevant. This conclusion is incorrect.

---

[3]    Nor would it require Defendant Stein to defend against Plaintiffs' accusations of misconduct by NC Farm Bureau members, such as violating the human rights of farm workers. (See D.E. 31 ¶¶ 19, 23, 59-60.)

PD.26254135.3

Because of its source, the statement can limit or influence Defendant Stein's counsel's ability to defend Section 20.5. (D.E. 65 pp. 8-12; Ex. A 27:7-28:20.) Further, the statement is completely at odds with NC Farm Bureau's ultimate objective, which requires far more than a mere competent legal defense. Indeed, it would be impossible for Defendant Stein to protect North Carolina farmers from all of the threats posed by this union lawsuit, while simultaneously upholding his agency's claim that he is fighting in the courts for unions.

## II. Even if <u>Stuart v. Huff</u> Does Apply, the Magistrate Judge Misapplied Its Holding.

### A. The Magistrate Judge Erred in Requiring Farm Bureau to Demonstrate a "Concrete Harm."

The Magistrate Judge based his denial of NC Farm Bureau's motion for reconsideration regarding its motion for mandatory intervention on a finding that "Farm Bureau has not identified any *concrete harm* to the governmental defense of the Farm Act that Stein's tweets … have caused or will cause." (D.E. 75 p. 24 (emphasis added).) However, contrary to the Magistrate Judge's statement, a proposed-intervenor is not required to show "concrete harm," let alone any harm, in order to demonstrate adversity of interest. Rather, intervention under Rule 24(a)(2) is proper if "the movant can demonstrate '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.'" <u>Stuart</u>, 706 F.3d at 349 (quoting <u>Teague v. Baker</u>, 931 F.2d 259, 260-61 (4th Cir. 1991)). There is no requirement for a proposed intervenor to demonstrate concrete harm. <u>See</u> <u>id.</u>

PD.26254135.3

Furthermore, requiring NC Farm Bureau, or any proposed intervenor, to demonstrate a concrete harm runs contrary to a core requirement of intervention: timeliness. Fed. R. Civ. P. 24(a) ("On timely motion, the court must permit anyone to intervene who: …"). While a proposed intervenor must demonstrate more than a mere speculation of harm, requiring NC Farm Bureau to demonstrate a concrete harm places NC Farm Bureau in an impossible position. If NC Farm Bureau sits idly by and waits for litigation to progress to a point where concrete harm has manifested before filing a motion to intervene, NC Farm Bureau's motion would almost certainly be untimely. However, if NC Farm Bureau moves to intervene in a timely manner, litigation may not have progressed to a point where concrete harm has manifested. Thus, the requirement of concrete harm required by the Magistrate Judge is at odds with the plain language and spirit of Rule 24(a).[4]

### B. NC Farm Bureau Has Shown Sufficient Harm Caused by Its Adversity of Interest With NC DOJ to Warrant Intervention.

In recommending denial of NC Farm Bureau's motion to reconsider the denial of its motion to intervene, the Magistrate Judge states that "[t]he mere fact that [the Attorney General] expressed support for, and advocated in other, unrelated matters on behalf of, a segment of the North Carolina population that shares some characteristics with Plaintiffs cannot, by itself, create a 'strong showing' of adverse interests necessary for intervention of right." (D.E. 75 p. 23.) However, NC Farm Bureau has done more

---

[4] That said, although no showing of concrete harm is required for mandatory intervention, NC Farm Bureau has suffered concrete harm in that the preliminary injunction was allowed to take effect without objection or appeal.

than merely show Defendant Stein's preference for one group of citizens over another. It has shown the NC DOJ's express preference for union rights combined with litigation decisions beneficial to the Plaintiffs, a union and union members.

At its core, Section 20.5 was designed to protect North Carolina farmers from abusive union litigation and the administrative and financial burdens of collecting and remitting union dues. (See D.E. 31 ¶ 74-75 (quoting Section 20.5 bill sponsor as intending to protect North Carolina farmers from union practices he deemed "harassment" and "predatory"); D.E. 22 p. 1; D.E. 22-1.) This union lawsuit threatens these urgently needed protections and, as stated previously, NC Farm Bureau's ultimate objective in this case is to protect North Carolina farmers from this threat.

Defendant Stein's decisions not to offer any evidence at the preliminary injunction stage and instead rely upon pure legal arguments and, most significantly, not to object to the Magistrate Judge's recommendation of a grant of a preliminary injunction, which waived the NC DOJ's right to appeal the grant of the preliminary injunction was contrary to this ultimate objective. As a result, Section 20.5's protections for North Carolina farmers are currently not being enforced by NC DOJ, and will not be during the entire pendency of this litigation. This exposes NC Farm Bureau members to the continued harassment and predatory behavior that originally spurred the passage of Section 20.5.[5]

In contrast to Stuart v. Huff, the NC DOJ's decision to not object to the Magistrate Judge's recommendation to grant the preliminary injunction is more than a mere tactical

---

[5] Section 20.5 was also passed as a means to strengthen North Carolina's right to work policy.

decision.  In <u>Stuart v. Huff</u>, the trial court enjoined the enforcement of a provision that required a physician or technician to provide a real-time ultrasound and explain what the ultrasound was depicting.  <u>Stuart</u>, 706 F.3d at 348.  However, the trial court left in place the remainder of the law, which included other informed consent provisions and authorized civil remedies against those who violated the law.  <u>Id.</u>  Therefore, numerous protections for pro-life medical practitioners and advocates remained in effect.  Here, government enforcement of the entirety of Section 20.5 was enjoined.  (D.E. 56, D.E. 62.)  Thus, in contrast to the preliminary injunction in <u>Stuart v. Huff</u>, the preliminary injunction in this matter stripped the intended beneficiaries of Section 20.5 of certain protections and exposed  them to the harassment and predatory behavior Section 20.5 was designed to prevent by prohibiting the NC DOJ from enforcing Section 20.5.  In this context, the failure to object to the Magistrate Judge's recommendation to grant the preliminary injunction and the corresponding waiver of the right to appeal the preliminary injunction is more than a mere tactical decision.  It is contrary to NC Farm Bureau's ultimate objective and reveals an adversity of interest between NC Farm Bureau and Defendant Stein.   Thus, NC Farm Bureau is not relying on mere speculation concerning the influence that NC DOJ's articulated support of union rights may have on this litigation.  Rather, NC Farm Bureau has articulated specific and concrete harm (to the extent a showing of concrete harm is required) that has come to its members as a result of the differing interests possessed by the NC DOJ and NC Farm Bureau.

### C. The Magistrate Judge Erred By Conflating Official Statements Of The NC DOJ With Personal Statements Of Josh Stein.

The Magistrate Judge seeks to dismiss the significance of the North Carolina Attorney General's Office's tweet, made during this litigation on behalf of the NC DOJ, by pointing to pro-farmer statements made by Mr. Stein in his personal capacity while campaigning for Attorney General. (D.E. 75 p. 26.) However, NC Farm Bureau has always argued that the significance of the tweet was that it was an official statement of the North Carolina Attorney General's Office, repeating a statement Defendant Stein made in his official capacity as Attorney General.[6] (D.E. 65 pp. 5-6; Ex. A 27:7-28-20.) Thus, any personal statement he made years ago on the campaign trail, before he led the NC DOJ, is irrelevant because such statements carry no authority and cannot limit or bind the actions of the NC DOJ.

Additionally, the Magistrate Judge's reasoning that "by declining to respond to the Reconsideration Motion even though [the Attorney General] 'was bothered by' [the Reconsideration Motion's] assertions, the NC DOJ demonstrated that [the Attorney General's] personal preferences do not control this litigation" is premised, respectfully, on a misconstruction of NC Farm Bureau's argument. (D.E. p. 26.) NC Farm Bureau has never argued that Defendant Stein's personal preferences may dictate specific maneuverings in this ligation. Rather, NC Farm Bureau has argued, that the official

---

[6] The Magistrate Judge fails to recognize that there were three statements. During a speech made in his official capacity as Attorney General of North Carolina, Defendant Stein praised unions and boasted he was "fighting in the courts" for union rights. He then repeated the statement by publishing it on his personal Twitter account and the North Carolina Department of Justice chose to publish it on the North Carolina Attorney General's Office's official Twitter account. The last two statements included no context and their audience was the general public.

statement by the North Carolina Attorney General's Office demonstrates an interest that is in direct conflict with NC Farm Bureau's interests. And as further evidence of the adversity of interest between NC Farm Bureau and Defendant Stein, Defendant Stein has failed to take actions in this litigation that would have protected the interests of North Carolina farmers. (D.E. 65 p. 8.) Accordingly, any statements made by Defendant Stein in any prior or current capacity other than his capacity as the Attorney General are irrelevant.

### D. NC Farm Bureau Has Not Conceded That NC Farm Bureau and NC DOJ Share the Same Interest.

The Magistrate Judge states that "[n]otably, the Farm Bureau has also conceded both the capability of Stein and his NC DOJ counsel to defend the Farm Act and a lack of concern about their motivations." (D.E. 75 p. 22.) However, with all due respect to the Magistrate Judge, the above quote is out of context. The full is quote is as follows:

> Your Honor, we have no reason to believe that the Attorney General's office wouldn't – wouldn't take our call. And we have no concerns with their abilities or their motivations. That's not really it at all.
>
> But given the policy position announced on behalf of the North Carolina Department of Justice, that may limit the Attorney General's office going forward.
>
> If they have a tough choice to make a close call to make in discovery about whether to pull a punch, they may be influenced by the fact that they've previously articulated a priority or a preference for fighting for union rights in a way that we are not.
>
> We don't think the official pronouncement is untoward. Um, and we're not interested in things that the Attorney General

said in his personal capacity as candidate, or Mr. Stein. It's not about that.

But the North Carolina Department of Justice has articulated this priority. And having done so, that's going to be a – that could be a cause for hesitation. It could [affect] the way that they make decisions going forward.

And so they're – and that may cause a diversion in the way we conduct this litigation. And, again, not in a way that's gonna blow this thing up and make it out of control.

But just in a way that ensures that farmers have someone at the table whose sole interest is the protection of these protections in the act, and then in responding to whatever further inflammatory things come from plaintiffs' side. And - - and that's something that only we can do, Your Honor.

(Ex. A 27:7-28-20.) Taking the operative quote in its full context, NC Farm Bureau has not conceded that NC DOJ's motivations align with NC Farm Bureau. To the contrary, counsel for NC Farm Bureau has taken great lengths to explain how an articulation of a policy preference by the North Carolina Attorney General's Office on behalf of the NC DOJ may impact this litigation, in addition to the reasons articulated in NC Farm Bureau's Memorandum of Law in Support of its Motion to Intervene. (D.E. 65.)

## III.    Permissive Intervention

### A. The Magistrate Judge Failed to Consider Plaintiffs' Admissions That NC Farm Bureau Will Be The Target of Discovery.

The Magistrate Judge failed to adequately consider admissions elicited from Plaintiffs regarding the upcoming role of NC Farm Bureau in discovery. In response to examination by the Magistrate Judge, Plaintiffs admitted as follows:

…. Um, Your Honor, the Farm Bureau was mentioned by one of the sponsors of the bill.

PD.26254135.3

> Um, certainly, ah, they may have documentation that could be relevant to some of these equal protection claims.
>
> If we get to the point, for example, of conducting discovery on some of these equal protection claims having to do with race and national origin discrimination, it is conceivable that we would seek documents from -- directly from the Farm Bureau related to their communications about the bill.

(Ex. A 56:13-24.)

When determining whether to grant permissive intervention, a "court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In engaging in this analysis, the Magistrate Judge did not give any credence to the fact that, because NC Farm Bureau is already a *de facto* party to this litigation by virtue of being singled out in both complaints and the likely target of discovery by Plaintiffs, its intervention would result in a minimal impact on the litigation.

**B. The Magistrate Judge Incorrectly Relied on NC Farm Bureau's Proposed Answer In Determining That NC Farm Bureau's Intervention Would Unduly Prejudice the Current Litigation.**

The Magistrate Judge found that NC Farm Bureau's intervention would cause unnecessary delay and complication because "[NC] Farm Bureau's Answer denied many more allegations than Stein's answer did." (D.E. 75 p. 31.) The Magistrate Judge specifically points to six (6) denials, out of one hundred and twenty-seven (127) paragraphs, to define NC Farm Bureau's "litigation approach," which he concludes will present an "issue." (D.E. 75 p. 31.) He concludes these denials were of "seemingly uncontroversial" issues and are indicative of a litigation approach that will result in undue

delay.  This conclusion is improper because it presumes Plaintiffs' allegations have been proven true.  They have not.  No discovery has occurred and no findings of fact have been entered.  The Magistrate Judge also affords weight to the fact that NC Farm Bureau denied these six allegations while Defendant Stein admitted them.  This conclusion was based in part on the same faulty presumption that the subject six (6) paragraphs were proven true, and it fails to account for the possibility that the difference in NC Farm Bureau's answers could be the result of its knowledge of farming, a specialized industry, and/or its divergent interests and objectives.

Furthermore, many of the specific facts that the Magistrate Judge faults NC Farm Bureau for failing to admit are facts that Plaintiffs themselves have argued are merely "background" facts "pled … to provide context for the Court …."  (D.E. 38 p. 6.)  Denial of background facts should not form a basis to conclude that NC Farm Bureau will engage in incalcitrant litigation tactics because such facts are not relevant to the core cause of action brought by Plaintiffs and likely won't be the subject of discovery.[7]

## CONCLUSION

For the foregoing reasons, NC Farm Bureau objects to the Recommendation.

---

[7] Even if Plaintiffs do decide to make these background facts the subject of discovery, there is no real risk that discovery on those issues will spiral out of control because this Court is empowered with broad discretion over the management of this case and the scope of intervention.

PD.26254135.3

Respectfully submitted this the 31st day of May 2019.

                                    PHELPS DUNBAR LLP


                                    _/s/_ Nathan A. Huff_____
                                    Nathan A. Huff
                                    N.C. Bar No.: 40626
                                    GlenLake One
                                    4140 ParkLake Avenue
                                    Suite 100
                                    Raleigh, North Carolina 27612
                                    Telephone: 919-789-5300
                                    Telecopier: 919-789-5301
                                    nathan.huff@phelps.com
                                    *Attorney for North Carolina Farm Bureau*
                                    *Federation, Inc.*

## CERTIFICATE OF SERVICE

I certify that on May 31, 2019, I electronically transmitted the foregoing document to the

Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing

to the following CM/ECF registrants:

Carol Brooke
North Carolina Justice & Community Development Center
POB 28068
Raleigh, NC 27611
Email: Carol@Ncjustice.Org

Clermont Fraser Ripley
North Carolina Justice Center
POB 28068
Raleigh, NC 27611-8068

Julia M. Solorzano
Southern Poverty Law Center
150 East Ponce De Leon Ave.
Suite 340
Atlanta, GA 30030

Meredith B. Stewart
Southern Poverty Law Center
1055 St. Charles Ave., Ste. 505
New Orleans, LA 70130

Robert James Willis
Law Offices Of Robert J. Willis
P.O. Box 1269
Raleigh, NC 27602-1269

Kristi L. Graunke
Southern Poverty Law Center
150 East Ponce De Leon Avenue, Suite 340
Decatur, GA 30030

Emily E. Seawell
Southern Coalition For Social Justice
1415 W. Hwy. 54, Ste. 101
Durham, NC 27707
336-740-4780

PD.26254135.3

Email: Eseawell@Acluofnc.Org
*Attorneys For Plaintiffs*


Matthew T. Tulchin
N. C. Dept. Of Justice
POB 629
Raleigh, NC 27602-0629
*Attorneys For Joshua Stein*



PHELPS DUNBAR LLP


*/s/* Nathan A. Huff
Nathan A. Huff
N.C. Bar No.: 40626
GlenLake One
4140 ParkLake Avenue
Suite 100
Raleigh, North Carolina 27612
Telephone: 919-789-5300
Telecopier: 919-789-5301
nathan.huff@phelps.com
*Attorney for North Carolina Farm Bureau Federation, Inc.*

PD.26254135.3

## <u>CERTIFICATE OF WORD COUNT</u>

As required by Local Rule of Civil Procedure 7.3(d)(1), I certify that the document contains 4,895 words, excluding the parts of the document that are exempted by Local Rule of Civil Procedure 7.3(d)(1)

PHELPS DUNBAR LLP

*/s/* Nathan A. Huff
Nathan A. Huff
N.C. Bar No.: 40626
GlenLake One
4140 ParkLake Avenue
Suite 100
Raleigh, North Carolina 27612
Telephone: 919-789-5300
Telecopier: 919-789-5301
nathan.huff@phelps.com
*Attorney for North Carolina Farm Bureau Federation, Inc.*