IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-cv-01037-LCB-LPA

| FARM LABOR ORGANIZING COMMITTEE, et al. | ) | |
|---|---|---|
| Plaintiffs, | ) | ORAL ARGUMENT REQUESTED |
| v. | ) | |
| JOSHUA STEIN, et al. | ) | |
| Defendant. | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT

Plaintiffs demonstrate as a matter of law that Section 20.5 violates the Equal Protection Clause and First Amendment.

**I.  Section 20.5 Violates Equal Protection.**

Defendant ignores this Court's prior determination that Section 20.5 likely violates the Equal Protection Clause. *See* DE 56 at 71-73. Defendant's silence is telling. None of his arguments undermine this Court's preliminary conclusion that, because the union dues checkoff and settlement agreements at issue are entirely voluntary, Section 20.5's sweeping prohibitions are irrational. *See id.* at 72.

A.  Section 20.5's Text Reflects Animus.

Departing from his previous reliance on purported motivations of Section 20.5's supporters, Defendant now asserts that "it is the statutory text that matters." *See* DE 107 at

1

4-5, 11-13; DE 111 at 21. But the Supreme Court has repeatedly considered legislative intent and other political context in applying rational basis review. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744, 752, 763-64, 770-71 (2013); *Romer v. Evans*, 517 U.S. 620, 623–24, 628–29 (1996); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448–49 (1985); *U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534-35 (1973); *see also City of Greensboro v. Guilford Cnty. Bd. of Elections*, 248 F. Supp. 3d 692, 700–01 (M.D.N.C. 2017).

Regardless, the text of Section 20.5 alone reflects animus against FLOC. The dues checkoff prohibition excludes only farmworkers and their sole union from the benefits of payroll deductions that are expressly authorized for all other unions (and other third-party entities) under state law. *See* N.C. Gen. Stat. § 95-25.8(a)(2); 13 NCAC § 12.0305(b). Section 20.5's settlement provision also targets FLOC, preventing it from entering into *any* settlement agreements with farmers, and blocking farmworkers and willing farmers from entering into mutually beneficial settlement agreements that include an agreement with FLOC. *See* DE 109 at 28-31; DE 112 at 13-15; *Romer*, 517 U.S. at 627 (amendment failed rational basis scrutiny where it "withdraws from homosexuals, but no others, specific legal protection").

B. <u>Heightened Scrutiny is Appropriate.</u>

Defendant contends that Section 20.5 is not subject to heightened scrutiny. The Fourth Circuit recently held that courts should consider four factors in determining whether to apply heightened scrutiny: whether the disadvantaged class (1) has been historically

2

subject to discrimination; (2) has a defining characteristic that relates to its ability to perform or contribute to society; (3) is definable as a discrete group by obvious, immutable, or distinguishing characteristics; and (4) is a minority lacking political power. *Grimm v. Gloucester Cnty. Sch. Bd.*, No. 19-1952, 2020 WL 5034430, at *16 (4th Cir. Aug. 26, 2020), *r'hing en banc denied*, 2020 WL 5667294 (Sept. 22, 2020).

As Plaintiffs show, all of these factors weigh in favor of applying heightened scrutiny to Section 20.5's targeted discrimination against North Carolina farmworkers and their union. *See* DE 109 at 2-5, 8-12, 16-17; DE 112 at 2, 7, 23.[1] The Fourth Circuit held that heightened scrutiny is the equivalent of intermediate scrutiny; accordingly, the state must demonstrate that a classification is substantially related to an important governmental interest. *Grimm*, 2020 WL 5034430, at *14, 18. The justification for the classification must be "exceedingly persuasive" and "genuine;" speculation or post-hoc rationalizations are insufficient. *United States v. Virginia*, 518 U.S. 515, 533 (1996).

In his summary judgment briefs, Defendant repeatedly relies on *amicus* NCFB's representations to argue that Section 20.5 is constitutional. The only rationale offered by NCFB that Defendant does not want this Court to consider is the most obvious motivation for Section 20.5: NCFB's anti-union "philosophy positions." DE 110 at 5, 9, 11, 19.[2]

---

[1] With regard to the second factor, neither North Carolina farmworkers' status as farmworkers, nor as a group distinguishable because it is overwhelmingly constituted of Latinx non-citizens, bears any relation to their ability to contribute to or function in society. *See Grimm*, 2020 WL 5034430, at *17.

[2] Defendant and NCFB have asserted a common interest privilege and collaborated in defense of this action. *See, e.g.*, DE 108-8 at 14:25 — 19:24. This Court should therefore

3

Defendant contends that "NCFB's role is not legally relevant." DE 111 at 10.[3] But NCFB drafted large portions of Section 20.5, instigated its introduction, and furnished the scant rationale offered on the legislative record. DE 109 at 8-11. Evidence of NCFB's role in Section 20.5's passage is thus highly relevant in assessing whether the law withstands heightened scrutiny under *Grimm* or rational basis scrutiny under *Romer, Cleburne,* and *Moreno*. *See Cleburne*, 473 U.S. at 448 (examining constituent concerns that the city council relied on in enacting zoning restrictions); *Stout ex rel. Stout v. Jefferson Cnty. Bd. of Educ.*, 882 F.3d 988, 1007 (11th Cir. 2018) ("constituent statements and conduct can be relevant in determining the intent of public officials"); *see also Windsor*, 570 U.S. at 770 (weighing "avowed purpose" and "practical effect" of statute); *Bishop v. Smith*, 760 F.3d 1070, 1099 (10th Cir. 2014) (Holmes, J., concurring) (in *Romer*, *Cleburne*, and *Moreno*, "[r]ather than relying upon the various post-hoc rationalizations that *could* conceivably have justified the laws, the Court focused on the motivations that *actually* lay behind the laws").

---

reject Defendant's efforts to selectively declare off-limits those portions of NCFB-provided evidence that undermine his arguments.

[3] Defendant relies on *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) (rejecting an equal protection challenge to a statutory definition that delimited the scope of legislation regulating the cable industry). In analyzing the statutory definition at issue, the Court emphasized the "necessity" for Congress "to draw the line somewhere." *Id.* at 316. This rationale is inapplicable here, where the state has withdrawn statutory protections long enjoyed by FLOC and its members. And, unlike this case, *Beach* included no allegations of animus, nor did the Court consider whether heightened scrutiny was appropriate. *See id.* at 315 & n.6 (applying presumption of constitutionality "absent some reason to infer antipathy" and remanding to determine whether heightened scrutiny applied).

### C. Section 20.5 Fails Rational Basis Review

The rationales for Section 20.5 newly offered or elaborated on by Defendant in his opposition brief only confirm its infirmity.

1. *NLRA*

Defendant contends that the National Labor Relations Act's (NLRA) exclusion of farmworkers from coverage "alone is a rational basis" for Section 20.5. DE 111 at 14. But the NLRA excludes many other categories of employees, all of whom still enjoy the ability to elect union dues deductions pursuant to N.C. Gen. Stat. § 95-25.8(a)(2). 29 U.S.C. §§ 152(3), 164(c)(1)-(2); *see also Plyler v. Doe*, 457 U.S. 202, 226 (1982) ("To justify its use as a criterion for its own discriminatory policy, the State must demonstrate that the [federal] classification is reasonably adapted to *the purposes for which the state desires to use it.*" (internal quotations omitted). Section 20.5's targeted withdrawal of farmworkers' rights does not treat similarly situated workers alike, as required by the Equal Protection Clause. *Cleburne*, 473 U.S. at 439.

Plaintiffs' counsel has been unable to locate any other state equivalent to Section 20.5's targeted withdrawal of dues checkoffs and settlement rights from farmworkers, and neither Defendant nor amicus have cited any. *See Romer*, 517 U.S. at 633 ("[d]iscriminations of an unusual character especially suggest careful consideration") (internal quotation omitted); *see also id.* at 627-629. The fact that the NLRA provides an opportunity for politically powerful North Carolina farmers to advance their anti-union philosophy does not mean Section 20.5 is rational.

5

2. *Right to Work*

Contrary to Defendant and NCFB's suggestions, North Carolina's right to work (RTW) policy does not protect employers' rights to choose whether to be a union employer or to avoid administrative burdens. DE 110 at 17, 19; DE 111 at 15-16. Instead, RTW protects *employees*' freedom to choose or decline unionization, creating liability for employers who violate employees' rights under the law. *See* N.C. Gen. Stat. Ann. §§ 95-81, -83. Because Section 20.5 constrains employee freedom to choose unionization, it is not rationally related to RTW policy. *See* DE 112 at 24-26.[4]

3. *Administrative burden*

In general, the assertion — or even fact — that a law reduces administrative burdens or costs does not guarantee that legislation survives rational basis review, particularly where the law's classifications are arbitrary or motivated by animus. *See, e.g.*, *Plyler*, 457 U.S. at 227; *Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011); *see also Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶¶ 31-43, 378 P.3d 13, 27-31 (N.M. 2016) (rejecting costs, administrative burdens, and protection of small farms as rationales in holding that exclusion of farmworkers from workers' compensation coverage failed rational basis review under state constitution's equal protection provision). Urging a state interest in

---

[4] Nor does Section 20.5 plausibly bolster the "Agricultural Right to Work law of 2013," which regulates the conduct of buyers and sellers of agricultural products. *See* 2013 N.C. Sess. Laws 413 (H.B. 74) §15. Moreover, as a statute crafted to punish FLOC for advocacy directed at the tobacco industry and to advance NCFB's anti-union philosophy, the 2013 law likely bears some of the same constitutional infirmities as Section 20.5. *See* DE 108-3 ¶¶36-39; DE 108-8 at 59:16 — 63:10, 66:8 — 68:13; DE 110 at 9-10 (2013 Act was drafted to further "NCFB policy opposing the unionization of farmworkers").

6

"protecting" agribusiness from the voluntary administrative burdens of dues checkoffs, however, Defendant relies on factual misrepresentations and logical leaps.

Defendant alleges the burden of dues checkoffs fall hardest on small farms, which he defines as those operating on less than 49 acres. DE 111 at 3, 9. This is a red herring: in 2017, only 16% of small farms hired farm labor at all, and these farms comprised only 8% of the total number of farms in North Carolina. *See* Pls. Ex. 61 at 1, 17 (12,492 out of 46,418 total farms in the state hired farm labor, and only 3,777 of those farms were 49 acres or smaller).

Defendant similarly fails to support his generalization that small farms "generally lack computerized payroll systems," relying on documents from only four farms of unspecified size, and deposition testimony of a single retired farmer who did not administer payroll but conceded that "[f]arm accounts were kept mostly on the computer." DE 111 at 9, DE 107-15 at 21:11-12. Defendant's statement that "[e]ven larger farms with computerized payroll systems have to undertake time consuming efforts" to administer dues checkoffs also lacks factual support, as it is based on questionable testimony regarding the experiences of a single farm — the family farm of Section 20.5 proponent Senator Brent Jackson. DE 111 at 9. Even if truthful, this testimony cannot plausibly represent the experiences of the 8,714 other larger farms in North Carolina that hire farm labor. *See* Ex. 61 at 17.

None of Defendant's arguments disturb this Court's prior determination that North Carolina farmers' assumption of administrative burdens associated with dues checkoffs is

7

purely voluntary. Accordingly, Section 20.5 is not reasonably related to any legitimate goal of reducing administrative burdens. *See* DE 56 at 72; *see also* DE 109 at 5, 12; DE 112 at 3-4, 26-27.

## II. Section 20.5 Violates the First Amendment.

### A. Section 20.5 Targets FLOC and Its Members.

Laws that selectively burden an expressive association must satisfy strict scrutiny. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 638–39 (5th Cir. 2012). "Differential treatment" of an expressive association "places such a burden on the interests protected by the First Amendment" that courts will not "countenance such treatment unless the State asserts a counterbalancing interest of compelling importance that it cannot achieve without differential [treatment]." *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 585 (1983). The State must show that its differential treatment is "necessary to serve a compelling state interest and is narrowly drawn to achieve that end." *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987). Defendant has not done so here.

Defendant does not dispute that labor unions like FLOC are "an archetype of an expressive association," *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 301 (4th Cir. 1991); that "the First Amendment's protection of speech and associational rights extends to labor union activities," *State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d

8

126, 132 (2d Cir. 2013) (citations omitted); or that FLOC is the only entity subject to Section 20.5's regulatory burdens. DE 108-1 ¶ 18.[5]

This case stands in contrast to *Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.*, which upheld facially neutral "state laws forbid[ding] employers to discriminate against *union and non-union* members." 335 U.S. 525, 532 (1949). Regardless of whether the state laws in *Lincoln Federal* imposed a greater or lesser burden on labor unions generally, they did not single out an individual labor union for special treatment. The highly selective targeting in this case carries special significance because "[i]n the arena of constitutional rights . . . there is often safety in numbers." *Time Warner Cable*, 667 F.3d at 640. *See also, e.g.*, *Ark. Writers' Project*, 481 U.S. at 228 ("We need not fear that a government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency.") (internal quotations omitted).

---

[5] Defendant contends that FLOC failed to sufficiently explore alternative dues collection methods. The record shows just the opposite—FLOC considered other options and ultimately determined that dues checkoffs were the only feasible method. DE 108-11 at 185:17 — 201:6. Relying on the report of his expert witness Dr. Stephen Bronars, Defendant argues that FLOC can simply hire more staff to collect dues from all its members. DE 111 at 8. Dr. Bronars' deposition, however, revealed that this opinion was based on factually questionable assumptions and without any reference to FLOC's actual finances. Pls. Ex. 62 at 163:21 — 184:1; *see also* DE 108-17 (FLOC financial statements). Regardless of theoretical alternatives, Section 20.5's restrictions on FLOC's ability to enter into or benefit from dues checkoff and settlement agreements constitute regulatory burdens.

Although Defendant cavils that Section 20.5 does not single FLOC out *by name*, First Amendment doctrine is clear: "[A] law may target a small number of speakers without expressly identifying those singled out. Rather, legislation 'targets a small group' by structuring its burdens in a way that apply to the few." *Time Warner Cable, Inc.*, 667 F.3d at 640 (quoting *Minneapolis Star*, 460 U.S. at 591). Because Section 20.5 effectively singles FLOC out for regulatory burdens not imposed on any other entity, *Minneapolis Star* and its progeny require Defendant to demonstrate that Section 20.5's differential treatment of FLOC satisfies strict scrutiny. Defendant has not even attempted to make the requisite showing.

Defendant tries to distinguish *Minneapolis Star* by arguing that the ink and paper tax in that case was a direct regulation on expression. DE 111 at 25. Defendant's theory finds no support in *Minneapolis Star*, which applied strict scrutiny because the tax selectively applied to a few large newspapers, not because it was a tax on ink. *See, e.g.*, 460 U.S. at 592–93 ("A tax that singles out the press, or that targets individual publications within the press, places a heavy burden on the State to justify its action"). Defendant's theory is also impossible to reconcile with the Supreme Court's subsequent decision in *Ark. Writers' Project*, which held that Arkansas' generally applicable sales tax unconstitutionally exempted most publications while selectively burdening general interest magazines. 481 U.S. at 229. Courts have repeatedly cited *Minneapolis Star* for the principle that "[l]aws singling out a small number of speakers for onerous treatment are inherently

10

suspect," regardless of whether the burden falls directly on expressive activity. *Time Warner Cable*, 667 F.3d at 638; *see also Leathers v. Medlock*, 499 U.S. 439, 447 (1991).

Defendant hyperbolically suggests that applying heightened First Amendment scrutiny to Section 20.5 would render FLOC "immune from regulation." DE 111 at 27. Not so. Plaintiffs do not claim that FLOC should be exempted from generally applicable laws, nor do Plaintiffs assert that laws imposing differential burdens on expressive associations are categorically unconstitutional. However, laws that selectively burden *individual* expressive associations must be subjected to strict scrutiny to ensure that differential treatment in this constitutionally sensitive area is fully justified. Defendant has failed to carry his burden of justification in this case.

### B. The Settlement Provision Prevents FLOC and Its Members from Advancing Interests Through Litigation.

Defendant argues that the settlement provision of Section 20.5 should be interpreted only to "prohibit[] a settlement requiring a producer to enter into (or not enter into) a *separate* agreement with a labor union," rather than all settlement agreements between FLOC and an agricultural producer. DE 111 at 28–31. But the word "separate" does not appear anywhere in Section 20.5, and Defendant fails to explain how this "separate document" limitation is readily apparent from Section 20.5's text or purpose. *See Boos v. Barry*, 485 U.S. 312, 330 (1988) (courts are "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent" from the statute's text).

11

Even if Defendant's narrowing construction were adopted, the settlement provision would still violate the First Amendment. Section 20.5's restrictions on settlement prevent FLOC and its members from advancing their collective interests through litigation. DE 109 at 28–31; DE 112 at 13–15. Although Defendant contends that North Carolina's RTW law similarly prohibits FLOC from entering into certain agreements as a condition of settlement, the statutes differ in at least two key respects. First, as discussed above, the RTW statute is facially neutral and generally applicable, while Section 20.5 selectively targets FLOC. Second, where the RTW statute categorically prohibits agreements that unlawfully discriminate against employees based on their union affiliation, Section 20.5 prohibits FLOC and its members from entering into agreements to engage in lawful conduct simply because those agreements are connected to the settlement of a lawsuit. Section 20.5 thus impedes FLOC and its members from using litigation to vindicate their lawful interests.

Defendant attempts to distinguish *NAACP v. Button*, 371 U.S. 415 (1963), by arguing that *Button* involved a restriction on the NAACP's efforts to help private clients, whereas this case involves a restriction on efforts by FLOC's members to benefit the union. But this is a distinction without a difference. The union represents the shared interests of its members, and "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971); *see also Capital Associated Indus. v. Cooper*, 129 F. Supp. 3d 281, 290 (M.D.N.C. 2015). Defendant fails to explain why

12

FLOC and its members should be selectively barred from entering into otherwise lawful settlements.

## CONCLUSION

For the reasons stated above and in their other summary judgment briefs (DE 109, DE 112), Plaintiffs respectfully ask that this Court grant their summary judgment motion.

Respectfully submitted this 28th day of September, 2020,

/s/ Kristi Graunke
Kristi Graunke
North Carolina Bar No. 51216
kgraunke@acluofnc.org
Jaclyn Maffetore
North Carolina Bar No. 50849
jmaffetore@acluofnc.org
ACLU of North Carolina Legal Foundation
P. O. Box 28004
Raleigh, NC 27611-8004
Tel: 919-834-3466

Julia Solórzano
Georgia Bar No. 928725
julia.solorzano@splcenter.org
Southern Poverty Law Center
P.O. Box 1287
Decatur, GA 30030-1287
Tel: 404-521-6700

Meredith B. Stewart
Louisiana Bar No. 34109
meredith.stewart@splcenter.org
Southern Poverty Law Center
201 St. Charles Ave, Ste. 2000
New Orleans, LA 70170
Tel.: 504-486-8982

Carol Brooke
North Carolina Bar No. 29126
carol@ncjustice.org
Clermont Ripley
North Carolina Bar No. 36761
clermont@ncjustice.org
North Carolina Justice Center
PO Box 28068
Raleigh, NC 27611
Brooke Tel: 919-856-2144
Ripley Tel.: 919-856-2154

Brian Hauss
New York Bar No. 5437751
bhauss@aclu.org
Arianna Demas
ademas@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212-549-2500

Robert J. Willis
North Carolina Bar No. 10730
rwillis@rjwillis-law.com
Law Office of Robert J. Willis, P.A.
P.O. Box 1828
Pittsboro, NC 27312
Tel: 919-821-9031

## CERTIFICATE OF COMPLIANCE WITH LR 7.3(d)

Relying on the word count function of Microsoft Word, I hereby certify that this reply brief complies with the word limitations set forth in L.R. 7.3(d).

/s/ Kristi L. Graunke
*One of the Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on September 28, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve counsel for Defendant.

/s/ Kristi L. Graunke
*Counsel for Plaintiffs*
