IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

No. 1:17-cv-1037

| FARM LABOR ORGANIZING COMMITTEE, et al., |  |
|---|---|
| *Plaintiffs*, | **Memorandum of Law in Support of Defendant's Motion in Limine #1:** |
| v. | |
| JOSHUA STEIN, | *Exclude and/or Limit Testimony or Evidence from Certain Expert Witnesses* |
| *Defendant*. | |

Defendant Joshua Stein, in his official capacity as Attorney General of North Carolina, by and through undersigned counsel, submits this brief in support of his Motion in Limine to exclude or limit testimony or evidence from certain expert witnesses.[1]

As explained herein, Defendant asks this Court to exclude or limit evidence at trial from the following expert witnesses, should they be offered as such at trial:

| **Witness** | **Reference** | **Requested Limitation** |
|---|---|---|
| Dr. Thomas Arcury | - Report at DE 108-2<br>- Testimony, if offered | Exclude evidence regarding FLOC or its operations as not within expert's personal knowledge or expertise. |
| Law Professor Charlotte Garden | - Report at DE 108-10<br>- Testimony, if offered | Exclude entirely (not proper subject of expert testimony/*Daubert*) |
| Dr. Cindy Hahamovitch | - Decl. at DE 34-13<br>- Testimony, if offered | Exclude entirely (failure to disclose expert witness) |
| Dr. Robert Korstad | - Report at DE 108-28<br>- Testimony, if offered | Exclude entirely (not proper subject of expert testimony/*Daubert* and relevance/unfair prejudice) |

---

[1] Defendant files this motion without knowing whether Plaintiffs will ultimately designate all of these experts as witnesses for the trial or call them to testify. Likewise, to the extent Plaintiffs' pre-trial disclosures, when received, give Defendant cause to expand upon this motion, Defendant reserves the right to do so via an objection to those disclosures.

# INTRODUCTION

In support of their motion for summary judgment, Plaintiffs relied on expert reports or declarations from four witnesses: Dr. Thomas Arcury, a medical anthropologist and public health scientist at Wake Forest School of Medicine (DE 109 at 2, 13); Professor Charlotte Garden, a law professor at Seattle University School of Law (DE 109 at 5); Dr. Cindy Hahamovitch, a history professor at the University of Georgia (DE 109 at 16); and Dr. Robert Korstad, a professor of public policy and history at Duke University (DE 109 at 16). Such reliance suggests Plaintiffs may seek to utilize them at trial as well.

One of these expert witnesses, Dr. Hahamovitch, was not disclosed as an expert witness as required under Rule 26. Another, Professor Garden, is a law professor seeking to opine on First Amendment principles on which this Court serves as the expert. Dr. Arcury opines in his report on FLOC's operations and the effect of Section 20.5 on FLOC's members (*e.g.*, DE 108-2 ¶¶ 17, 29); but his deposition testimony revealed he had no expert or factual basis of knowledge about how FLOC operates and did not understand its current practices, including as to dues (*e.g.*, DE 108-26 at 32:20–38:9; 56:24–58:1; 59:17–61:14). Finally, Dr. Korstad's purported evidence about discrimination in agriculture in the past and in other contexts is not helpful in resolving any factual dispute. Furthermore, his purported evidence presents a risk of unfair prejudice that substantially outweighs its probative

value. For the reasons described below, trial testimony and evidence from these witnesses should be limited or excluded.[2]

## ARGUMENT

**I.      Professor Garden Is Not a Qualified Expert for the Purpose Offered.**

The Federal Rules of Evidence provide that an expert witness may testify in the form of an opinion "if scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. The Supreme Court has made clear the trial judge serves as gatekeeper to determine whether a designated expert's testimony is relevant and reliable before allowing the testimony to be admitted into evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). An expert's testimony will be considered "relevant" if it will help the jury in resolving a factual dispute. *Daubert*, 509 U.S. at 591; *U.S. v. Ancient Coin Collectors Guild*, 899 F.3d 295, 319 (4th Cir. 2018); *Nease v. Ford Motor Co.*, 848 F.3d 219, 228–29 (4th Cir. 2017). The proponent of the expert opinion bears the burden of establishing its admissibility. *See*

---

[2]     After the magistrate judge's ruling rejecting the parties' agreement to expand the expert deadlines (April 27, 2020, text order), and subsequent ruling denying a joint motion to extend those deadlines (DE 95), Defendant was left without the ability to serve any affirmative expert reports without contravening the Court's denial of the extension of time. Plaintiffs served their reports out of time; Defendant, faced with the risk of expending State funds on expert reports that may be stricken as untimely, chose to submit timely expert *rebuttal* reports only. This limited Defendant's ability to provide broader expert testimony in this case. In light of the parties having mistakenly agreed to and relied on the mutual extension that was ultimately disallowed, Defendant has elected not to move to strike Plaintiffs' reports as untimely. Defendant's rebuttal expert, Dr. Bronars, provided rebuttals to both Dr. Arcury and Dr. Korstad; should the Court entirely exclude Dr. Korstad, Defendant recognizes that Dr. Bronars' rebuttal to that report would reasonably be excluded as well.

3

*Daubert*, 509 U.S. at 592 n.10; *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

"As a general rule an expert's testimony on issues of law is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). As the Fourth Circuit explained, "It is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law." *Teague v. Bakker*, 35 F.3d 978, 993 n.21 (4th Cir. 1994) (citation and quotation marks omitted); *see also Adalman v. Baker Watts Co.*, 807 F.2d 359, 366 (4th Cir. 1986), *abrogated on other grounds*, *Pinter v. Dahl*, 486 U.S. 622, 649 n.25 (1988). For this reason, "[e]xpert testimony as to the proper interpretation of applicable domestic law is inadmissible." *Teague*, 35 F.3d at 993 n.21 (citation omitted).

Plaintiff cannot satisfy the burden that Garden's Report (DE 108-10), or testimony consistent with that report, is admissible at trial. First, the report is not relevant because it would not assist the trier of fact in determining the material factual issues presented in the case—indeed, Garden's Report is not sufficiently tied to the specific facts of this case. Rather, it provides a general commentary of labor and First Amendment law, ending with a conclusory statement regarding the operation of the Farm Act.

Second, the report constitutes an improper opinion on the law. Garden, an Associate Professor at the Seattle University School of Law, teaches courses "in labor law and constitutional law." (DE 108-10 ¶ 2). In addition, she "occasionally draft[s] and file[s] amicus briefs, often in cases involving the First Amendment rights of unions and workers, and

4

other issues related to labor and employment law." (*Id.* at ¶ 7). In her report, she provides a general commentary on labor and First Amendment law, opines on the Farm Act, and provides her interpretation of how the law applies. (*E.g.*, *id.* ¶ 17, 28, 33, 38, 40–41, 50, 59, 61, 76). That is exactly the type of report that is prohibited and inadmissible because it purports to be "[e]xpert testimony as to the proper interpretation of applicable domestic law." *Teague*, 35 F.3d at 993 n.21 (citation omitted). As the Fourth Circuit warned: "[W]hat line is to be drawn to exclude tort lawyers from offering their expert opinions to the jury as to the meaning and applicability of the laws governing tort litigation? Examples of this sort could be multiplied across the gamut of litigation." *Adalman*, 807 F.2d at 366.

## II. Dr. Arcury Lacks Both Personal Knowledge and Expertise as to FLOC's Practices and Should Be Limited from Testifying About Those Practices.

Defendant does not seek to entirely exclude Dr. Arcury's expert testimony or report but asks the Court to limit him from testifying about FLOC's practices, or conclusions about how various law changes would affect FLOC's practices, because Dr. Arcury's deposition testimony reveals he had little to no knowledge about how FLOC actually operates.

Dr. Arcury's proffered conclusion that, based on his work studying H-2A workers, removing checkoffs would create a "severe hardship for workers" and FLOC (DE 108-2 ¶ 17) was made without knowledge of how many H-2A workers were actually in FLOC (DE 108-26 at 32:20–25 ("I have no idea")); how many non-H-2A workers were members (*id.* at 33:4–8); how a person goes about joining FLOC (*id.* at 33:12–15); or how much members pay in dues or how often they pay them (*id.* at 33:16–24). He made his conclusions without knowing whether FLOC has ever utilized methods to collect dues besides

5

checkoffs (*id.* at 33:25–34:2); without understanding how checkoffs actually work between workers, farmers, and the union (*see id.* at 34:3–24); and without any knowledge of how a worker would go about leaving the union if he or she desired (*id.* at 35:1–25). He had never seen a FLOC checkoff form before—or *any* FLOC forms before. (*Id.* at 36:9–18). His conclusion that the Checkoff Provision would pose a severe hardship on FLOC and its members came without consideration or knowledge of how farmworkers in other states pay dues, or how union members in other industries do so. (*Id.* at 67:24–69:3; *see also id.* at 75:9–76:17). He never even looked into those things. (*Id.*).

Dr. Arcury's proffered statement in one of his studies that FLOC closely monitors the wages paid to workers under the H-2A workers in North Carolina was "merely a general discussion point," Dr. Arcury testified, and not based upon data. (*Id.* at 56:24–57:17). In support of his assertion that the "FLOC collective bargaining agreement includes a set of contract terms that contributes to better housing and working conditions of farmworkers with H-2A visas" (DE 108-2 ¶ 29), Dr. Arcury could only reference a "general collective bargaining agreement" from FLOC, with which he was "not overly familiar" (DE 108–26 at 59:17–60:8), while a CBA is a contract between a specific farm (or farm association) and FLOC. And when asked for data in support of his conclusion about the effects of FLOC's CBAs, Dr. Arcury said, "I don't have data that would directly support that. It is my interpretation of the data that I have collected and analyzed over the years." (*Id.* at 60:15–61:10). Yet he then acknowledged that he had never examined union status of a farm or person as a dependent variable in any of his articles. (*Id.* at 61:11–14).

6

Ultimately, Defendant simply submits that Dr. Arcury is not an expert in FLOC's practices or even union practice generally. He should there not be permitted to opine on conclusions regarding Section 20.5's effect on those practices when he does not possess either personal knowledge or expertise on those subjects in the first place. Defendant respectfully requests that evidence from him be limited in that manner.

### III. Plaintiffs May Not Rely on Dr. Hahamovitch's Declaration or Testimony at Trial Because It Constitutes Unnoticed Expert Testimony.

Under Federal Rule of Civil Procedure 26(a)(2), each party is required to disclose expert witnesses, including "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *see also Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 423–24 (M.D.N.C.2005) (noting that certain witnesses, "must be disclosed as an expert because he or she is relying on 'scientific, technical, or other specialized knowledge.'" (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 n.2 (7th Cir. 2004))). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiffs did not identify Hahamovitch as an expert witness. She was not identified as a potential witness in the Initial Disclosures Plaintiffs served on November 1, 2019; the First Amended Initial Disclosures served on February 20, 2020; or the Second Amended

Initial Disclosures served on July 15, 2020.[3] Moreover, and more importantly, she was not disclosed as an *expert witness* in Plaintiffs' Rule 26 expert disclosures.

On the issue of substantial justification, Plaintiffs have not provided any explanation whatsoever. Yet Plaintiffs cited to the Hahamovitch Declaration in their summary judgment briefs anyway. (DE 109 at 16). To the extent Plaintiffs were aware that they would use the declaration from this witness, or would otherwise seek to have her testify, they were obligated to supplement their disclosures (for a 3rd time) or otherwise identify Hahamovitch as an expert during discovery. Plaintiffs failed to do so and cannot establish substantial justification to use her at trial.

Nor can Plaintiffs claim that they failed to identify her as an expert because they did not intend to use her as such. Her declaration is entitled "Expert Declaration of Dr. Cindy Hahamovitch"; it details her education background, professional, training, and professional qualifications. She even describes herself as an "expert on the history of farmworkers, particularly guestworkers, in the United States and around the world in the 19th, 20th, and 21st centuries." (DE 34-13 ¶ 4). The declaration also makes clear that the witness is offering her opinion based on her professional training and experience. (*See, e.g.*, DE 34-13 ¶ 6). Accordingly, Plaintiff was required to identify Hahamovitch as an expert witness. *See Indem. Ins. Co.*, 227 F.R.D. at 423–24.

---

[3] Hahamovitch's Declaration was referenced in one of Plaintiffs' interrogatory responses. However, the response was served toward the very end of the discovery period and the declaration was only listed as a possible source for the "specific factual basis and evidence" for a contention contained in a paragraph of the First Amended Complaint.

Plaintiffs cannot establish harmlessness. Plaintiffs' use of the Hahamovitch Declaration in summary-judgment briefing gives cause to predict they may declare her as a witness for trial; such testimony would be inadmissible. Defendant has been prejudiced by the inability to address Hahamovitch's expert witness statements during the lengthy discovery period.[4] Accordingly, pursuant to Federal Rule of Civil Procedure 37(c)(1), Plaintiffs should not be allowed to use at trial the Hahamovitch Declaration or any testimony from this undisclosed expert witness.

### IV. Dr. Korstad's Report and Testimony Should Be Excluded Because It Does Not Meet the *Daubert* Standard and is Irrelevant and Unfairly Prejudicial.

Finally, Plaintiff should be excluded from using evidence from Dr. Korstad at trial. First, Dr. Korstad's report and testimony is not admissible because it fails to meet the *Daubert* standard. As discussed above, Plaintiffs bear the burden of establishing Dr. Korstad's expert opinion is admissible. *See Daubert*, 509 U.S. at 592 n.10; *Cooper*, 259 F. 3d at 199. To be admissible, a court must first determine whether the expert's testimony is relevant. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591. An expert's testimony will be considered "relevant" if it will help the jury (or here, the finder of fact) in resolving a factual dispute. *Daubert*, 509 U.S. at 591; *Ancient Coin Collectors Guild*, 899 F.3d at 319 (4th Cir. 2018); *Nease*, 848 F.3d at 228–29.

---

[4] Although Defendant was aware that Plaintiffs had filed the Hahamovitch Declaration in support of their amended motion for injunctive relief, she was not listed as a witness in Plaintiff's initial disclosures and was not listed as an expert witness. Accordingly, Defendant reasonably believed that Plaintiffs did *not* seek to use her as a witness, and, therefore, had no reason to pursue that avenue in discovery.

Similar to Professor Garden's report and testimony, Dr. Korstad's report and testimony would not assist the trier of fact in determining the material factual issues presented in the case. Indeed, most of Dr. Korstad's report opines on historical discrimination in the south and in North Carolina from decades ago, and much of it focuses on the 1940s. (*See* DE 108–28 ¶¶ 11–76). The report then very briefly concludes by seeking to tie the 2017 Farm Act to that history. (*See* DE 108-28 ¶¶ 77–88). The vast majority of Dr. Korstad's report is about events that have nothing to do with FLOC, the 2017 Farm Act, Section 20.5, or even the twenty-first century. Even the portions of the report seeking to compare the historical analysis to the 2017 Act contain little more than conclusory statements that provide nothing to help the finder of fact to resolve any factual dispute in this case. (*See id.*).

Second, Dr. Korstad's report is inadmissible because it is irrelevant under FRE 401 and 402, and/or unduly prejudicial under FRE 403. As the magistrate judge's memorandum and recommendation observed, referring to Dr. Korstad's report, "Nor do references to historic racial segregation and associated exclusions in agriculture suffice, for the referenced restrictions largely targeted African American citizens, not Latinx non-citizens." (DE 124 at 62 (citations omitted)).

Indeed, the Fourth Circuit has recently explained that a court "*must* afford the state legislature a presumption of good faith. For a finding of past discrimination neither shifts the allocation of the burden of proof nor removes the presumption of legislative good faith." *NAACP v. Raymond*, 981 F.3d 295, 303 (4th Cir. 2020) (citations and internal quotations omitted); *accord Abbott v. Perez*, 138 S. Ct. 2305, 2324-25 (2018). Under the required test, the Korstad Report's approach, which asks the Court to presume bad faith from

10

Case 1:17-cv-01037-LCB-LPA   Document 134   Filed 03/26/21   Page 10 of 12

a facially neutral act based on depictions of unrelated and long-past discrimination, is not relevant under FRE 401 in light of the *Abbott* rule. Moreover, by attempting to paint the 2017 North Carolina General Assembly as racially motivated based on the acts of others more than half a century ago or more, any probative value the evidence may be presumed to have "is substantially outweighed by the danger of . . . unfair prejudice [and] confusing the issues." FRE 403. As a result, the Court should not permit evidence from Dr. Korstad.

## CONCLUSION

For the foregoing reasons, Defendant respectfully submits that his Motion in Limine should be granted.

Respectfully submitted, this 26th day of March, 2021.

>JOSHUA H. STEIN
>Attorney General
>
>/s/ Matthew Tulchin
>Matthew Tulchin
>Special Deputy Attorney General
>N.C. State Bar No. 43921
>mtulchin@ncdoj.gov
>
>/s/ Phillip A. Rubin
>Phillip A. Rubin
>Special Deputy Attorney General
>N.C. State Bar No. 51963
>prubin@ncdoj.gov
>
>N.C. Department of Justice
>P.O. Box 629
>Raleigh, NC 27602-0629
>Tel: 919.716.6900
>Fax: 919.716.6763
>
>*Counsel for Defendant*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Memorandum, including body, headings, and footnotes, complies with the required word limitations for memoranda in support of motions.

This the 26th day of March, 2021.

                                              /s/ Matthew Tulchin
                                              Matthew Tulchin
                                              Special Deputy Attorney General