**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

FARM LABOR ORGANIZING          )
COMMITTEE, et al.,             )
                               )
          Plaintiffs,          )
                               )
     v.                        )          1:17cv1037
                               )
JOSHUA STEIN,                  )
                               )
          Defendant.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on the appropriate remedy for the constitutional violations found as to Section 20.5 of North Carolina General Assembly Session Law 2017-108 (the "Farm Act"). For the reasons that follow, the Court should enjoin defendant Joshua Stein, in his official capacity as Attorney General of the State of North Carolina ("Stein" or "Defendant"), from enforcing, and should issue a declaratory judgment invalidating, the unconstitutional aspects of the Farm Act.

### BACKGROUND

For decades, the Farm Labor Organizing Committee ("FLOC") has served as the only farmworker union in North Carolina. (See Docket Entry 108-1, ¶ 18; Docket Entry 108-3, ¶ 55.) In 2017, North Carolina enacted Section 20.5 (see Docket Entry 70, ¶ 78), which amended North Carolina General Statute Section 95-79(b) by adding the underlined text and deleting the stricken text shown below:

> Any provision that directly or indirectly conditions the purchase of agricultural products[,] ~~products or~~ the terms of an agreement for the purchase of agricultural products<u>, or the terms of an agreement not to sue or settle litigation</u> upon an agricultural producer's status as a union or nonunion employer or entry into or refusal to enter into an agreement with a labor union or labor organization is invalid and unenforceable as against public policy in restraint of trade or commerce in the State of North Carolina. <u>Further, notwithstanding G.S. 95-25.8, an agreement requiring an agricultural producer to transfer funds to a labor union or labor organization for the purpose of paying an employee's membership fee or dues is invalid and unenforceable against public policy in restraint of trade or commerce in the State of North Carolina</u>.

(Docket Entry 108-1, ¶ 32.)[1]  On behalf of its members and itself, FLOC and FLOC member Valentin Alvarado Hernandez (collectively, the "Plaintiffs") promptly sued to, <u>inter alia</u>, enjoin enforcement of Section 20.5.  (<u>See generally</u> Docket Entry 31 (the "Amended Complaint").)[2]  Stein responded by moving to dismiss the Amended Complaint, contending, in part, that he "[wa]s an improper party for Plaintiffs' federal constitutional claims."  (Docket Entry 44 at 2.)

---

1  For purposes of this litigation, the alterations to the first sentence of the statute constitute the "Settlement Provision" and the second sentence constitutes the "Dues Checkoff Provision." (<u>See, e.g.</u>, Docket Entry 124 at 34-35.)  [Docket Entry page citations utilize the CM/ECF footer's pagination.]

2  Victor Toledo Vences, a FLOC member who worked for eighteen years, including in 2017, as a farmworker in North Carolina tobacco and vegetable operations (Docket Entry 34-6, ¶¶ 9, 11, 12, 17), also joined in this lawsuit (<u>see, e.g.</u>, Docket Entry 31, ¶ 10), but later "voluntarily dismisse[d] his claims in this matter without prejudice" because an injury precluded his "return to work in North Carolina in the seasons subsequent to the 2017 season in which he filed this lawsuit" (Docket Entry 98 at 1).

2

The Court (per United States District Judge Loretta C. Biggs) denied Stein's dismissal motion and granted Plaintiffs' request for a preliminary injunction, enjoining Stein "from enforcing the Farm Act" and waiving the preliminary injunction security requirement. (Docket Entry 62 at 1.) The parties thereafter proceeded to discovery (see Text Order dated Aug. 15, 2019 (adopting parties' proposed scheduling order)) and filed cross-motions for summary judgment (see Docket Entries 106, 108). Reviewing those motions, the undersigned recommended that the Court "enter summary judgment for Plaintiffs on their claims that the Settlement Provision violates their first-amendment and (first-amendment-related) equal-protection rights, but . . . enter summary judgment for Defendant on Plaintiffs' remaining claims." (Docket Entry 124 (the "Recommendation") at 89.) The Court (per Judge Biggs) adopted the Recommendation. (Docket Entry 141 (the "Order") at 1-2.) Noting that, "[a]lthough the parties agree that the Court should tailor the relief awarded Plaintiffs, they do not appear to agree on the scope of that relief," the Court ordered "further briefing on the appropriate remedy." (Id. at 2.) In accord with the Order, Plaintiffs and Stein filed memoranda addressing their proposed remedies. (See Docket Entries 142, 150, 151.)

Plaintiffs seek an order (1) declaring that the Settlement Provision, as created by the language "or the terms of an agreement not to sue or settle litigation" (the "Settlement Clause") in North

Carolina General Statute Section 95-79(b), violates the First Amendment and Equal Protection Clause of the Fourteenth Amendment (Docket Entry 142 at 2 (emphasis omitted)); (2) permanently enjoining Stein, and those acting in concert with him, from enforcing this aspect of the Farm Act; and (3) directing Stein "to take all reasonable and necessary steps to ensure statewide compliance with" the order, including by "providing immediate notice and a copy of" the order to those under his supervision, his employees, "and/or those who work in concert or participation with him in the enforcement of criminal and/or restraint of trade or commerce laws in North Carolina, including all of the district attorneys for each prosecutorial district of the state as defined in N.C. Gen. Stat. § 7A-60(a)-(a1)" (id. at 3). (See id. at 2-3.)

In response, Stein concedes that the Court's Order "meets the standard for injunctive relief." (Docket Entry 150 at 5; see also id. ("Defendant agrees that, on the facts of this case and considering the Court's Order on Summary Judgment, some form of injunctive relief is appropriate.").) However, Stein proposes significantly different injunctive relief than Plaintiffs; more specifically, Stein urges entry of the following order:

> 1. The "Settlement Provision," enacted in Section 20.5 of the Farm Act of 2017, N.C. Session Law 2017-108, and codified at N.C. Gen. Stat. § 95-79(b), is identified by the underlined text below:
>
>> Any provision that directly or indirectly conditions the purchase of agricultural products, the terms of an agreement for the purchase of

4

agricultural products, <u>or the terms of an agreement</u> <u>not to sue or settle litigation</u> upon an agricultural producer's status as a union or nonunion employer or entry into or refusal to enter into an agreement with a labor union or labor organization is invalid and unenforceable as against public policy in restraint of trade or commerce in the State of North Carolina.

2. As applied to prohibit a labor union or labor organization from entering into settlement agreements other than those containing terms that are conditioned (1) on an agricultural producer's status as a union or nonunion employer or (2) on a party's entry into or refusal to enter in a separate agreement with a labor union or organization, the Settlement Provision is **DECLARED** to violate the First Amendment of the United States Constitution, and First-Amendment-related rights under the Equal Protection Clause.

3. Defendant Joshua Stein, in his official capacity as Attorney General, as well as Defendant's officers, agents, servants, employees, and attorneys, are **PERMANENTLY ENJOINED** from threatening to enforce and/or enforcing the Settlement Provision, as identified in paragraph 1 above, to the extent declared in paragraph 2 above to violate the Constitution.

4. The Settlement Provision may be enforced to prohibit settlement agreements (or agreements not to sue) containing the prohibited terms or conditions identified in the Settlement Provision, but it may not be enforced or threatened to be enforced to prevent any party (including but not limited to a labor union or labor organization) from entering into any settlement agreement (or agreement not to sue) that lacks the terms or conditions prohibited by the Settlement Provision.

(Docket Entry 150 at 11-12 (emphasis in original).) Stein also

seeks dissolution of Court's preliminary injunction, especially as

to the Dues Checkoff Provision. (<u>See, e.g.</u>, <u>id.</u> at 12.)

## DISCUSSION

### I. Relevant Standards

Issuance of a permanent injunction lies within a district court's discretion upon a plaintiff's showing:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Legend Night Club v. Miller, 637 F.3d 291, 297 (4th Cir. 2011) (internal quotation marks omitted).

Rule 65 of the Federal Rules of Civil Procedure (the "Rules") specifies that every order granting injunctive relief must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). As the United States Supreme Court has explained, Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." Schmidt v. Lessard, 414 U.S. 473, 476 (1974). "In light of these important purposes, 'the specificity provisions of Rule 65(d) are no mere technical requirements' and 'basic fairness requires that those enjoined receive explicit notice of precisely what conduct is

6

outlawed.'" Pashby v. Delia, 709 F.3d 307, 331 (4th Cir. 2013) (quoting Schmidt, 414 U.S. at 476). In other words, "to comply with Rule 65(d), [a] district court's order must be clear enough to inform the [enjoined party] of what it may and may not do." Id.

As for declaratory relief, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In this regard, the United States Court of Appeals for the Fourth Circuit has observed,

> it is elementary that a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted). Notably, though, "a district court must have 'good reason' for declining to exercise its declaratory judgment jurisdiction." Id. at 594 (quoting Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994)). As such, "a district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief will serve a useful purpose in clarifying and

7

settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. (internal quotation marks omitted).

## II.  Injunctive Relief

As Defendant concedes, the Recommendation and Order satisfy "the standard for injunctive relief." (Docket Entry 150 at 5.)  To begin, "the Settlement Provision violates the First Amendment" (Docket Entry 124 at 53; see id. at 47-53) as well as Plaintiffs' first-amendment-related rights under the Equal Protection Clause (see id. at 80-82).  (See Docket Entry 141 at 1-2 (adopting Recommendation).)  "[I]t is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Legend, 637 F.3d at 302 (brackets and internal quotation marks omitted).  "Moreover, monetary damages are inadequate to compensate for the loss of First Amendment freedoms." Id.  Further, "the threatened injury to Plaintiffs easily outweighs whatever burden the injunction may impose," id., as the Settlement Provision, at a minimum, impedes Plaintiffs' ability to "engage[] in litigation as a vehicle for effective political expression and association, as well as a means of communicating useful information to the public" (Docket Entry 124 at 50 (internal quotation marks omitted); see, e.g., id. at 50-51), but Defendant "is in no way harmed by issuance of an

8

injunction that prevents [him] from enforcing unconstitutional restrictions," Legend, 637 F.3d at 302-03. "And f[inally], upholding constitutional rights is in the public interest." Id. at 303. "Because each of the factors that [courts] consider when deciding whether to grant injunctive relief weighs in favor of Plaintiffs, . . . [the Court should] issu[e] a permanent injunction against the enforcement of the [Settlement Provision]." Id.

## A. Scope

As previously documented, although the parties agree on the appropriateness of injunctive relief, they disagree regarding its scope. Effectively, Plaintiffs ask the Court to invalidate the Settlement Clause (see Docket Entry 142 at 2) and Stein asks the Court to rewrite Section 95-79(b) to conform to the interpretation of the Settlement Provision that he advanced at summary judgment (see, e.g., Docket Entry 150 at 2-3, 7-8). The Court should opt against the latter approach because (as the Court determined at summary judgment) the plain language of Section 95-79(b) cannot accommodate Stein's proposed interpretation. (See, e.g., Docket Entry 124 at 36, 47.)[3]

As the United States Supreme Court has explained:

Court[s] may impose a limiting construction on a statute only if it is readily susceptible to such a construction.

---

3  Furthermore, contrary to Stein's intimations (see, e.g., Docket Entry 150 at 3, 5-8), the Court has never directly or by implication deemed his proposed interpretation constitutional (see Docket Entries 56, 62, 124, 141).

9

> [A court] will not rewrite a . . . law to conform it to
> constitutional requirements, for doing so would
> constitute a serious invasion of the legislative domain,
> and sharply diminish [the legislature's] incentive to
> draft a narrowly tailored law in the first place.

United States v. Stevens, 559 U.S. 460, 481 (2010) (initial set of brackets and ellipsis in original) (citations and internal quotation marks omitted).

In other words, the Court "must take the[] sections of the statute as they are." United States v. Reese, 92 U.S. 214, 221 (1875). Where, as here, "[t]he language is plain . . . .[, t]he question, then, to be determined, is, whether [the Court] can introduce words of limitation into a penal statute so as to make it [fit Stein's interpretation]." Id.[4] Yet, courts

> are wary of legislatures who would rely on [judicial]
> intervention, for "[i]t would certainly be dangerous if
> the legislature could set a net large enough to catch all
> possible offenders, and leave it to the courts to step
> inside" to announce to whom the statute may be applied.
> "This would, to some extent, substitute the judicial for
> the legislative department of the government."

Ayotte v. Planned Parenthood of N. New Eng., 546 U.S. 320, 330 (2006) (second set of brackets in original) (citation omitted) (quoting Reese, 92 U.S. at 221).

---

    4  North Carolina law condemns contracts that the Settlement
Provision prohibits as "against public policy in restraint of trade
or commerce in the State of North Carolina." N.C. Gen. Stat. § 95-
79(b). "Every contract, combination . . ., or conspiracy in
restraint of trade or commerce in the State of North Carolina is
. . . illegal." N.C. Gen. Stat. § 75-1. Moreover, "[e]very person
or corporation who shall make any such contract expressly or shall
knowingly be a party thereto by implication, or who shall engage in
any such combination or conspiracy shall be guilty of a Class H
felony." Id.

10

Accordingly, "where a statute requires an amendment to pass constitutional muster, [the Court] cannot usurp the legislature's role and rewrite it." Legend, 637 F.3d at 301. Here, Stein seeks a limitation of Section 95-79(b) that would prohibit, inter alia, "settlement agreements containing as a term of the settlement a promise to enter into an agreement or contract (separate from the settlement agreement) with a labor union or labor organization." (Docket Entry 150 at 8.) However, Section 95-79(b) "is not readily susceptible to [such] a limiting construction," Legend, 637 F.3d at 302. See N.C. Gen. Stat. § 95-79(b). Thus, "[t]o read [Section 95-79(b)] as [Stein] desires requires rewriting, not just reinterpretation," Stevens, 559 U.S. at 481, something the Court cannot do, see Reese, 92 U.S. at 221 ("To limit this statute in the manner now asked for would be [to] make a new law, not to enforce an old one. This is no part of [the Court's] duty.").

By contrast, Plaintiffs ask the Court to strike the Settlement Clause from Section 95-79(b). (See Docket Entry 151 at 5-6.) According to Plaintiffs, "[t]he Court can strike th[e Settlement C]lause consistent with its 'negative power to disregard an unconstitutional enactment' and leave behind the intended meaning of the statute as it existed before amend[ment] by the Settlement Provision." (Id. at 6 (citation omitted) (quoting Barr v. American Ass'n of Pol. Consultants, Inc, __ U.S. __, __ n.8, 140 S. Ct. 2335, 2351 n.8 (2020)).) As this Court (per Chief United States

District Judge Thomas D. Schroeder) recently explained, "[w]hen a court finds that only part of a law is unconstitutional, it may sever the unconstitutional provisions and leave the valid provisions of the law in place." People for the Ethical Treatment of Animals, Inc. v. Stein, 466 F. Supp. 3d 547, 586 (M.D.N.C. 2020) (citing Leavitt v. Jane L., 518 U.S. 137, 139-40 (1996)).

"This severability analysis is governed by state law," id., and,

> [u]nder North Carolina law, the invalid portion of a statute may be stricken and the remaining portion given effect if:  (1) the remaining portion is whole and complete in itself; and (2) the intent of the legislature was such that the statute would have been enacted even without the stricken portion.

North Carolina Right to Life, Inc. v. Leake, 482 F. Supp. 2d 686, 697 (E.D.N.C. 2007), aff'd in part, rev'd in part on other grounds, 525 F.3d 274 (4th Cir. 2008).  Stated somewhat differently, under North Carolina law:

> When only part of a statute is unconstitutional, the constitutional portions will still be given effect as long as they are severable from the invalid provisions. State v. Smith, 265 N.C. 173, 143 S.E.2d 293 (1965); Clark v. Meyland, 261 N.C. 140, 134 S.E.2d 168 (1964). To determine whether the portions are in fact divisible, the courts first see if the portions remaining are capable of being enforced on their own.  They also look to legislative intent, particularly to determine whether that body would have enacted the valid provisions if the invalid ones were omitted.

State ex rel. Andrews v. Chateau X, Inc., 296 N.C. 251, 259, 250 S.E.2d 603, 608 (1979), vacated sub nom. Chateau X, Inc. v. Andrews, 445 U.S. 947 (1980), reaffirmed and incorporated by

12

reference, <u>Chateau X, Inc. v. State ex rel. Andrews</u>, 302 N.C. 321, 330, 275 S.E.2d 443, 449 (1981).

Here, as documented above, the North Carolina General Assembly added the Settlement Clause to an existing statute. Where a legislature makes an unconstitutional amendment to an existing law, courts generally treat the unconstitutional amendment as severable. <u>See</u> <u>Barr</u>, __ U.S. at __, 140 S. Ct. at 2353. After all, "no law can be changed or repealed by a subsequent act which is void because [it is] unconstitutional." <u>Frost v. Corporation Comm'n</u>, 278 U.S. 515, 527 (1929) (internal quotation marks omitted). "An act which violates the Constitution has no power and can, of course, neither build up nor tear down. It can neither create new rights nor destroy existing ones. It is an empty legislative declaration without force or vitality." <u>Id.</u> (internal quotation marks omitted). The addition of the Settlement Clause to Section 95-79(b) "being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, th[e pre-amendment version of Section 95-79(b)] must stand as the only valid expression of the legislative intent." <u>Id.</u> at 526–27. Moreover, the remaining provisions of Section 95-79(b) "are capable of being enforced on their own," <u>Andrews</u>, 296 N.C. at 259, 250 S.E.2d at 608, without the Settlement Clause. <u>See</u> N.C. Gen. Stat. § 95-79(b). Accordingly, the Court should invalidate and sever only the

13

Settlement Clause from Section 95-79(b).  See Andrews, 296 N.C. at 259-60, 250 S.E.2d at 608-09.

## B. Terms

Stein also challenges certain language in Plaintiffs' proposed injunctive relief.  (See Docket Entry 150 at 10-11.)  Principally, Stein takes issue with Plaintiffs' proposal that he "should be ordered to 'take all reasonable and necessary steps to ensure statewide compliance with this Court's Order,'" on the grounds that "[s]uch 'reasonable and necessary steps' are insufficiently clear, and they impose an untenable burden on [him]."  (Id. at 10.)  In that regard, Stein contends that (1) he lacks enforcement authority over Section 95-79(b); (2) "under North Carolina's constitutional and statutory structure, the locally elected district attorneys would be enforcement authorities[;]" and (3) he "cannot order those independent [district attorneys] to undertake or not undertake prosecutions."  (Id. (emphasis in original).)

In response, Plaintiffs emphasize that "[a] violation of the Settlement Provision is enforced as a 'restraint of trade or commerce.'"  (Docket Entry 151 at 10 (quoting N.C. Gen. Stat. § 95-79(b)).)  Plaintiffs further note that, "unlike under most criminal statutes where [district attorneys] are principally and independently responsible for enforcement and prosecution[, Stein] has a unique supervisory responsibility with respect to such

14

enforcement statutes." (Id.) Under North Carolina General Statute Section 75-13:

> **The Attorney General** in carrying out the provisions of [Chapter 75] shall have a right to send bills of indictment before any grand jury in any county in which it is alleged this chapter has been violated or in any adjoining county, and **may take charge of and prosecute all cases coming within the purview of this Chapter**, and **shall have the power to call to his assistance** in the performance of any of these duties of [his] office which he may assign to them **any of the district attorneys in the State, who shall, upon being required to do so by the Attorney General, send bills of indictment and assist him** in the performance of the duties of his office.

(Docket Entry 151 at 10 (emphasis in original) (internal quotation marks omitted) (quoting N.C. Gen. Stat. § 75-13).)

As this Court has already determined, Stein possesses enforcement authority over Section 95-79(b). (See Docket Entry 56 at 23-32; Docket Entry 62 at 1 (adopting Docket Entry 56).)[5] Moreover, because violations of Section 95-79(b) remain subject to enforcement through Chapter 75 (see Docket Entry 56 at 24-31), Section 75-13 authorizes Stein to "take charge of and prosecute all cases" asserting violations of Section 95-79(b). See N.C. Gen. Stat. § 75-13. Accordingly, Stein possesses authority to control all prosecutions in North Carolina for violation of Section 95-79(b). Thus, Stein's position on this front lacks merit.

---

5    The North Carolina Commissioner of Labor also possesses authority to enforce the provisions of Chapter 95, which the Commissioner accomplishes through district attorneys, see N.C. Gen. Stat. § 95-4(6), who, as a general matter of North Carolina law, may enlist the Attorney General's office "to prosecute or assist in the prosecution of criminal cases," N.C. Gen. Stat. § 114-11.6.

15

Nevertheless, Rule 65 obliges the Court, in granting an injunction, to "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). "[T]o comply with Rule 65(d), the [Court's] order must be clear enough to inform [Stein] of what [he] may and may not do." Pashby, 709 F.3d at 331; see also id. (observing "that Rule 65(d) was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders" and that "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed" (internal quotation marks omitted)). Plaintiffs seek an injunction ordering Stein

> to take all reasonable and necessary steps to ensure statewide compliance with this Court's Order, including providing immediate notice and a copy of the Order to his employees, those under his supervision, and/or those who work in concert or participation with him in the enforcement of criminal and/or restraint of trade or commerce laws in North Carolina, including all of the district attorneys for each prosecutorial district of the state as defined in N.C. Gen. Stat. § 7A-60(a)-(a1).

(Docket Entry 142 at 3.) In Plaintiffs' view, the "practical flexibility" traditionally associated with injunctive relief "is achieved by leaving it to [Stein] to determine what additional steps would be reasonable and necessary, given the duties of his office and the reach of his authority, to ensure compliance with this Court's order." (Docket Entry 151 at 11 (internal quotation marks omitted).)

16

Whatever benefits Plaintiffs' approach might offer, the commands of Rule 65(d) require the Court to explicitly identify the steps Stein must take to effectuate this Court's rulings. <u>See</u> <u>Pashby</u>, 709 F.3d at 331. In particular, beyond enjoining Stein from enforcing the Settlement Clause, the Court should order Stein to assume control over and terminate any prosecutions for violation of the Settlement Clause as soon as he learns of the initiation of any such prosecution, pursuant to his authority under Section 75-13. The Court should also order Stein to promptly provide notice and a copy of the Court's order detailing the injunction and declaratory judgment (as discussed below) to (1) his employees, (2) those under his supervision, (3) any "other persons who are in active concert or participation with [Stein, his employees, or those under his supervision]," Fed. R. Civ. P. 65(d)(2)(C), and (4) the Commissioner of Labor and the district attorneys for each prosecutorial district of North Carolina as defined in North Carolina General Statute Section 7A-60(a)-(a1).[6]

## III. Declaratory Judgment

Plaintiffs also ask for a declaration "that the Settlement Provision violates the First Amendment and Equal Protection Clause of the Fourteenth Amendment." (Docket Entry 142 at 14.) Stein does not dispute the appropriateness of declaratory relief. (<u>See</u>

---

6 This resolution moots Stein's arguments about providing notice to "unidentified third parties" (Docket Entry 150 at 11).

<u>generally</u> Docket Entry 150.)  In any event, this matter satisfies the requirements for issuance of a declaratory judgment.  To begin, an actual controversy exists between the parties (<u>see, e.g.</u>, Docket Entry 56 at 32-44 (rejecting Stein's challenge to Plaintiffs' standing)).  <u>See</u> <u>Volvo</u>, 386 F.3d at 592 (explaining that case meets declaratory judgment actual controversy requirement if it "qualifies as an actual controversy under Article III of the Constitution").  Additionally, federal question jurisdiction provides an independent basis for this Court's jurisdiction.  (<u>See, e.g.</u>, Docket Entry 31, ¶ 4.)  Further, particularly given that the North Carolina Commissioner of Labor, with the assistance of district attorneys, can also prosecute violations of Section 95-79(b), <u>see</u> N.C. Gen. Stat. § 95-4(6), issuance of a declaratory judgment regarding the unconstitutionality of the Settlement Provision "will serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," <u>Volvo</u>, 386 F.3d at 594 (internal quotation marks omitted).  Accordingly, the Court should enter a judgment declaring the Settlement Clause unconstitutional under the First Amendment (and related equal protection principles).

## IV.  Preliminary Injunction

Finally, Stein asks that the Court immediately dissolve its preliminary injunction as to the Dues Checkoff Provision and

18

entirely dissolve the preliminary injunction once it issues the permanent injunction regarding the Settlement Provision. (See, e.g., Docket Entry 150 at 12.) Plaintiffs do not oppose this request. (See Docket Entries 142, 151.) In light of the Court's order awarding summary judgment to Stein on Plaintiffs' challenge to the Dues Checkoff Provision (see Docket Entry 141 at 2), the Court should grant Stein's request to dissolve the preliminary injunction as to the Dues Checkoff Provision and, upon issuance of a permanent injunction, as to the Settlement Provision.

## CONCLUSION

Plaintiffs have established the propriety of declaratory and permanent injunctive relief regarding the Settlement Provision, but the Court should dissolve its preliminary injunction.

**IT IS THEREFORE RECOMMENDED** that the Court issue an order and judgment:

(1) declaring that the "Settlement Provision" of Section 20.5 of the Farm Act that is codified in North Carolina General Statute Section 95-79(b) and created by the text underlined below (the "Settlement Clause"):

> Any provision that directly or indirectly conditions the purchase of agricultural products, the terms of an agreement for the purchase of agricultural products, or the terms of an agreement not to sue or settle litigation upon an agricultural producer's status as a union or nonunion employer or entry into or refusal to enter into an agreement with a labor union or labor organization is invalid and unenforceable as against public policy in restraint of trade or commerce in the State of North Carolina.

19

violates the First Amendment and first-amendment-related protections of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(2) permanently enjoining Defendant, acting in his official capacity as Attorney General, and Defendant's officers, agents, servants, employees, and attorneys, and those persons acting in active concert or participation with him, or under his supervision, from threatening to enforce, taking any action to enforce, and/or enforcing Section 20.5 of the Farm Act insofar as it declares that any provision that directly or indirectly conditions the terms of an agreement not to sue or to settle litigation upon an agricultural producer's status as a union or nonunion employer or entry into or refusal to enter into an agreement with a labor union or labor organization is invalid and unenforceable as against public policy in restraint of trade or commerce in the State of North Carolina;

(3) ordering Defendant to assume control over and terminate any prosecutions for violation of the Settlement Clause as soon as Defendant learns of the initiation of any such prosecution;

(4) ordering Defendant to promptly provide notice and a copy of the Court's order detailing the injunction and declaratory judgment to (A) his employees, (B) those under his supervision, (C) any other persons who are in active concert or participation with Defendant, his employees, or those under his supervision, and

20

(D) the Commissioner of Labor and the district attorneys for each prosecutorial district of North Carolina as defined in North Carolina General Statute Section 7A-60(a)-(a1); and

(5) dissolving the Court's preliminary injunction.

This 18th day of August, 2021.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
